CREGGER & CHALFANT LLP
ROBERT L. CHALFANT, SBN 203051
Email: rlc@creggerlaw.com
WENDY MOTOOKA, SBN 233589
Email: wm@creggerlaw.com
701 University Avenue, Suite 110
Sacramento, CA 95825
Telephone: 916.443-4443

CLAUDIA M. QUINTANA, SBN 178613
City Attorney
KELLY J. TRUJILLO, SBN 244286
Assistant City Attorney
Email: Kelly.Trujillo@cityofvallejo.net
City of Vallejo, City Hall
555 Santa Clara Street
Vallejo, CA 94590
Telephone: 707.648-4545

Attorneys for Defendants CITY OF VALLEJO,
KENNY PARK, MATHEW MUSTARD

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HUSKINS and AARON QUINN, | Case No. 2:16-cv-00603 TLN EFB |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE THE SECOND AND FIFTH CAUSES OF ACTION** |
| vs. | |
| CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, | Cal. Code. Civ. Proc. § 425.16 |
| Defendants. | Date: September 8, 2016<br>Time: 2:00 P.M.<br>Courtroom: 2, 15th Floor<br>Judge: Hon. Troy L. Nunley |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 1

  A.   Plaintiff Quinn Reports A Kidnapping To Vallejo Police ............................... 1

    1.   Police Doubt Quinn's Report ..................................................................... 1

    2.   Huskins Reappears In Huntington Beach And Does Not Want To Cooperate In The Investigation................................................................................................ 2

  B.   The Case Draws Widespread Public And Media Interest ................................. 3

  C.   The Investigation Concludes That There Had Been No Kidnapping.............................. 3

    1.   Vallejo Police Investigate Multiple Theories Of The Case ......................... 3

    2.   After Huskins Reappears, Vallejo Police Find No Evidence To Substantiate The Kidnapping, And Report This Determination To The Public....................................... 4

  D.   Plaintiffs Sue Based On Defendants' Speech................................................... 6

III.  LEGAL STANDARD ........................................................................................ 6

IV.   ARGUMENT ..................................................................................................... 7

  A.   Plaintiffs' Second Cause Of Action (Defamation) Should Be Stricken Pursuant To California's Anti-SLAPP Law ............................................................................. 7

    1.   Defendants' Statements Arise From The Exercise Of Free Speech In Connection With A Public Issue .................................................................................... 7

     i.   Defendants' Statements Were Made In A Public Forum On An Issue Of Public Interest ....................................................................................................... 7

      a.   The Kidnapping And Kidnapping Investigation Were Issues Of Public Interest ...... 7

      b.   Defendants' Statements Made In Press Releases Or At Press Conferences Were Made In A Public Forum .................................................................................. 8

     ii.   Defendants' Statements Were Also An Exercise Of Free Speech Made In Connection With A Public Issue .................................................................................... 9

    2.   Plaintiffs' Defamation Claim Has No Merit ................................................ 9

     i.   Defendants' Statements Are Privileged By California Civil Code Section 47(b)....... 10

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

i

a.   California Civil Code Section 47(b)(3) Provides Absolute Immunity ................... 10

b.   California Civil Code Section 47(b)(2) Provides Absolute Immunity ................... 10

ii.   In The Alternative, Defendants Are Immunized From Liability By California Government Code Section 821.6 ................................................................. 11

iii.   In The Alternative, Plaintiffs' Claims Would Fail Because They Cannot Meet The *New York Times* Standard ........................................................... 12

a.   Plaintiffs Were Public Figures ........................................................ 13

b.   Defendants' Statements Were Not Made With "Actual Malice" ............................ 13

iv.   Plaintiffs Cannot Prevail Against The City Where The Individual Officers Are Not Liable ................................................................................... 14

B.   Plaintiff Huskins' Fifth Cause Of Action (IIED) Should Be Stricken Pursuant To California's Anti-SLAPP Law ............................................................ 14

V.   CONCLUSION ....................................................................... 15

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

ii

**TABLE OF AUTHORITIES**

**CASES**

*Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146 (Cal. Ct. App. 2004) ........................................8

*Bleavins v. Demarest*, 196 Cal. App. 4th 1533 (Cal. Ct. App. 2011) ......................................6, 9

*Bradbury v. Superior Court (Spencer)*, 49 Cal. App. 4th 1108 (Cal. Ct. App. 1996) .............7, 9

*Braun v. Bureau of State Audits*, 67 Cal. App. 4th 1382 (Cal. Ct. App. 1998) ....................9, 10

*Cappuccio, Inc. v. Harmon*, 208 Cal. App. 3d 1496 (Cal. Ct. App. 1989)................................11

*Citizens Capital Corp. v. Spohn*, 133 Cal. App. 3d 887 (Cal. Ct. App. 1982)...........................12

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (Cal. 2002) ................................................................6

*County of Los Angeles v. Superior Court (West)*, 181 Cal. App. 4th 218

    (Cal. Ct. App. 2009)................................................................................................11, 12

*Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)..................................................................12

*Forro Precision, Inc. v. Int'l Business Machines Corp.*,

    673 F.2d 1045 (9th Cir. 1982).........................................................................................10

*GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141 (Cal. Ct. App. 2013).....................6

*Gilbert v. Sykes*, 147 Cal. App. 4th 13 (Cal. Ct. App. 2007) ........................................................8

*Gillan v. City of San Marino*, 147 Cal. App. 4th 1033 (Cal. Ct. App. 2007) ............................11

*Hecimovich v. Encinal Sch. Parent Teacher Organization*,

    203 Cal. App. 4th 450 (Cal. Ct. App. 2012) ...................................................................8

*Imig v. Ferrar*, 70 Cal. App. 3d 48 (Cal. Ct. App. 1977) ..........................................................10

*Ingram v. Flippo*, 74 Cal. App. 4th 1280 (Cal. Ct. App. 1999) ...........................................11, 12

*Lorain Journal Co. v. Milkovich*, 474 U.S. 953 (1985) .............................................................13

*Manufactured Home Communities, Inc. v. County of San Diego*,

    544 F.3d 959 (9th Cir. 2008).............................................................................................6

*Maranatha Corrections LLC v. Department of Corrections and Rehabilitation*,

    158 Cal. App. 4th 1075 (Cal. Ct. App. 2008) ..................................................................8

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)..................................................8

*Metabolife Int'l, Inc. v. Wornick*, 72 F. Supp. 1160 (S.D. Cal. 1999) ........................................8

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

iii

*Nadel v. Regents of the Univ. of California*, 28 Cal. App. 4th 1251

 (Cal. Ct. App. 1994) ...................................................................................................13

*Navellier v. Sletten*, 29 Cal. 4th 82 (Cal. 2002) ................................................................6

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......................................................9, 12

*Richardson-Tunnell v. SIPE*, 157 Cal. App. 4th 1056 (Cal. Ct. App. 2007) .............................11

*Rivero v. American Fed'n of State, County and Municipal Employees, AFL-CIO*,

 105 Cal. App. 4th 913 (Cal. Ct. App. 2003) ..........................................................7

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) .........................................................8

*Smith v. Maldonado*, 72 Cal. App. 4th 637 (Cal. Ct. App. 1999) ......................................9

*Soukoup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (Cal. 2006) .......................................6

## STATUTES

California Civil Code § 47(b) ...........................................................................9, 10, 12

California Code of Civil Procedure § 425.16 ......................................................1, 6, 7, 9

California Government Code § 815.2 ....................................................................14

California Government Code § 821.6 .........................................................9, 11, 12

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

iv

# I.    INTRODUCTION

Plaintiffs DENISE HUSKINS and AARON QUINN sue defendants CITY OF VALLEJO and Vallejo Police Department employees LT. KENNY PARK and DETECTIVE MATHEW MUSTARD for defamation and intentional infliction of emotional distress ("IIED") allegedly arising from statements made by the police officers during a police investigation.  Defendants now file a special motion to strike plaintiffs' Second Cause of Action (defamation) and plaintiff Huskins' Fifth Cause of Action (IIED), and to recover their attorneys' fees and costs, pursuant to California Code of Civil Procedure section 425.16.

# II.    FACTUAL BACKGROUND

## A.    *Plaintiff Quinn Reports A Kidnapping To Vallejo Police*

On March 23, 2015, plaintiff Quinn reported to Vallejo police that he and his girlfriend, plaintiff Huskins, had been victims of a home invasion hours earlier, that he had been drugged, that plaintiff Huskins had been kidnapped, and that the kidnappers had demanded a ransom of $17,000.  Request for Judicial Notice in Support of Defendants' Special Motion To Strike No. 1: Complaint (hereinafter "Compl.") at ¶¶ 15-16.  Vallejo police investigated, treating plaintiff Quinn as though he were a suspect.  Compl. at ¶ 20.

### 1.    Police Doubt Quinn's Report

Vallejo police considered Quinn a possible suspect for several reasons.  First, Quinn told an implausible account of his girlfriend's disappearance, involving intruders who wore scuba gear, placed blackened swim goggles over their victims' eyes and headphones with soothing music and instructions over their ears, drugged them, checked their vital signs with a blood pressure cuff, and made a bed for Quinn downstairs because he was cold.  Declaration of Mathew Mustard in Support of Def.s' Special Motion to Strike ("Mustard Decl.") at ¶¶ 5-6.  The intruders also brought Quinn clothing and books.  Mustard Decl. at ¶ 9.  They told Quinn their target that night was his former fiancée.  Mustard Decl. at ¶ 12.  They set up a motion detector in the living room, which according to Quinn, fooled him for hours into believing that he was being monitored by a camera.  Mustard Decl. at ¶ 11.  Quinn did not know what the intruders looked like, how many there were, or how they had gained access to the house.  Mustard Decl. at ¶ 14.  They

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                                                    1

1   communicated with him via emails sent from one of his own email accounts.  Mustard Decl. at ¶

2   10.  Despite having gone to such elaborate lengths, the intruders demanded only a small amount

3   in ransom.  Compl. at ¶ 15; Mustard Decl. at ¶ 10.

4       Second, police learned that Quinn and Huskins had been having relationship problems,

5   because Huskins had recently discovered that Quinn had been trying to rekindle his relationship

6   with his ex-fiancée.  Mustard Decl. at ¶ 12.  According to Quinn, he and Huskins had spent the

7   hours prior to her disappearance drinking beer and whiskey, having sex, and talking about his

8   relationship with his ex-fiancée.  Mustard Decl. at ¶ 12.

9       Third, there was physical evidence consistent with the removal of a body.  The comforter

10  and blanket were missing from the bed in the master bedroom, and there was a blood stain on the

11  sheet that remained on the bed.  Mustard Decl. at ¶ 13.  Quinn's car was missing, which he

12  explained by telling investigators that the kidnappers had moved Huskins' car from his driveway,

13  so that they could use his car to abduct Huskins.  Mustard Decl. at ¶ 8.

14      Fourth, there was significant delay between the time of the alleged crime, and Quinn's

15  reporting of it.  Quinn estimated that Huskins was taken at about 5:00 a.m.  Mustard Decl. at ¶ 8.

16  Quinn said that he called in sick for himself, and texted in sick for Huskins, at about 7:00 a.m.,

17  but did not call police until about 1:30 p.m.  Mustard Decl. at ¶¶ 9, 11.

18

19       **2.**    **Huskins Reappears In Huntington Beach And Does Not Want To Cooperate In The Investigation**

20      At around 10:00 a.m. on March 25, 2015, plaintiff Huskins reappeared hundreds of miles

21  from Vallejo, near her parents' homes in Huntington Beach, California.  Compl. at ¶ 42.  Her

22  reappearance in her hometown of Huntington Beach struck Vallejo police as being inconsistent

23  with the forcible kidnapping for ransom that had been reported.  Vallejo police learned that she

24  had shown up at her mother's house, with an overnight bag and wearing sunglasses.  Mustard

25  Decl. at ¶ 18.  Vallejo police learned that she denied being a victim, did not want to speak with

26  Huntington Beach police, and instead wanted to speak with her lawyer.  Mustard Decl. at ¶ 18.

27  Perhaps strangest of all, she rejected law enforcement's offer to fly her back to Vallejo, where she

28  lived and where she would be able to reunite with her family.  Compl. at ¶ 2; Mustard Decl. at ¶

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

2

18.

**B.     The Case Draws Widespread Public And Media Interest**

The reported kidnapping drew widespread public and media interest.  On the first day of Huskins' disappearance, Lt. Park issued a press release to enlist the public's help in locating her. Declaration of Lt. Kenny Park in Support of Def.s' Special Motion to Strike ("Park Decl.") at ¶ 6. The case instilled great fear and raised significant public safety concerns in the City of Vallejo, particularly within the community of Mare Island.  Declaration of James O'Connell in Support of Def.s' Special Motion to Strike ("O'Connell Decl.") at ¶ 5; Park Decl. at ¶ 8.  Members of the public began to call the police department, expressing concern that they were in danger, and asking what they should do.  O'Connell Decl. at ¶ 5.

The initial press release generated an overwhelming media response.  Lt. Park began to receive phone calls from the media within an hour or two.  Park Decl. at ¶ 7.  Numerous media outlets congregated at the Vallejo police station.  Park Decl. at ¶ 7.  There were six to ten news trucks parked outside the police station, some of them staying overnight.  Park Decl. at ¶ 7.  There were reporters from local Bay Area newspapers.  Park Decl. at ¶ 7.  When Huskins reappeared in Huntington Beach, media "swarmed the area."  Compl. at ¶ 48.

**C.     The Investigation Concludes That There Had Been No Kidnapping**

**1.     Vallejo Police Investigate Multiple Theories Of The Case**

Vallejo police investigated multiple theories that could be consistent with the evidence, considering the possibility that charges could be filed against various persons if sufficient evidence were found.  Mustard Decl. at ¶ 17.  Vallejo police considered that the kidnapping could have really occurred as related by Quinn.  They considered that Quinn and Huskins had argued about their relationship, that Quinn had killed Huskins accidentally, and that he was concocting a story to explain her disappearance.  They considered that Huskins had died accidentally while the couple was experimenting with drugs or other recreational activities, and that Quinn was concealing her death.  They considered that Huskins wanted to be gone for some reason, and that Quinn was helping her.  They considered that Huskins' disappearance was somehow related to Quinn's ex-fiancée and her associations.  Mustard Decl. at ¶ 17.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

3

**2.      After Huskins Reappears, Vallejo Police Find No Evidence To Substantiate The Kidnapping, And Report This Determination To The Public**

After Huskins reappeared in Huntington Beach, her circumstances and behavior, including her refusal to speak with police and her decision to seek legal counsel instead, contributed to investigators' belief that she had not been the victim of a kidnapping.  Mustard Decl. at ¶ 18; O'Connell Decl. at ¶¶ 6-7.  Because the Vallejo community had been so on edge, the Vallejo police wanted to allay the community's fears by disclosing this latest development in the case.  O'Connell Decl. at ¶¶ 5, 8.  Lt. Park was authorized to disclose to the public that the investigation had thus far had been unable to conclude that a kidnapping had occurred, and that investigators now suspected that Huskins' disappearance had been an orchestrated event, not an abduction by a stranger.  O'Connell Decl. at ¶ 8.

On March 25, 2015, the Vallejo Police Department issued a press release stating:

> Today, there is no evidence to support the claims that this was a stranger abduction or an abduction at all.  Given the facts that have been presented thus far, this event appears to be an orchestrated event and not a kidnapping.

Park Decl. at ¶ 13 & attached Exh. A.  Later that evening, defendant Lt. Park made the following statements at a press conference:

- And from this point forward, I will not refer to them as a victim or a witness.
- We also know that the statement that Mr. Quinn provided was such an incredible story, we initially had a hard time believing it, and, upon further investigation, we were not able to substantiate any of the things that he was saying.
- So over the course of the last few days, if I can kind of put things in perspective, we have had over 40 police detectives from the local, state

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                    4

1   and federal levels, and over 100 support personnel assisting in the

2   investigation, working around the clock, to help locate Ms. Huskins. That

3   is a tremendous amount of resources that, in my opinion, was wasted. **I**

4   **can sit here and apologize for me – for all of us – being guarded with**

5   **our information, but I can tell you in the grand scheme of things, Mr.**

6   **Quinn and Ms. Huskins has plundered valuable resources away from**

7   **our community, and has taken the focus away from the true victims of**

8   **our community, while instilling fear amongst our community**

9   **members. So, if anything, it is Mr. Quinn and Ms. Huskins that owes**

10   **this community an apology.**

11

12 Compl. at ¶ 60.

13   In response to the question, "Can you say again, Lieutenant, what this has done to the

14 community of Vallejo, just getting out of bankruptcy, and a very small police department?," Lt.

15 Park responded:

16

17   If you can imagine devoting all of our resources, 24 hours a day, **on what I**

18   **will – uh – classify as a wild goose chase** – it's a tremendous loss. It's

19   disappointing, it's disheartening, and **the fact that we've essentially wasted**

20   **all of these resources, for essentially nothing, is upsetting.**

21

22 Compl. at ¶ 60.

23   In response to the question, "Is there any evidence that makes you know, conclusively,

24 that this was a fake? I mean, did something come up that made it without argument that this was

25 all a hoax?," Lt Park responded:

26

27   **I can tell you that our investigation has concluded that none of the claims**

28   **has been substantiated. I can go one step further to say this – that this**

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                                                5

1 | **was not a random act, and that the members of our community are safe,**

2 | **and that they have nothing to fear.**

3

4 | Compl. at ¶ 60.

5 | **D.      Plaintiffs Sue Based On Defendants' Speech**

6 |       Plaintiffs sue the City of Vallejo, Detective Mustard, and Lt. Park for defamation and

7 | IIED arising from statements made during and about the kidnapping investigation.  Defendants

8 | now move to strike these claims as an impermissible Strategic Lawsuit Against Public

9 | Participation ("SLAPP suit").

10 | **III.     LEGAL STANDARD**

11 |       California Code of Civil Procedure section 425.16 ("special motion to strike" or "the anti-

12 | SLAPP law") was enacted to curtail the number of lawsuits brought primarily to chill the valid

13 | exercise of free speech.  *Manufactured Home Communities, Inc. v. County of San Diego*, 544

14 | F.3d 959 (9th Cir. 2008).  The anti-SLAPP statute is a procedural statute designed to screen out

15 | meritless claims.  *Soukoup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 280 (Cal. 2006).

16 |       A special motion to strike invokes a two-step process.  First, the defendant must make a

17 | *prima facie* showing that the plaintiff's cause of action arises from an act by the defendant in

18 | furtherance of the defendant's right to petition or free speech in connection with a public issue.

19 | *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 149-50 (Cal. Ct. App. 2013).  A

20 | defendant meets this burden by demonstrating that the act underlying the plaintiff's cause of

21 | action fits within one of the categories set forth in Section 425.16(e) of the statute.  *City of Cotati*

22 | *v. Cashman*, 29 Cal. 4th 69, 78 (Cal. 2002).  Second, if the defendant makes this threshold

23 | showing, the burden shifts to the plaintiff to make a *prima facie* showing of facts that would, if

24 | proved at trial, support a judgment in the plaintiff's favor.  *Bleavins v. Demarest*, 196 Cal. App.

25 | 4th 1533, 1541 (Cal. Ct. App. 2011).  A cause of action that arises from protected speech and that

26 | lacks even minimal merit is subject to being stricken under the statute.  *Navellier v. Sletten*, 29

27 | Cal. 4th 82, 89 (Cal. 2002).

28 |       In making its determination on a special motion to strike, the court shall consider the

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                    6

1    pleadings, and supporting and opposing affidavits stating the facts upon which the liability or

2    defense is based.  Cal. Code Civ. Proc. § 425.16(b)(2).

3

4                                        **IV.    ARGUMENT**

5    ***A.    Plaintiffs' Second Cause Of Action (Defamation) Should Be Stricken Pursuant To California's Anti-SLAPP Law***

6           Plaintiffs' Second Cause of Action for defamation should be stricken as a SLAPP suit.

7    The anti-SLAPP law, enacted to curtail SLAPP suits, applies to a governmental entity and its

8    representatives who are sued for their written and verbal comments concerning an official

9    investigation.  *Bradbury v. Superior Court (Spencer)*, 49 Cal. App. 4th 1108, 1111 (Cal. Ct. App.

10   1996).   Plaintiffs' defamation claim is subject to the anti-SLAPP law, because it arises from

11   defendants' exercise of free speech in connection with a public issue, and lacks even minimal

12   merit for the reasons stated below.

13          The Second Cause of Action should be stricken.

14

15         **1.    Defendants' Statements Arise From The Exercise Of Free Speech In Connection With A Public Issue**

16          All of defendants' alleged defamatory statements were made in connection with a public

17   issue, falling within California Code of Civil Procedure section 425.16 subsection (e)(3)

18   (statement made in a public forum on an issue of public interest) and subsection (e)(4) (exercise

19   of free speech in connection with a public issue or issue of public interest).

20               **i.    Defendants' Statements Were Made In A Public Forum On An Issue Of Public Interest**

21

22                    **a.    The Kidnapping And Kidnapping Investigation Were Issues Of Public Interest**

23          A "public issue" or "issue of public interest" for the purposes of California's anti-SLAPP

24   law is one involving a person or entity in the public eye, conduct that could directly affect a large

25   number of people beyond the direct participants, or a topic of widespread, public interest.  *Rivero*

26   *v. American Fed'n of State, County and Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913,

27   924-25 (Cal. Ct. App. 2003).   Issues of public safety or public attention are "public issues."

28   *Hecimovich v. Encinal Sch. Parent Teacher Organization*, 203 Cal. App. 4th 450, 465-66

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE                     7
Case No. 2:16-cv-00603 TLN EFB

(Cal. Ct. App. 2012) (safety is a public issue); *Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016) (the movie *The Hurt Locker*, about a soldier in the Iraq war, qualifies as a statement on an issue of public interest, because the Iraq war and soldiers' experiences there were subjects of longstanding public attention); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23-24 (Cal. Ct. App. 2007) (elective plastic surgery is a matter of public interest, because of widespread interest in the topic).

All of the allegedly defamatory statements put in issue by the complaint are statements made about the kidnapping and kidnapping investigation involving Quinn and Huskins. The kidnapping and its investigation were issues of public interest. The case drew widespread attention. Park Decl. at ¶ 7. Huskins' whereabouts were a matter of public attention, because the public had been asked to help locate her. Park Decl. at ¶ 6. The kidnapping raised concerns about public safety, affecting a large number of people, especially within the Mare Island community. Park Decl. at ¶ 8; O'Connell Decl. at ¶ 5. The public was greatly interested in this case.

### b. Defendants' Statements Made In Press Releases Or At Press Conferences Were Made In A Public Forum

The statements made by defendants about the kidnapping and kidnapping investigation in press releases and during press conferences were statements made in a public forum. A public forum is not limited to a physical setting, but also includes other forms of public communication. *Maranatha Corrections LLC v. Department of Corrections and Rehabilitation*, 158 Cal. App. 4th 1075, 1086 (Cal. Ct. App. 2008). A news publication is a "public forum" within the meaning of the anti-SLAPP statute if it is a vehicle for discussion of public issues and it is distributed to a large and interested community. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1161 (Cal. Ct. App. 2004). A widely disseminated television broadcast is undoubtedly a public forum. *Metabolife Int'l, Inc. v. Wornick*, 72 F. Supp. 1160, 1165 (S.D. Cal. 1999), *reversed in part on other grounds by Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001).

The Vallejo Police Department's statements to the press about the kidnapping and the status of the investigation were distributed to a large and interested community, via the local television networks and print media, and also the Department's mobile phone app and webpage.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

8

1    Park Decl. at ¶ 5.  The statements, therefore, were made in a public forum about an issue of

2    public interest, and are thus subject to the anti-SLAPP law.  Government officials have a First

3    Amendment right to keep the public informed, respond to media questions, and ask other law

4    enforcement agencies to conduct their own investigations.  *Bradbury*, 49 Cal. App. 4th at 1116.

5

6           **ii.**       **Defendants' Statements Were Also An Exercise Of Free Speech Made In Connection With A Public Issue**

7          Lt. Park's statements at the press conference were also protected activity within the

8    meaning of California Code of Civil Procedure section 425.16(e)(4).  For the reasons stated in

9    part IV.A.1.i.a, the kidnapping and kidnapping investigation were public issues.  Likewise, to the

10   extent that plaintiffs challenge statements made by Detective Mustard to Huskins' family during

11   the investigation (Compl. at ¶¶ 50-52), these statements all concern the kidnapping and

12   kidnapping investigation, made in furtherance of the investigation, and therefore are also

13   protected activity within Section 425.16(e)(4).  *See also Braun v. Bureau of State Audits*, 67

14   Cal. App. 4th 1382, 1388-89 (Cal. Ct. App. 1998) (statements made in furtherance of an

15   investigative audit fall within Cal. Code Civ. Proc. § 425.16(e)).

16         **2.**      **Plaintiffs' Defamation Claim Has No Merit**

17         Because defendants have shown that their statements are protected speech within the anti-

18   SLAPP law, the burden shifts to plaintiffs to make a *prima facie* showing of facts that would, if

19   proved at trial, support a judgment in their favor.  *Bleavins*, 196 Cal. App. 4th at 1541.

20   Defamation involves the intentional publication of a statement of fact that is false, unprivileged,

21   and has a natural tendency to injure or which causes special damages.  *Smith v. Maldonado*, 72

22   Cal. App. 4th 637, 645 (Cal. Ct. App. 1999).  Plaintiffs cannot make the showing necessary at

23   trial to prove defamation, because defendants' speech is privileged by California Civil Code

24   section 47(b) and immunized by California Government Code section 821.6.  Even in the absence

25   of these statutory protections, in order to prevail, plaintiffs' would have to meet the *New York*

26   *Times* standard by proving "actual malice" on the part of defendants.  *New York Times Co. v.*

27   *Sullivan*, 376 U.S. 254, 279-80 (1964).  They will not be able to meet the *New York Times*

28   standard.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

9

i.      **Defendants' Statements Are Privileged By California Civil Code Section 47(b)**

Plaintiffs' defamation claim lacks even minimal merit, and therefore should be stricken, because the statements upon which they base their claim are absolutely privileged by California Civil Code section 47(b).

a.      **California Civil Code Section 47(b)(3) Provides Absolute Immunity**

Statements made by police officers during an investigation, about the investigation, are absolutely privileged by California Civil Code section 47(b)(3), as the investigation is an "official proceeding authorized by law."  *Braun*, 67 Cal. App. 4th at 1388-89; *Imig v. Ferrar*, 70 Cal. App. 3d 48, 54-55 (Cal. Ct. App. 1977) (a citizen complaint to police department, even though preliminary to an official proceeding, is absolutely privileged).  As alleged the complaint, the only statements about which plaintiffs complain are statements made by police officers, during the investigation and about the investigation.

b.      **California Civil Code Section 47(b)(2) Provides Absolute Immunity**

The statements made by the officers are also absolutely privileged by Civil Code section 47(b)(2) as a publication or broadcast made in a judicial proceeding.  The purpose underlying this privilege is to encourage freedom of communication between citizens and public authorities charged with investigating wrongdoing.  *Forro Precision, Inc. v. Int'l Business Machines Corp.*, 673 F.2d 1045, 1055 (9th Cir. 1982).  The privilege applies to communications preparatory to the initiation of proceedings, as well as to those made during the course of the proceedings.  *Id.* Here, all of the complained of statements were made by officers during a criminal investigation, preparatory to the initiation of possible judicial proceedings.  Mustard Decl. at ¶ 17.  These statements are privileged by Civil Code section 47(b)(2).

Because defendants' statements were privileged by Civil Code section 47(b), the defamation cause of action should be stricken pursuant to California's Anti-SLAPP law.

//

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                                      10

ii.    **In The Alternative, Defendants Are Immunized From Liability By California Government Code Section 821.6**

In the alternative, plaintiffs' defamation claim lacks even minimal merit because defendants are immunized by California Government Code section 821.6, which provides:

> A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

This immunity is broadly construed to further its purpose of protecting public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits. *County of Los Angeles v. Superior Court (West)*, 181 Cal. App. 4th 218, 228 (Cal. Ct. App. 2009); *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1047-48 (Cal. Ct. App. 2007); *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (Cal. Ct. App. 1999).   Where Section 821.6 applies, defamation claims are barred.  *Cappuccio, Inc. v. Harmon*, 208 Cal. App. 3d 1496, 1498-99 (Cal. Ct. App. 1989); *Ingram, supra*, 74 Cal. App. 4th at 1292.

Government Code section 821.6 immunizes an investigating officer from liability for his acts or omissions if:  1) the officer was a public employee, 2) plaintiff's injuries were caused by the acts committed by the officer to institute or prosecute a judicial or administrative proceeding, and 3) the conduct of the officer was within the scope of his employment.    *West*, 181 Cal. App. 4th at 228.  Investigations are considered to be part of judicial and administrative proceedings for the purposes of Section 821.6 immunity.  *Richardson-Tunnell v. SIPE*, 157 Cal. App. 4th 1056, 1062 (Cal. Ct. App. 2007).  Section 821.6 immunizes not only the act of filing or prosecuting a judicial or administrative action, but also extends to actions taken in preparation for such formal proceedings.  *Gillan*, 147 Cal. App. 4th at 1048.  An investigation before the institution of a judicial proceeding is part of the prosecution of a judicial proceeding for the purposes of the statute, even if the authorities later decide not to file charges.  *Ingram*, 74 Cal. App. 4th at 1293; *see also West*, 181 Cal. App. 4th at 229 (acts during an investigation prior

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

11

1   to the institution of judicial proceedings are protected by Section 821.6 because investigations are

2   essential steps toward the institution of formal proceedings).  Publicity that merely reports the

3   results of official investigations is also absolutely immunized by Government Code section 821.6.

4   *Citizens Capital Corp. v. Spohn*, 133 Cal. App. 3d 887, 888-89 (Cal. Ct. App. 1982).

5       In the instant case, plaintiffs complain about statements made by Detective Mustard

6   during the official investigation of the kidnapping, in furtherance of the investigation.  Compl. at

7   ¶¶ 40, 51, 52.  Detective Mustard could not rule out that Huskins' disappearance had been

8   orchestrated by Quinn and/or Huskins, so he continued to investigate these angles to see if

9   charges would be appropriate.  Mustard Decl. at ¶ 17.  Plaintiffs also complain about the

10  statements made by Lt. Park in press releases and during a press conference.  The statements at

11  issue all discuss the status of the official investigation.  Compl. at ¶¶ 58, 60.  They are publicity

12  that merely reported the results of the official investigation.

13      The statements complained of, with respect to Detective Mustard and Lt. Park, are

14  absolutely immunized by Government Code section 821.6.  Plaintiffs' defamation claim is

15  meritless, and should be stricken.

16

17          iii.    **In The Alternative, Plaintiffs' Claims Would Fail Because They Cannot Meet The *New York Times* Standard**

18      Even if the privilege of Civil Code section 47(b) and the immunity of Government Code

19  section 821.6 did not apply, plaintiffs' claims would still fail on the merits, because they cannot

20  meet the *New York Times* standard.  Under the *New York Times* standard, a public official or

21  public figure cannot recover damages for defamation unless he proves that the statement was

22  made with "actual malice," that is, "with knowledge that it was false or with reckless disregard of

23  whether it was false or not."  *New York Times*, 376 U.S. at 279-80; *Curtis Publishing Co. v. Butts*,

24  388 U.S. 130, 155 (1967).  In California, the *New York Times* standard has been extended to

25  protect government speech, so that government and government employees may be held liable for

26  defamation of a public figure in matters of public interest only where they have knowledge of

27  falsity or reckless disregard for the truth.  *Nadel v. Regents of the Univ. of California*, 28

28  Cal. App. 4th 1251, 1266-67 (Cal. Ct. App. 1994).  By relieving government from having to

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB                    12

guarantee the truth of its factual assertions on matters of public interest, the extension of the *New York Times* standard to government fosters government's ability to promote the interchange of ideas and to keep the citizenry informed. *Id.*

### a. Plaintiffs Were Public Figures

The kidnapping was a matter of legitimate public concern, in which plaintiffs were major figures. They were at the center of a kidnapping that was widely publicized, and of great concern to the community. O'Connell Decl. at ¶ 5; Park Decl. at ¶¶ 6-7. Plaintiffs were therefore "public figures" under the *New York Times* standard. *Lorain Journal Co. v. Milkovich*, 474 U.S. 953, 963 (1985).

### b. Defendants' Statements Were Not Made With "Actual Malice"

The officers' statements about these public figures were not made with "actual malice," or malice of any kind. The kidnapping investigation drew on numerous resources, but despite this full-scale effort, could not substantiate plaintiffs' claims. Park Decl. at ¶ 10; O'Connell Decl. at ¶¶ 4, 7. Quinn's account of the kidnapping was implausible. Mustard Decl. at ¶ 15. The ransom demand was paltry. Compl. at ¶ 15; Mustard Decl. at ¶ 10. The evidence known to investigators was suggestive of Quinn's involvement: Quinn delayed reporting the kidnapping for hours, but was able to timely report in sick for both himself and Huskins; he could not describe the kidnappers or even how many there were; his car was missing; there was blood on the bed sheet and a blanket and comforter missing from the bed; Quinn and Huskins had been drinking, having sex, and discussing their relationship problems in the hours before her disappearance; the kidnappers communicated using Quinn's email account. Mustard Decl. at ¶¶ 8-9, 12-14, 15-17.

When Huskins reappeared two days later near her mother's home in Huntington Beach, the alleged kidnapping appeared to be even less likely. Police learned that Huskins had shown up in Huntington Beach wearing sunglasses and carrying luggage. Mustard Decl. at ¶ 18; O'Connell Decl. at ¶ 6. She was unwilling to speak with police and declined law enforcement's offer to fly her back to Vallejo, where she lived and where her family had gathered. Compl. at ¶ 2; Mustard Decl. at ¶ 18; O'Connell Decl. at ¶ 6. Instead, Huskins wanted to speak with an attorney. Mustard Decl. at ¶ 18; O'Connell Decl. at ¶ 6. The facts known to the officers suggested that

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

13

something other than a kidnapping for ransom had occurred.  The statements made by Detective Mustard and Lt. Park were not made with knowledge of their falsity, or with reckless disregard for the truth.  Detective Mustard was simply doing his job, trying to follow the evidence to where it led.  Mustard Decl. at ¶¶ 3, 17.  Lt. Park was doing his job as the Public Information Officer, updating an interested public on the status of the investigation.  Park Decl. at ¶¶ 4, 9.  There was no actual malice.  Plaintiffs' defamation claim must fail, because it cannot meet the *New York Times* standard.

### iv. Plaintiffs Cannot Prevail Against The City Where The Individual Officers Are Not Liable

Plaintiffs seek to impose *respondeat superior* liability for defamation on the City of Vallejo pursuant to California Government Code section 815.2.  Compl. at ¶ 104.  Plaintiffs cannot prevail on this theory of liability, however, where the City's employees are not liable or are immune.  Cal. Gov't Code § 815.2(b).  As argued above, the defamation claims against Detective Mustard and Lt. Park should be stricken, and therefore so too should be the vicarious liability claim against the City.  Plaintiffs' defamation claim against the City is meritless.

### B. Plaintiff Huskins' Fifth Cause Of Action (IIED) Should Be Stricken Pursuant To California's Anti-SLAPP Law

Plaintiff Huskins' claim for IIED is based wholly on statements made by Vallejo City police while conducting their investigation into the kidnapping report, or while disclosing their findings and opinions to the public.  No other intentional conduct is alleged as the basis for this claim.

Because plaintiff Huskins' IIED claim seeks damages for emotional distress arising from statements made by Lt. Park and Detective Mustard in the exercise of free speech in connection with an issue of public interest, and because as argued above, this claim is meritless in light of California Civil Code section 47(b), California Government Code section 821.6, and the *New York Times* standard, Huskins' IIED claim should be stricken pursuant to California's anti-SLAPP law.

//

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

14

## V.   CONCLUSION

The reported kidnapping raised public safety concerns and drew widespread media attention, thereby becoming an issue of public interest.  Vallejo Police had a First Amendment right to discuss their investigation and to respond to media questions about this public issue.  Therefore, in order to proceed on their Second Cause of Action (defamation) and Huskins' Fifth Cause of Action (IIED), plaintiffs must now make a *prima facie* showing of facts that would, if proved at trial, support judgment in their favor.  Plaintiffs cannot meet this burden, as their claims are entirely meritless in light of California Civil Code section 47(b), California Government Code section 821.6, and the protections for free speech afforded by the *New York Times* standard.

Plaintiffs' Second Cause of Action (defamation) and Huskins' Fifth Cause of Action (IIED) should be stricken pursuant to California Code of Civil Procedure section 425.16, and attorneys' fees and costs should be awarded to defendants.

DATE:  July 22, 2016                    CREGGER & CHALFANT LLP

/s/ Robert L. Chalfant
ROBERT L. CHALFANT
WENDY MOTOOKA
Attorneys for Defendants CITY OF VALLEJO, KENNY PARK, MATHEW MUSTARD

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

MPA ISO SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

15