CREGGER & CHALFANT LLP
ROBERT L. CHALFANT, SBN 203051
Email: rlc@creggerlaw.com
WENDY MOTOOKA, SBN 233589
Email: wm@creggerlaw.com
701 University Avenue, Suite 110
Sacramento, CA 95825
Telephone: 916.443-4443

CLAUDIA M. QUINTANA, SBN 178613
City Attorney
KELLY J. TRUJILLO, SBN 244286
Assistant City Attorney
Email: Kelly.Trujillo@cityofvallejo.net
City of Vallejo, City Hall
555 Santa Clara Street
Vallejo, CA 94590
Telephone: 707.648-4545

Attorneys for Defendants CITY OF VALLEJO, KENNY PARK, MATHEW MUSTARD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| DENISE HUSKINS and AARON QUINN, | Case No. 2:16-cv-00603 TLN EFB |
|---|---|
| Plaintiffs, | |
| vs. | **DECLARATION OF MATHEW MUSTARD IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE THE SECOND AND FIFTH CAUSES OF ACTION** |
| CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, | |
| Defendants. | Date:<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Troy L. Nunley |

I, MATHEW MUSTARD, declare as follows:

1. I am a named defendant in this case.

2. I am a detective employed by the Vallejo Police Department. I have held this position since July 2004. I have been a law enforcement officer for approximately 20 years.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

DECLARATION OF MATHEW MUSTARD ISO DEF.S'
SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

1

3. I was the lead investigator from the Vallejo Police Department regarding the disappearance of Denise Huskins on March 23, 2015. Ms. Huskins' boyfriend, Aaron Quinn, reported her abduction and gave an interview with police that afternoon. I observed portions of his interview with Detective Poyser and Detective Greenberg. As we gathered additional information, I re-interviewed Mr. Quinn.

4. Mr. Quinn told me that he and Ms. Huskins were awoken by a bright light at approximately 3:00 a.m. He heard what he believed to be the sound of a Taser. Ms. Huskins was instructed to bind him with zip ties, which she did, and the intruders then bound Ms. Huskins. She was placed in a closet, and he was rolled into an upright position and told to hop into the closet as well. Mr. Quinn was wearing only underwear.

5. The intruders placed blackened swim goggles over his eyes, and a pair of headphones over his ears. The headphones played calm, soothing music and instructions informing Mr. Quinn that this was a kidnapping, that money would be requested, that questions would be asked, and that because he would be given a combination of Nyquil and diazepam, he must tell them if he had any allergies to medications.

6. Mr. Quinn drank a fluid given to him by the intruders, who then used a blood pressure cuff to take his blood pressure. Ms. Huskins was taken downstairs. The bindings on Mr. Quinn's feet were cut, and he was instructed to walk downstairs. When one of the intruders noticed that Mr. Quinn was shivering on the way down the stairs, he asked Mr. Quinn if he was cold. Mr. Quinn said that he was, so the intruders made a bed for him on the downstairs sofa. The intruders were wearing wet suits, so they did not feel the cold. When Mr. Quinn got downstairs, the intruders bound his ankles.

7. The intruders told Mr. Quinn that they were going to install a web camera in his house. They asked for his router and WiFi passwords. They asked for his email and bank account passwords. They placed red tape on the floor and told Mr. Quinn not to go beyond the tape or they would harm Ms. Huskins.

8. Mr. Quinn estimated that it was approximately 5:00 a.m. when the intruders left with Ms. Huskins. They took her in his car, a white Toyota Camry, which had been parked in the

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

DECLARATION OF MATHEW MUSTARD ISO DEF.S'
SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

2

garage. Ms. Huskins' Honda CRV had been parked in the driveway, so they had to re-park her vehicle in order to leave in the Toyota. They told Mr. Quinn that they would leave his car somewhere on Mare Island, contact him about the ransom, and that he should call in sick that day and use Ms. Huskins' phone to text in that she was sick.

9. Mr. Quinn stated that he fell asleep and woke at about 7:00 a.m. He reported in sick for both of them, as instructed. He fell asleep again. The intruders had brought down clothing and books. He was able to dress without leaving the taped area. He used the restroom and washed his hands.

10. Mr. Quinn said there was an electronic device mounted to the ceiling of his living room. Every time he moved, a red light came on and the device emitted a sound. He told me he had received emails and/or text messages from the intruders demanding $8,500. The emails came to one of Mr. Quinn's email accounts, from another one of his email accounts. Mr. Quinn stated that the intruders had taken his laptop.

11. Mr. Quinn eventually concluded that the device affixed to the ceiling was not a camera, but just a motion detector. At around 1:30 p.m., he decided to call his brother, who is an FBI agent in San Francisco. His brother told him to call 911.

12. Mr. Quinn said that the intruders told him that their target that night was Mr. Quinn's former fiancée Andrea Roberts. Ms. Roberts had moved out of the residence some months earlier, after they had broken up over her infidelity with another man who was a Fairfield police officer. Mr. Quinn had also told investigators that his relationship with Ms. Huskins had been recently strained by Ms. Huskins' discovery that he had been attempting to rekindle his relationship with Ms. Roberts. Mr. Quinn told me that in the hours before the kidnapping, he and Ms. Huskins had been drinking beer and whiskey, and talking about his relationship with Ms. Roberts. He said that he and Ms. Huskins had also had consensual sex that night.

13. The investigation of Mr. Quinn's home had revealed that a blanket and comforter was missing from the bed in the master bedroom. A blood stain was discovered on the sheet that remained on the bed.

14. Mr. Quinn stated that he had been unable to see the intruders, because of the bright

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

DECLARATION OF MATHEW MUSTARD ISO DEF.S'
SPECIAL MOTION TO STRIKE           3
Case No. 2:16-cv-00603 TLN EFB

light and the swim googles. He did not know who they were. He did not know how they had gained access into his home. He did not know how many of them there had been.

15. From the inception of the case, my main concern was to locate Ms. Huskins, for her sake and for the sake of her family. I was skeptical of Mr. Quinn's story, because of its outlandish nature. Based on my past experience investigating crime, I found it implausible that unknown persons, wearing scuba gear, would break into the home through unknown means in the middle of the night, with headphones, soothing music, and pre-recorded instructions; that they would drug their victims and check their blood pressure; that they would bring Mr. Quinn downstairs with blankets and books for the night; that they would set up a fake camera, fooling a smart and educated man like Mr. Quinn for hours; that they would move Ms. Huskins' car from the driveway so that they could abduct her in Mr. Quinn's car; and that after going to such elaborate lengths, they would demand such a small ransom.

16. I did not know what had happened, but I knew the following: Ms. Huskins was missing. There was a blood stain on the sheet on the bed. The blanket and comforter from the bed were missing from the house. Mr. Quinn's car was missing. Mr. Quinn and Ms. Huskins had been having relationship problems, because of his interest in returning to his ex-fiancée. Mr. Quinn and Ms. Huskins had been drinking and discussing his relationship with his ex-fiancée in the hours before Ms. Huskins went missing. Mr. Quinn delayed for eight hours or more before reporting the abduction. The email messages from the kidnappers appeared to be coming from Mr. Quinn's own email account.

17. In investigating the case, I considered multiple different theories that could have resulted in criminal charges being filed against various persons, had sufficient evidence been found. These theories included: that the kidnapping had really occurred as related by Mr. Quinn; that Mr. Quinn and Ms. Huskins had argued about their relationship, and that Mr. Quinn had killed Ms. Huskins accidentally and was concocting a story to explain her disappearance; that Ms. Huskins had died accidentally while the couple was experimenting with drugs or other recreational activities, and Mr. Quinn was concealing her death; that Ms. Huskins wanted to be gone for some reason, and Mr. Quinn was helping her; that Ms. Huskins' disappearance was

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

DECLARATION OF MATHEW MUSTARD ISO DEF.S'
SPECIAL MOTION TO STRIKE
Case No. 2:16-cv-00603 TLN EFB

4

1 somehow related to Ms. Roberts and her associations.

18. Ms. Huskins' reappearance in Huntington Beach, California, on March 25, 2015, also appeared to me to be inconsistent with the forcible kidnapping for ransom that had been reported. I was informed that Ms. Huskins had shown up at her mother's house, with an overnight bag and wearing sunglasses. I found it unusual that she denied being a victim, did not wish to speak with Huntington Beach police, and instead wanted to speak with her lawyer. Strangest of all, when law enforcement arranged to fly Ms. Huskins to Vallejo, where all her family had gathered, she rejected the offer. I found it odd that a recently released kidnap victim would not want to go to her family.

19. I have personal knowledge of the matters related above, and if called upon, could competently testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2016, at VALLEJO, California.

_____
MATHEW MUSTARD

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA 95825
(916) 443-4443

DECLARATION OF MATHEW MUSTARD ISO DEF.S'
SPECIAL MOTION TO STRIKE                    5
Case No. 2:16-cv-00603 TLN EFB

