1  JAMES M. WAGSTAFFE (95535)
   wagstaffe@kerrwagstaffe.com
2  KEVIN B. CLUNE (248681)
   clune@kerrwagstaffe.com
3  KENNETH P. NABITY (287927)
   nabity@kerrwagstaffe.com
4  **KERR & WAGSTAFFE LLP**
   101 Mission Street, 18th Floor
5  San Francisco, CA 94105–1727
   Telephone: (415) 371-8500
6  Fax: (415) 371-0500

7  Attorneys for Plaintiffs
   DENISE HUSKINS and AARON QUINN
8

9
                  **UNITED STATES DISTRICT COURT**
10
                  **EASTERN DISTRICT OF CALIFORNIA**
11

12

13  DENISE HUSKINS and AARON QUINN,          Case No. 2:16-cv-00603-TLN-EFB

14              Plaintiffs,                   **JOINT STATUS REPORT**

15          v.

16  CITY OF VALLEJO, a public entity, KENNY
    PARK, MATHEW MUSTARD, and DOES 1-
17  25,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's Order Requiring Joint Status Report, Plaintiffs Denise Huskins,

2  and Aaron Quinn (collectively "Plaintiffs") and Defendants City of Vallejo, Kenny Park, and

3  Matthew Mustard (collectively "Defendants") submit the following Joint Status Report:

4    **a)    Brief summary of the claims**

5  Plaintiffs' Statement

6    Plaintiffs allege that Defendants violated their Fourteenth Amendment rights pursuant to

7  42 U.S.C. § 1983 and *Paul v. Davis* (stigma plus), defamed Plaintiffs pursuant to California Civil

8  Code §§ 43, et seq., violated Plaintiffs' Fourth and Fourteenth Amendments via unreasonable

9  seizure pursuant to 42 U.S.C. § 1983, and falsely arrested and imprisoned Plaintiff Aaron Quinn

10  ("Quinn").  Plaintiffs further allege that Defendants are liable for intentional and negligent

11  infliction of emotional distress.

12    On March 23, 2015, Plaintiffs were sleeping at Quinn's home, when one or more

13  intruders[1] broke into the home, blindfolded Plaintiffs, bound their hands and feet, and drugged

14  them.  The assailant instructed Quinn that Huskins would be kidnapped for ransom, that Quinn

15  was being monitored, and that the assailant would harm Denise if Aaron went to the police.  The

16  assailant followed through on his threats and took Denise.

17    Quinn succumbed to sleep from the effects of the sedative the assailant gave him and

18  awoke several hours later.  He agonized about whether contacting the authorities was in Denise's

19  best interest and ultimately called the Vallejo Police Department to seek their help ("VPD").

20    VPD immediately (and without any evidence) assumed that Aaron had killed Denise, and

21  ignored all evidence to the contrary.  VPD put him in prison clothes and abusively interrogated

22  him for nearly 18 straight hours, while cutting off his access to his family.  During this

23  interrogation, VPD made it clear that Aaron was not free to leave and did not allow him to speak

24

25

26  [1]    Due to the manner in which they were blindfolded and bound, it seemed to Plaintiffs at
the time that there were multiple people involved, although only one assailant (Matthew Muller)
27  is currently being prosecuted for the crime.  For ease of reference, Plaintiffs simply reference the
"assailant" (singular).

28

KERR
&
WAGSTAFFE
LLP

Case No. 2:16-cv-00603-TLN-EFB                                                      1                                              JOINT STATUS REPORT

to an attorney when he asked for one.  Eventually, Quinn was allowed to speak with his brother, who recognized Quinn was not free to leave and assisted Quinn in finding an attorney by 9:00 a.m. the following morning.  VPD had no evidence that Quinn had done anything wrong, and released him.

Meanwhile, Huskins was transported several hours away to a home where she was raped multiple times.  The assailant also forced Huskins to record a statement referencing recent news in order to demonstrate that she was still alive as of the time of the recording.  The audio establishing that Denise was alive was sent to a San Francisco Chronicle reporter, and ultimately VPD.  Huskins's mother and brother confirmed it was Huskins on the tape.  Defendant Mathew Mustard asks Huskins's mother whether Huskins had been sexually assaulted before.  When Huskins's mother replied that Huskins had been previously sexually abused as a child, Mustard told Huskins's mother that made sense because women who have already been sexually assaulted often pretend that it is happening again in order to gain attention and re-live the excitement of that experience.

Later, the kidnapper told Huskins she would be released, and then drugged and blindfolded her and put her in a car and drove her several hours.  On March 25, 2015, after being kidnapped, assaulted, and detained for over two days, Huskins was released near her parents' homes in Huntington Beach.  The Huntington Beach Police Department ("HBPD") observed "darker impression circles" around her eyes, consistent with Huskins's and Quinn's statements that they had been forced to wear swim goggles as blindfolds.  Huskins spoke with HBPD for nearly one hour about her kidnapping and release.

Although VPD had neither seen nor spoken with Huskins, Mustard telephoned HBPD, spoke with them about the case, and ultimately spoke with Huskins's cousin who was on the scene.  Mustard did not inquire about Huskins's condition or follow up on her story, but instead immediately attacked Huskins verbally and threatened her with potential criminal prosecution.  Mustard told Huskins's cousin that Quinn was cooperating with VPD, and whoever first accepted a "proffer of agreement" first would get immunity.  Mustard also told Huskins's cousin, "I don't want to hear any more about this Navy Seal bullshit," or words to that effect (in

1  reference to certain details that both Huskins and Quinn had relayed to the police regarding the

2  circumstances surrounding Denise's kidnapping).  Huskins learned about VPD's prior assertions

3  that Quinn murdered Huskins and its new assertions that both Huskins and Quinn had faked the

4  entire story.  Fearful that VPD would place her back in a confined area and again subject her to

5  additional trauma, and that she was unjustly being painted as a suspect in a crime rather than as

6  the victim that she truly was, Huskins took a private flight back to the Bay Area.

7          Then, without any evidence, and in an attempt to deflect from VPD's own inadequate

8  investigation, VPD went before a nationally televised audience and falsely labeled Huskins and

9  Quinn as having faked the entire event. For example, VPD released a press release which falsely

10  stated:

11          Today, there is no evidence to support the claims that this was a
            stranger abduction or an abduction at all. Given the facts that have
12          been presented thus far, this event appears to be an orchestrated
            event and not a kidnapping.
13

14  At a press conference that same evening, VPD Lieutenant Kenny Park made the following

15  statements, each of which were false:

16          "And from this point forward, I will not refer to them as a victim or a
            witness."
17

18          "We also know that the statement that Mr. Quinn provided was such an
            incredible story, we initially had a hard time believing it, and, upon further
            investigation, we were not able to substantiate any of the things that he
19          was saying."

20          "So over the course of the last few days, if I can kind of put things in
            perspective, we have had over 40 police detectives from the local, state
21          and federal levels, and over 100 support personnel assisting in the
            investigation, working around the clock, to help locate Ms. Huskins. That
22          is a tremendous amount of resources that, in my opinion, was wasted. *I
            can sit here and apologize for me – for all of us – being guarded with
23          our information, but I can tell you in the grand scheme of things, Mr.
            Quinn and Ms. Huskins has plundered valuable resources away from
24          our community, and has taken the focus away from the true victims of
            our community, while instilling fear amongst our community
25          members. So, if anything, it is Mr. Quinn and Ms. Huskins that owes
            this community an apology.*
26

27          Question: "Can you say again, Lieutenant, what this has done to the
28          community of Vallejo, just getting out of bankruptcy, and a very small

police department?"

Lt. Park: "If you can imagine devoting all of our resources, 24 hours a day, *on what I will – uh - classify as a wild goose chase* – it's a tremendous loss. It's disappointing, it's disheartening, and *the fact that we've essentially wasted all of these resources, for essentially nothing, is upsetting."*

Question: "Is there any evidence that makes you know, conclusively, that this was a fake? I mean, did something come up that made it without argument that this was all a hoax?"

Lt. Park: "*I can tell you that our investigation has concluded that none of the claims has been substantiated. I can go one step further to say this – that this was not a random act, and that the members of our community are safe, and that they have nothing to fear.*"

Each statement was false and despicable.  VPD formally accused two victims of a horrific home invasion and kidnapping of falsifying the entire incident, without any evidence and wholly out of frustration and spite over their own failed investigation.

Within minutes of VPD's false statements, VPD successfully turned the ordeal into a worldwide media frenzy proliferating VPD's public smearing of Plaintiffs.

Huskins indicated through her attorney that she would cooperate, and wished to submit to a sexual assault exam as soon as possible.  VPD demeaned the exam request, and said she should "keep her clothes on."  VPD publicly and privately implied that Huskins had lied about being sexually assaulted.  Nonetheless, Huskins eventually received the sexual assault exam, which on information and belief VPD never tested, and then spoke with VPD for nearly two full days.

In June, Matthew Muller was arrested in connection with a similar invasion and assault. On July 13, 2015, an unsealed FBI affidavit detailed Muller's purported involvement in Huskins's kidnapping.  The 50-page affidavit mirrored the accounts of Plaintiffs and directly contradicts VPD's public statements, going so far as to explain how VPD's statements could hurt the investigation, noting that VPD's statements "that this was not a kidnapping . . . could risk the suppression of any evidence seized pursuant to the search warrant . . . ."

On July 20, 2014, the City of Vallejo admitted that "it is clear now that there was a kidnapping on March 23, 2015, that it was not a hoax or orchestrated event and that VPD conclusions were incorrect."  But even then, VPD still maintained that it had done nothing wrong

1  given "the information that was available at the time."  In the meantime, Huskins and Quinn's

2  lives and reputations were completely destroyed, forcing them to leave their jobs and the Vallejo

3  area.

4       Defendants have filed motions to dispose of some—but not all—of Plaintiffs' claims.

5  <u>Defendants' Statement:</u>

6       Plaintiffs Quinn and Huskins' federal defamation claim is not legally cognizable, and

7  their state law defamation and emotional distress claims are barred by state-law immunities.

8  Defendants seek to dispose of these claims through their pending motion to dismiss and special

9  motion to strike.

10      Plaintiff Quinn also alleges federal and state causes of action asserting false

11 imprisonment arising from his voluntary interview with Vallejo Police and the FBI.  Defendants

12 deny liability.

13      Defendants' pending motions seek to dispose of all of Plaintiff Huskins' claims, all but

14 two of Plaintiff Quinn's claims, and to eliminate Kenny Park as a defendant.

15      **b)      Status of service upon all defendants and cross-defendants**

16      All Defendants have been served.

17      **c)      Possible joinder of additional parties**

18      Plaintiffs are currently unaware of all the facts and circumstances surrounding

19 Defendants' handling of the underlying investigation in this matter, including the roles that

20 various officers played in causing them harm.  To the extent discovery reveals further wrongful

21 conduct on the part of any other individuals, Plaintiffs may seek to add them at that time.

22      Defendants anticipate that the outcome of the pending motions could significantly limit

23 the claims and parties remaining in this litigation.  Depending on which claims and parties

24 survive, however, defendants may seek to add additional co-defendants.

25      **d)      Contemplated amendments to the pleadings**

26      Plaintiffs may amend their complaint to add additional individual defendants when the

27 names of those individuals are ascertained.

28      **e)      The statutory basis for jurisdiction and venue**



KERR
&
WAGSTAFFE
LLP

5

Case No. 2:16-cv-00603-TLN-EFB                                    JOINT STATUS REPORT

This Court has federal subject matter jurisdiction over Plaintiffs' constitutional claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 because these claims arise under federal law. This Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and, on information and belief, all Defendants reside in this District.

   **f)**  **Anticipated discovery and the scheduling of discovery**

     **1)**  **What changes, if any, should be made in the timing, form, or requirement for disclosures Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made**

Plaintiffs' Position:

Plaintiffs do not believe any changes should be made to the timing, form, or requirements for Rule 26 disclosures.  Plaintiffs shall serve Rule 26 disclosures on August 11, 2016, which is two weeks from the Rule 26(f) conference, as is required under Rule 26(a)(1)(c).

Defendants have improperly asserted that, contrary to the plain language of Rule 26(d)(1), discovery "has not yet opened in this case" because they have filed a motion to dismiss and an anti-SLAPP motion.  As Plaintiffs have stated during the parties' meet-and-confer efforts on this issue, the mere filing of a dispositive motion, such as a motion to dismiss or motion to strike, does not stay discovery.  "The Federal Rules of Civil Procedure do[] not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending.  Indeed, district courts look unfavorably upon such blanket stays of discovery." *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-02630, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011); *see also Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600–01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect.  In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.")  Similarly, the filing of an anti-SLAPP motion in federal court likewise does not stay discovery because federal—and not state—procedural law applies in federal court. *Metabolife Int'l, Inc. v.*

KERR
&
WAGSTAFFE
LLP

6

Case No. 2:16-cv-00603-TLN-EFB                JOINT STATUS REPORT

1   *Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).  That is particularly true where, as here, the issues in

2   dispute under the anti-SLAPP motion relate to factual matters.  *Wilburn v. Bratcher*, No.

3   215CV00699TLNGGH, 2015 WL 9490242, at *5 (E.D. Cal. Dec. 30, 2015).

4          Plaintiffs are entitled to conduct discovery now under the Rules, particularly given (1) the

5   fact-intensive nature of this case, (2) the pending anti-SLAPP motion that tests the factual

6   sufficiency of Plaintiffs' claims, and (3) the amount of time that has already passed since the

7   events giving rise to Plaintiffs' claims occurred starting in March of 2015 (with memories fading

8   and documents being potentially lost with each passing day).  Defendants have not sought a stay

9   of discovery, and could not meet their burden of demonstrating their heavy burden of

10  demonstrating a stay even if they did.

11         <u>Defendants' Position:</u>

12         Pursuant to Rule 26(a)(1)(C), defendants object that initial disclosures and the commence

13  of discovery are premature at this time.  Discovery has not yet opened, and should remain

14  unopened, because of the pending motion to dismiss.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662

15  (2009) (Rule 8 does not unlock the doors of discovery for a plaintiff who has not stated a claim

16  under Rule 8); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (the purpose of Rule 12(b)(6) is

17  to "streamline litigation by dispensing with needless discovery and factfinding"); *Starr v. Baca*,

18  652 F.3d 1202, 1216 (9th Cir. 2011) (it is unfair to require the opposing party to be subjected to

19  the expense of discovery when the complaint does not satisfy Rule 8); *Rutman Wine Co. v. E.J.*

20  *Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the argument that discovery should be

21  permitted before deciding a motion to dismiss "is unsupported and defies common sense,"

22  because "[t]he purpose of F. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal

23  sufficiency of complaints without subjecting themselves to discovery."); *Havoco of America Ltd*

24  *v. Shell Oil Co*., 626 F.2d 549, 553 (7th Cir. 1980); *Chudasama v. Mazda Motor Corp*., 123 F.3d

25  1353, 1367 (11th Cir. 1997) ("A motion to dismiss based on failure to state a claim for relief

26  should . . . be resolved before discovery begins.").

27         Defendants believe that the majority of the claims in the current complaint alleged should

28  fail as a matter of law, thereby eliminating plaintiff Huskins, defendant Park, and all of the

KERR
—— & ——
WAGSTAFFE
LLP

7

1    defamation and emotional distress claims from this litigation.  It is premature and would be

2    unduly burdensome to prepare initial disclosures and commence discovery when the scope of the

3    claims and the identities of the parties are not yet settled.  The outcome of the motion to dismiss

4    could limit the incident at issue in this case to a roughly 17-hour period of time, between March

5    23-24, 2015, involving Aaron Quinn, the Vallejo Police, and the FBI, which would eliminate the

6    need for any initial disclosures related to claims and defenses pertaining to Denise Huskins and

7    her alleged damages, and any disclosures related to Quinn's alleged wage losses and severe

8    emotional distress.

9            Under the circumstances, defendants believe that the resources of the parties and the

10   Court would be best served by the parties' agreeing to defer initial disclosures and discovery

11   until after the pleadings have settled, but plaintiffs have indicated that they would prefer

12   defendants to move for a protective order before the Court has time to rule on the objection in

13   this Joint Status Report.  Plaintiffs have already issued a subpoena to Huntington Beach

14   regarding records pertaining to Denise Huskins, and have served 87 requests for production on

15   the City of Vallejo, many relating to claims and parties who many not survive the pending

16   motions.

17           **2)        The subjects on which discovery may be needed, when discovery**

18                   **should be completed, and whether discovery should be conducted in**

19                   **phases**

20           Plaintiffs' Position:

21           Plaintiffs will require discovery into the investigation of the assault and kidnapping of

22   Plaintiffs, generally including but not limited to information concerning the public and private

23   statements made and received in connection therewith and documents and other items collected

24   during the investigation, and Defendants' reasons for their public relations assault on Plaintiffs.

25   Plaintiffs believe discovery should begin immediately and be completed on or about March 1,

26   2017.  Plaintiffs may seek to take preliminary discovery in order to respond to Defendants'

27   motion to strike, but otherwise believe there is no need to take discovery in phases.

28           The parties are currently meeting and conferring about what discovery may be required

KERR
&
WAGSTAFFE
LLP

Case No. 2:16-cv-00603-TLN-EFB                                              JOINT STATUS REPORT

1    before the Court rules on the pending anti-SLAPP motion, about the possibility of stipulating to a

2    delay regarding the court's resolution of that motion pending such discovery, and about the

3    possibility that defendants withdraw, without prejudice, certain arguments in the motion so that

4    the matter may be heard as currently scheduled without discovery.

5            Further, and contrary to Defendants' position, there is no reason why the separate federal

6    prosecution of Matthew Muller would prevent discovery from Defendants here.  Initially, as

7    explained above, discovery has opened under Rule 26, has not been stayed, and Defendants have

8    not sought such affirmative relief.  Defendants have an independent obligation to participate in

9    discovery, regardless of what information the FBI also may have.  To the extent information is

10   currently unavailable to the Vallejo Police Department, Defendants can indicate as much in

11   response to any specific discovery request.  To the extent Defendants want to conduct their own

12   discovery from the FBI or Mueller, any potential resistance they may encounter from those third

13   parties provides no basis for Defendants refusal to satisfy their independent discovery

14   obligations.

15           Defendants' Position:

16           Defendants believe that it is premature to plan discovery when the scope of the claims

17   and the identity of litigants remain unsettled.  In addition, Huskins' alleged kidnapper, Matthew

18   Muller, currently awaits trial.  The FBI has seized the Vallejo Police Department's evidence

19   related to this case, to which defendants may need access in order to prepare complete initial

20   disclosures and to perfect discovery, depending on the scope of the claims that survive the

21   pending motion to dismiss.  The FBI has not yet indicated to defendants whether it would be

22   willing to participate in civil discovery.  While defendants do not believe that discovery has yet

23   opened, if it has, then defendants may need to request a stay of discovery pending the resolution

24   of Muller's criminal proceedings.

25           **3)      What changes, if any, should be made in the limitations on discovery**

26                   **imposed under the Civil Rules and what other limitations, if any,**

27                   **should be imposed**

28           Plaintiffs may seek leave to take more than the ten depositions allowed under the Federal

1  Rules of Civil Procedure.  The names and identities of individuals involved who may have

2  relevant information is not currently known, and Plaintiffs will be in a better position to identify

3  the total number of depositions needed at a later time.

4      Defendants believe that it is premature to plan discovery when the scope of the claims

5  and the identity of litigants remain unsettled.

**4)    The timing of the disclosure of expert witnesses and information**

**required by Rule 26(a)(2)**

8      Plaintiffs propose that designation of experts occur on February 1, 2017.

9      Defendants believe that it is premature to plan expert discovery when the scope of the

10  claims and the identity of litigants remain unsettled, and it is unknown how much time may be

11  consumed by plaintiffs' potential efforts to amend the complaint.

**5)    Proposed dates for discovery cut-off**

13      Plaintiffs propose a discovery cut-off of March 1, 2017.

14      Defendants believe that it is premature to plan the discovery cut off when the scope of the

15  claims and the identity of litigants remain unsettled, and it is unknown how much time may be

16  consumed by plaintiffs' potential efforts to amend the complaint.

**g)    Proposed date by which all non-discovery motions shall be filed**

18      Plaintiffs propose Thursday, April 13, 2017 at 2:00 p.m. for the hearing of dispositive

19  motions.  Thus, all non-discovery motions shall be filed no later than March 16, 2017.

20      Defendants believe that it is premature to set the motions cut-off date when the scope of

21  the claims and the identity of litigants remain unsettled, and it is unknown how much time may

22  be consumed by plaintiffs' potential efforts to amend the complaint.

**h)    Proposed dates for final pretrial conference and trial**

24      Plaintiffs propose that the final pretrial conference be set for Thursday, May 18, 2017 at

25  2:00 p.m. with trial set to begin on June 12, 2017.

26      Defendants believe that it is premature to set the pretrial conference when the scope of

27  the claims and the identity of the litigants remain unsettled, and it is unknown how much time

28  may be consumed by plaintiffs' potential efforts to amend the complaint.



i)     **Estimate days of trial, and whether any party has demanded a jury**

Plaintiffs have demanded a jury and estimate that the trial will take 15 court days.

Defendants have not yet answered, but expect to include a jury demand when their answer is filed.  The estimate of the trial date will depend on what remains to be litigated after the pleadings have settled.

j)     **Appropriateness of special procedures such as reference to a special master or agreement to try the matter before a magistrate judge pursuant to 28 U.S.C. § 636(c)**

The parties do not believe it would be appropriate to reference this case to a special master or magistrate judge.

k)     **Proposed modification of standard pretrial procedures due to the special nature of the case**

Plaintiffs do not believe any modification of standard pretrial procedure is necessary.

l)     **Whether the case is related to any other case, including any matter involving bankruptcy**

The parties do not believe that the criminal prosecution of Matthew Muller constitutes a "related case," as that term is defined under the Local Rules, but notes the pendency of that action.  *See* USA v. Mueller Case No. 2:15-CR-00205 TLN.

Defendants observe, however, the depending on the scope of the claims and litigants remaining in the civil action after the pleadings have settled, defendants may need to obtain discovery from Muller and from the FBI.  Defendants are still in the process of seeking clarification from the FBI as to whether it will oppose such discovery.

m)     **Prospects for settlement, including whether a settlement conference should be scheduled**

The parties have discussed pursuing early mediation, but do not believe it is appropriate to schedule a settlement conference at this time.  Plaintiffs believe a settlement conference should be scheduled shortly before the trial date.

Defendants believe that that case cannot be properly valued for purposes of settlement,

KERR
—— & ——
WAGSTAFFE
LLP

Case No. 2:16-cv-00603-TLN-EFB                                                    JOINT STATUS REPORT

1    until the pleadings have settled.

2          **n)      Any other matters that may be conducive to the just and expeditious**

3                   **disposition of the case, including whether counsel will waive any**

4                   **disqualification and stipulate to the trial judge acting as a settlement judge**

5          The parties will not waive disqualification and will not stipulate to the trial judge acting

6    as a settlement judge.

7

8    Date:  August 11, 2016                         **KERR & WAGSTAFFE LLP**

9

                                                    By:  /s/ Kevin B. Clune
10                                                       KEVIN B. CLUNE

11                                                  Attorneys for Plaintiffs
                                                    DENISE HUSKINS and AARON QUINN
12

13

14

15   Date:  August 11, 2016                         **CREGGER & CHALFANT LLP**

16

17                                                  By:  /s/ Wendy Motooka (as authorized on 8/11/16)

18                                                       ROBERT L. CHALFANT, SBN: 203051
                                                         WENDY MOTOOKA, SBN: 233589
19
                                                    Attorneys for Defendants CITY OF VALLEJO, LT.
20                                                  KENNY  PARK,  and  DETECTIVE  MATHEW
                                                    MUSTARD
21

22

23

24

25

26

27

28