JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
KEVIN B. CLUNE (248681)
clune@kerrwagstaffe.com
KENNETH P. NABITY (287927)
nabity@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
DENISE HUSKINS and AARON QUINN

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HUSKINS and AARON QUINN, | Case No. 2:16-cv-00603-TLN-EF |
| Plaintiffs, | |
| v. | **DECLARATION OF NICHOLAS HUSKINS** |
| CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, | Date: September 8, 2016
Time: 2:00 p.m.
Courtroom: 2, 15th Floor
Judge: Hon. Troy L. Nunley |
| Defendants. | |

I, Nicholas Huskins, make this declaration of my own personal knowledge, and, if called as a witness, I could and would testify competently to the facts set forth below.

1. Denise Huskins is my first cousin and I have known her all of my life.

2. I am a lawyer, having graduated Loyola Law School in Los Angeles in 2014 and been admitted to the bar in December of that same year. I currently practice in civil litigation on intellectual property matters at a law firm in Los Angeles.

3. On March 23, 2015, I learned from my mother that Denise had been forcibly taken against her will in the early hours of that same day. Based on those statements, and on statements made to the press by the Vallejo Police Department, I understood that she had been kidnapped for ransom. Like the rest of my family, I was incredibly concerned about her well-being and feared for her safety.

4. During the morning of March 25, 2015, I learned that Denise had been located in Huntington Beach, California. I went to the Huntington Beach Police Department ("HBPD") to offer whatever support I could. My aunt, Jody Huskins, was already there. I eventually received information from a family member that Denise was not at the HBPD but instead at her father's apartment complex.

5. I rushed to Denise's father's apartment complex with my aunt Jody and found a chaotic scene. Denise was surrounded in a small room in a small apartment by approximately five-to-seven different police officers who were snapping pictures of her and gathering witness statements. In addition, there were approximately another 10-15 officers outside. Many members of the news media were outside as well.

6. I was concerned that she was in close proximity with so many people and involved in such a chaotic scene, given that she had just been released from a kidnaping.

7. I informed a HBPD police officer that I was not only Denise's cousin, but also a lawyer. After learning that I was a lawyer, the police let me speak to Denise.

8.     Denise appeared very shaken up. She was unusually unfocused, quiet, and withdrawn, which I could tell from her body posture, physical movements, and brief conversation. In my experience, Denise has always been a very comfortable, confident, and easy going person. But on that day, she had a shaky tone of voice, blank facial expressions, and closed body language. Her demeanor differed sharply from the person I had known all of my life.

9.     I was subsequently informed that Denise had been speaking to HBPD police officers since approximately an hour before I arrived.

10.    At approximately 12:00 p.m., I was told by HBPD officers that the police officers in Vallejo needed to speak with me, and that they would not let me take Denise home until I spoke with someone with the Vallejo Police Department ("VPD").

11.    I briefly spoke with a man on the telephone who identified him as Detective Matt Mustard of the VPD. In a brief conversation, Detective Mustard said that the VPD needed to interview Denise in person in Vallejo, and that the VPD could arrange for a jet plane to take her there, but that she could travel there by whatever means she preferred. I told Detective Mustard that I needed to talk with Denise before I could respond on her behalf. He asked that I do that, and that we speak again afterwards.

12.    Given how long Denise had already been speaking to HBPD officers, the chaotic scene at the apartment, with all of the police and media attention, the fact that Denise had just been released from being abducted and held for ransom, and Denise's visibly shaken demeanor, my aunt and I took Denise back to my mother's house (with the assistance of HBPD) to give her some space to process everything that was happening.

13.    There, Denise again was visibly confused, withdrawn, and anxious. She indicated that she needed to be alone, went into my mother's room, and shut the door.

14.    Approximately two-to-four hours after my initial call with Detective Mustard, I

spoke with him again. During this call, Detective Mustard immediately began telling me he "did not believe" the story about the "frog men" (or possibly he said "men in frog suits") referring to details about the abduction that Denise and Aaron had apparently given the police, and suggested that Denise and Aaron had invented the whole story. Detective Mustard said that Aaron was already "in custody" with Vallejo PD and that Vallejo was only going to "proffer an agreement" for leniency to either Aaron or Denise—but not both. He then immediately added that one of them—Aaron—was already there in Vallejo, implying Denise should hurry back to Vallejo to speak with the VPD before Aaron accepts the offer. His tone during the entire conversation was hostile and aggressive, and implied that Denise was going to be prosecuted for supposedly lying about the circumstances of her disappearance.

15. I conveyed the information about my call with Detective Mustard to Denise.

16. Denise ultimately decided to return to Vallejo that evening on a commercial plane to San Francisco.

17. I drove with Denise to the Long Beach Airport and dropped her off there.

18. Shortly after I returned home, Lt. Kenny Park of the VPD gave a press conference, which I watched live. In that press conference, Lt. Park accused Denise and Aaron of perpetrating a hoax.

19. A true and correct version of the press conference that I witnessed is available at the following URL: http://abc7news.com/news/raw-video-vallejo-pd-believes-womans-kidnap-report-was-hoax/573559/.

20. Some statements made in that press conference misrepresented the facts as I knew them to be. For example, during the press conference, Lt. Park was asked: "How did you become aware that [Denise] had an attorney, and what kind of communication have you had with that attorney and why isn't he providing any information." Lt. Park responded "Well I don't know all the circumstances surrounding it, but I can tell you that *she and her family have*

Case 2:16-cv-00603-TLN-EFB   Document 12-3   Filed 08/25/16   Page 5 of 5

*retained private attorneys and that they were at the Huntington Beach Police Department."* He was then asked: "Do you know why they were at the Huntington Beach Police Department," Lt. Park said "Well, I'll leave that up to you to speculate." As I stated above, *I* was the attorney who was at the Huntington Beach Police Department. And I was there because I was her cousin—not because she had "retained" private attorneys immediately upon surfacing in Huntington Beach.

21. In addition, Lt. Park suggested that her family members refused to communicate with Vallejo PD, which was not true. For example, Lt. Park said that the family's contact with Vallejo PD had stopped at about 11:00 in the morning. In reality, I had personally spoken to Detective Mustard twice after 11:00 am, first at around 12:00 p.m., and then sometime between approximately 2:00 and 4:00 p.m., which is when Detective Mustard threatened Denise (as discussed above).

22. He likewise said that "we have not been in contact with the attorney." To the extent he was talking about me, that statement was false. As explained above, I had spoken to Detective Mustard multiple times.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Los Angeles, California on August 24, 2016

_____
NICHOLAS HUSKINS

KERR & WAGSTAFFE LLP

Case No. 2:16-cv-00603-TLN-EF

4

DECLARATION OF NICHOLAS HUSKINS