JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
KEVIN B. CLUNE (248681)
clune@kerrwagstaffe.com
KENNETH P. NABITY (287927)
nabity@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
DENISE HUSKINS and AARON QUINN

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HUSKINS and AARON QUINN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, <br><br> Defendants. | Case No. 2:16-cv-00603-TLN-EF <br><br> **DECLARATION OF KEVIN CLUNE IN SUPPORT OF OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE THE SECOND AND FIFTH CAUSES OF ACTION** <br><br> Date: September 8, 2016 <br> Time: 2:00 p.m. <br> Courtroom: 2, 15th Floor <br> Judge: Hon. Troy L. Nunley |

KERR
&
WAGSTAFFE
LLP

I, Kevin Clune, make this declaration of my own personal knowledge, and, if called as a witness, I could and would testify competently to the facts set forth below.

1.      I am a partner at Kerr & Wagstaffe LLP, counsel for Plaintiffs Denise Huskins and Aaron Quinn.

2.      Our office served the Huntington Beach Police Department with a subpoena seeking all materials related to their investigation of Denise Huskins after her release in Huntington Beach.  Attached hereto as <u>Exhibit A</u> is a true and correct copy of excerpts of that response, including a responsive cover letter and the portion of Huntington Beach Information Report 2015-004362, redacted to remove personal information (such as third party addresses, dates of birth, and contact information) immaterial to this motion.

3.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of the press release issued by the Vallejo Police Department on March 25, 2015.  This press release is still accessible on VPD's website at http://www.ci.vallejo.ca.us/common/pages/DisplayFile.aspx?itemId=216500

4.      The press conference held by Kenny Park of the Vallejo Police Department on March 25, 2015 at 9:30 p.m. can be viewed at http://abc7news.com/news/raw-video-vallejo-pd-believes-womans-kidnap-report-was-hoax/573559/.  My office is concurrently lodging with the Court and serving on opposing counsel a DVD containing the video, which will be marked as <u>Exhibit C</u> to this Declaration.  In addition, concurrently filed herewith is the Declaration of Nicholas Huskins, which verifies that this video is a true and accurate depiction of that press conference, which Nicholas Huskins saw when it was first broadcast.

5.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of a screenshot of an article published on March 27, 2015 by the Daily Star in the United Kingdom, which is still accessible online as of today at http://www.dailystar.co.uk/news/latest-news/433043/Gone-girl-kidnapping-faked-woman .

6.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of a screenshot of a video and article titled, "Kidnap hoax: Is she the real-life 'Gone Girl'?", which is still accessible online at http://www.hlntv.com/video/2015/03/26/kidnap-hoax-denise-huskins-gone-girl-real-life .

7.      Attached hereto as <u>Exhibit F</u> is a true and correct copy of correspondence my

1   office received from counsel for Defendants, Robert L. Chalfant, on August 8, 2016.  On page 4,

2   counsel for Defendants states that Quinn's claims for false arrest and unreasonable seizure were

3   "sufficiently pled" in this action.

4        I declare under penalty of perjury under the laws of the United States that the foregoing is

5   true and correct.

6        Executed on August 25, 2016.

7                     /s/ Kevin B. Clune

8                     KEVIN B. CLUNE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

 **CITY OF HUNTINGTON BEACH**

2000 MAIN STREET
P.O. BOX 70

POLICE DEPARTMENT

CALIFORNIA 92648
Tel (714) 960-8811

ROBERT HANDY
Chief of Police

## Huntington Beach Police Department
### Declaration / Custodian of Records

I, Marilu G. Cañas, declare:

I am the Records Administrator and Custodian of Records for the Huntington Beach Police Department, and I have authority to certify said records. The records submitted were prepared by the personnel of the business in the ordinary course of business. I declare the following:

On August 9, 2016, I was served with a Subpoena to produce documents in a civil action issued out of the United States District Court, Eastern District of California; in an action titled *Denise Huskins and Aaron Quinn v. City of Vallejo, a public entity, Kenny Park, Mathew Mustard, and Does 1-25, Case Number 2:16-CV-00603-TLN-EFB*. The subpoena called for the following records:

1. Information Report Number 2015-004362.
2. All communications with the Vallejo Police Department concerning Denise Huskins from March 23, 2015 to present, including but not limited to statements and communications concerning information report 2015-004362.
3. All information reports regarding Denise Huskins from March 23, 2015 to present, including but not limited to any police, investigation, or incident reports.
4. All recorded statements with Denise Huskins from March 23, 2015 to present.
5. All communications with Denise Huskins from March 23, 2015 to present.
6. All recorded statements with Denise Huskins' family from March 23, 2015 to the present, including but not limited to Mike Huskins, Jane Huskins, Devin Huskins, Jeff Kane, Jody Huskins, Nick Huskins, Carly Huskins, Amy Mattison, and Jeff Remmele.
7. All communications with Denise Huskins' family from March 23, 2015 to the present, including but not limited to Mike Huskins, Jane Huskins, Devin Huskins, Jeff Kane, Jody Huskins, Nick Huskins, Carly Huskins, Amy Mattison, and Jeff Remmele.
8. All recordings of any HBPD communications with Denise Huskins since March 23, 2015, including but not limited to transcripts and audio, video, or written recordings.
9. All items seized arising out of any interaction with Denise Huskins from March 23, 2015 to present, including but not limited to documents, evidence, photographs, and recordings.



# CITY OF HUNTINGTON BEACH

2000 MAIN STREET
P.O. BOX 70

POLICE DEPARTMENT

ROBERT HANDY
Chief of Police

CALIFORNIA 92648
Tel (714) 960-8811

Of the records described in said subpoena, Huntington Beach Police Department has provided a full copy of Information Report Number 15-004362. This report includes the Case Status Report, Incident Report, Property Report and all Supplemental Reports from March 25, 2015 to present.

Of the records described in said subpoena, Huntington Beach Police Department has provided a full copy of call for service CN P15034694 with a copy on CD of the related audio recordings regarding Information Report Number 15-004362 that occurred on March 25, 2015 in Huntington Beach, CA.

Of the records described in said subpoena, Huntington Beach Police Department has not provided any additional communications with the Vallejo Police Department concerning Denise Huskins from March 23, 2015 to present as none were located.

Of the records described in said subpoena, Huntington Beach Police Department has provided a copy on CD of audio recordings with Denise Huskins that occurred on March 25, 2015 in Huntington Beach, CA. Huntington Beach Police Department has no additional reports, recorded statements, transcripts, audio, video, written recordings or communications with Denise Huskins from March 23, 2015 to present.

Of the records described in said subpoena, Huntington Beach Police Department has provided a copy on CD of audio recordings with witnesses Analisa Glasgow, Pete Glasgow and Taylor Kane that occurred on March 25, 2015 in Huntington Beach, CA. Huntington Beach Police Department has no additional recorded statements or communications with additional Denise Huskins' family members from March 23, 2015 to the present.

Of the records described in said subpoena, Huntington Beach Police Department has not provided additional items seized arising out of any interaction with Denise Huskins from March 23, 2015 to present, including documents, evidence, photographs and recordings. Per Detective S. Wickser, all original photographs and evidence items identified in S. Lotts' CSI Report dated March 25, 2015 were released to the Vallejo Police Department and not booked into Huntington Beach Police Department Property as evidence.

I checked Property and there were no additional items reported.

This Declaration is executed on August 9, 2016, at Huntington Beach, California.  I declare under penalty of perjury that the foregoing is true and correct.

Marilu G. Cañas
Records Administrator

☐ Records - Please
Card Suspects

# CASE STATUS REPORT

HUNTINGTON BEACH POLICE DEPARTMENT INVESTIGATION DIVISION

| REPORTED OFFENSE(S): | Info Report | | | DR#: | 15-004362 |
|---|---|---|---|---|---|
| DATE OF OFFENSE: | 3/25/2015 | DATE OF THIS REPORT: | 6/16/2015 | | |

| | | |
|---|---|---|
| ☐ CASE CLEARED BY ARREST | ☐ CASE INACTIVE | ☐ WARRANT ARREST ONLY |
| ☐ EXCEPTIONAL CLEARANCE | ☒ CASE WORKED/CLOSED | |
| ☐ CASE UNFOUNDED | ☐ WARRANT(S) ISSUED | |

## SUSPECT STATUS

| | | | | ARREST BY PATROL | DETECTIVE ARREST | FELONY COMPLAINT | MISDEM. COMPLAINT | D.A. REJECT | VIC. REFUSED PROS | JUVIE PETITIONED | JUVIE REF. TO CSP | RELE. TO OTHER AGENCY | RELEASED | MISSING PERSON FOUND |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total # ADULTS Arrested: | | | | | | | | | | | | | | |
| Total # JUVENILES Arrested: | | | | | | | | | | | | | | |
| # Arrested by other Agency: | | | | | | | | | | | | | | |
| Other Agency Name: | | | | | | | | | | | | | | |
| | NAME | | HIGHEST CHARGE | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | |

## VICTIMS

| | NAME | VICTIM OF WHAT CRIME(S) |
|---|---|---|
| 1 | Huskins, Denise | 207 PC |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

| TELETYPE | GENERAL BROADCAST ISSUED?: | n/a | G.B. CANCELLED?: | n/a | DATE: |
|---|---|---|---|---|---|

## PROPERTY & EVIDENCE

| ☐ HOLD PROPERTY PER FORM | ☒ NO PROPERTY | |
|---|---|---|
| ☐ RELEASE PROPERTY PER FORM | $ ADDITIONAL STOLEN PROPERTY | $ RECOVERED PROPERTY |
| A) CURRENCY, NOTES, ETC. | | |
| B) JEWELRY & PRECIOUS METALS | | |
| C) CLOTHING & FURS | | |
| D) LOCALLY STOLEN MOTOR VEHICLES | | |
| E) OFFICE EQUIPMENT | | |
| F) TELEVISIONS, RADIOS, STEREOS, ETC. | | |
| G) FIREARMS | | |
| H) HOUSEHOLD GOODS | | |
| I) CONSUMABLE GOODS | | |
| J) LIVESTOCK | | |
| K) MISCELLANEOUS | | |
| Z) BICYCLES | | |

## NARRATIVE

Courtesy report for Vallejo PD.  All property turned over to Vallejo PD detectives.

| DETECTIVE SIGNATURE: S. Wickser #1070 | APPROVED BY: JW |
|---|---|



# Incident/Investigation Report

## Huntington Beach Police Department

### Case Number: 2015-004362

 

## Incident Information

| Date/Time Reported | Date/Time Occurred | Date/Time Discovered | Officer |
|---|---|---|---|
| 03/25/2015  09:48 | 03/25/2015  09:48 | 03/25/2015  09:48 | (421215) DELIEMA, JONATHAN H |

| Incident Location | | | Supervising Officer |
|---|---|---|---|
| 1842 LAKE ST, HUNTINGTON BEACH, CA 92648 | | | (421216) PAPPAS, TED W |

| Location Comments | Beat | Reporting District |
|---|---|---|
| | 4 | 431 |

| Case Status | Disposition |
|---|---|
| | |

## Charges

| 1 | Charge Type | Description | | | | Statute | UCR | ☐ Att |
|---|---|---|---|---|---|---|---|---|
| | | INFORMATIONAL REPORT | | | | INFORMATIO | 999 | ☑ Com |

| Alcohol, Drugs or Computers Used | Location Type | Premises Entered | Forced Entry | Weapons |
|---|---|---|---|---|
| ☐ Alcohol   ☐ Drugs   ☐ Computers | RESIDENCE/HOME | | ☐ Yes ☐ No | 1. |

| Entry | Exit | Criminal Activity | 2. |
|---|---|---|---|
| | | | 3. |

| Bias Motivation | Bias Target | Bias Circumstances | Hate Group |
|---|---|---|---|
| | | | |

## Victims

| Seq. # | Type | Injuries | Victim of Crimes |
|---|---|---|---|
| 1 | INDIVIDUAL | None | 1 |

| Name(Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|
| HUSKINS, DENISE LOUISE | W | F | ███████ | 29 |

| Height | Weight | Hair | Eye | Ethnicity | SSN |
|---|---|---|---|---|---|
| | | | | | |

| Home Phone | Cell Phone | Business Phone |
|---|---|---|
| ██████ | | |

| Address | Huntington Beach Resident |
|---|---|
| ███ ███ ███████ | |

| Employer Name/Address | Occupation |
|---|---|
| / | |

| Email |
|---|
| |



# Incident/Investigation Report
## Huntington Beach Police Department
### Case Number: 2015-004362



## Witnesses

| Seq. # | Name (Last, First, M) | | | | | Race | Sex | DOB | Age |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SHIPE, JUSTIN FREDERICK | | | | | W | M | | ■ |

| Height | Weight | Hair | Eye | Ethnicity | | SSN |
|---|---|---|---|---|---|---|
| | | | | | | |

| Home Phone | | Cell Phone | | Business Phone |
|---|---|---|---|---|
| | | | | |

| Address | Huntington Beach Resident |
|---|---|
| | |

| Employer Name/Address | Occupation |
|---|---|
| / | |

| Email |
|---|
| |

Witness Notes

| Seq. # | Name (Last, First, M) | | | | | Race | Sex | DOB | Age |
|---|---|---|---|---|---|---|---|---|---|
| 2 | GLASGOW, ANALISA | | | | | | | | ■ |

| Height | Weight | Hair | Eye | Ethnicity | | SSN |
|---|---|---|---|---|---|---|
| | | | | | | |

| Home Phone | | Cell Phone | | Business Phone |
|---|---|---|---|---|
| | | | | |

| Address | Huntington Beach Resident |
|---|---|
| | |

| Employer Name/Address | Occupation |
|---|---|
| / | |

| Email |
|---|
| |

Witness Notes

## Other Persons Involved

| Name Code | | Seq. # | Name (Last, First, M) |
|---|---|---|---|
| Involved, Other | | 1 | KERRY, WILLIAM |

| Race | Sex | DOB | Age | Height | Weight | Ethnicity | SSN |
|---|---|---|---|---|---|---|---|
| W | M | | ■ | | | | |

| Home Phone | | Cell Phone | | Business Phone | |
|---|---|---|---|---|---|
| | | | | | |

| Address | Huntington Beach Resident |
|---|---|
| | |

| Employer Name/Address | Occupation |
|---|---|
| | |

| Email |
|---|
| |



# Incident/Investigation Report
## Huntington Beach Police Department
### Case Number: 2015-004362



## Other Persons Involved

| Name Code **Involved, Other** | | Seq. # **2** | Name (Last, First, M) MONTOYA, DANIEL LEON | | | | | |
|---|---|---|---|---|---|---|---|---|
| Race O | Sex M | DOB ▆ | Age ▆ | Height | Weight | Ethnicity | | SSN |
| Home Phone ▆ | | | Cell Phone | | | Business Phone | | |
| Address ▆ | | | | | | Huntington Beach Resident | | |
| Employer Name/Address / | | | | | | Occupation RETIRED LASD | | |
| Email | | | | | | | | |

| Name Code **Involved, Other** | | Seq. # **3** | Name (Last, First, M) CLEMENS, KURT | | | | | |
|---|---|---|---|---|---|---|---|---|
| Race | Sex | DOB | Age | Height | Weight | Ethnicity | | SSN |
| Home Phone ▆ | | | Cell Phone ▆ | | | Business Phone | | |
| Address ▆ | | | | | | Huntington Beach Resident | | |
| Employer Name/Address / | | | | | | Occupation TEACHER | | |
| Email | | | | | | | | |

| Name Code **Involved, Other** | | Seq. # **4** | Name (Last, First, M) GLASGOW, PETER | | | | | |
|---|---|---|---|---|---|---|---|---|
| Race O | Sex M | DOB ▆ | Age ▆ | Height | Weight | Ethnicity | | SSN |
| Home Phone ▆ | | | Cell Phone ▆ | | | Business Phone | | |
| Address ▆ | | | | | | Huntington Beach Resident | | |
| Employer Name/Address / | | | | | | Occupation CARPENTER | | |
| Email | | | | | | | | |



# Incident/Investigation Report
## Huntington Beach Police Department
### Case Number: 2015-004362



## Other Persons Involved

| Name Code | | Seq. # | Name (Last, First, M) | | | | | |
|---|---|---|---|---|---|---|---|---|
| Involved, Other | | 5 | KANE, TAYLOR | | | | | |

| Race | Sex | DOB | | Age | Height | Weight | Ethnicity | | SSN |
|---|---|---|---|---|---|---|---|---|---|
| | | ███ | | ███ | | | | | |

| Home Phone | | Cell Phone | | Business Phone |
|---|---|---|---|---|
| ███ | | | | |

| Address | | Huntington Beach Resident |
|---|---|---|
| ███ | | |

| Employer Name/Address | Occupation |
|---|---|
| / | |

| Email |
|---|
| |

## Assisting Officers

(420181) ZARAGOZA, ERIC D

(421008) ESKES, MARC E

(421021) CAOUETTE, ALAN T

(421096) BALES, CORWIN A

(421112) WOOD, KENDRA E

(421114) LAZ, LISA C

(421134) KIM, GARY C

(421238) MELSCHAU, JASON D

(421639) TILTON, STEVEN L

(421683) OLESON, TINA

(422084) MARLATT, JENNIFER L

(422609) LOTTS, SEAN P

(421215) DELIEMA, JONATHAN H

(422071) HORN, JARED M

(421216) PAPPAS, TED W

(421124) FONG, STEVEN R

(422102) GONZALES, ROBERT L

(422807) AMSDEN, SHELLY LEIGH



# Incident/Investigation Report
**Huntington Beach Police Department**
Case Number: 2015-004362



## Notes/Narratives

On 3-25-15 at about 0948 hours, I was dispatched to a radio call of an attempt to locate regarding missing person, DENISE HUSKINS. The reporting party called police after receiving a voice mail from HUSKINS in which she claimed that she was at her Mom's house at 1842 Lake Street and was walking to her Dad's house at 208 19th Street #9.

Officer REYNOLDS #1239, Sergeant PAPPAS #1216 and I responded to 1842 Lake Street. Upon arrival we walked through the front unlocked gate. As I walked through the front court yard I could see a small bag and backpack on an outside patio chair. There was no answer at the door and we did not locate anyone at the residence.

Sergeant PAPPAS and later other Officers secured the scene at the Lake Street address with the bag and back pack while Officer REYNOLDS and I responded to 208 19th Street #9. I walked up the stair case towards unit ■. As I got to the top level I saw a female neighbor standing at the open door of unit ■. I could see HUSKINS standing inside the residence behind her. I said, "Hello Denise, are you ok?" HUSKINS nodded her head "Yes." I asked HUSKINS if she had been kidnapped and she said, "Yes".

The neighbor left the residence and I asked HUSKINS to tell me what had happened to her. I used my department issued digital tape recorder to record my conversation with HUSKINS. I later booked the audio recording into HBPD property as evidence. HUSKINS told me the following:

In substance, HUSKINS told me she awoke while at her boyfriend, Aaron's apartment in Valejo to what looked to be several subjects holding guns with red lasers. They told HUSKINS and Aaron that this was a "robbery" and that they would be "restrained". HUSKINS was told to restrain Aaron with zip ties. Afterwards HUSKINS and Aaron were guided to the closet. HUSKINS looked down the entire time and did not see any of the kidnappers faces. They were told that no one would be harmed and that it was only financial. They were given blind folds HUSKINS described as swim goggles that you could not see through. They were also given headsets which played a relaxing type music with a pre-recorded calm sounding voice reading a message that told them they would be asked questions and if their stories didn't match or they didn't cooperate that they would be punished with "electrical shock" or scratches to their face. They were told a medic would check on them, asked about medical issues and soon there blood pressures were taken.

The kidnappers soon discovered that HUSKINS was not the target and that something had gone wrong. The kidnappers informed HUSKINS they were looking for Aaron's ex fianc, "Andrea Roberts". The kidnappers told HUSKINS they do these "tasks" for a client where they "target someone for some money." They told her that she was not involved and that it had to mostly do with "Andrea Roberts" family. The kidnappers informed HUSKINS that she would have to come with them for 48 hours until Aaron did something for them. HUSKINS' belongings including her bag, backpack and purse were collected by the kidnappers and taken with them. HUSKINS phone was left with Aaron with her pass code for him to send a message to her work about being gone for a couple days. HUSKINS was told to drink a small cocktail with a sedative and was



**Incident/Investigation Report**

**Huntington Beach Police Department**

**Case Number: 2015-004362**



## Notes/Narratives

knocked out before being transported in the trunk of Aaron's "Camry". This lasted for an unknown amount of time before she was switched to the trunk of a different car. She was taken out of the trunk where she felt the cool concrete floor of a garage.

HUSKINS felt like she was brought to a quiet house and placed in a bedroom. The bedroom had a queen size bed, dresser and the windows were barricaded. HUSKINS was blind folded with the use of goggles which were blacked out and told to wear them each time she had contact with the kidnapper or he entered the room. HUSKINS was secured to the bed with a zip tie and a bike lock. HUSKINS told me there was one kidnapper that was with her the entire time. She described him as male white with brownish red hair with no accent. She never knew his name or saw his or the other kidnappers faces. The other three kidnappers were referred to by this kidnapper as, "T, J and L". HUSKINS told me the kidnappers sounded well organized and had "protocols" as if they had done this before.

After a few days it was decided to transport HUSKINS to her home town of Huntington Beach away from Aaron and the commotion of the authorities in Valejo. HUSKINS was driven to Huntington Beach by just the one kidnapper in the back seat of the vehicle and told to lay down. HUSKINS described the vehicle as a smaller white vehicle with a louder modified exhaust. HUSKINS was unsure how long she was in the vehicle because they had given her another "sedative." Se believes they were stuck in "LA Traffic" for a while. The vehicle stopped in the area of Beach Blvd and Utica where the kidnapper got out and removed her bags. He then had HUSKINS exit the vehicle where he took off the blind fold. HUSKINS told me her eyes were still closed because they had also put tape over her eyes described as square pieces of sticky cardboard. HUSKINS was told to face away from the kidnapper and told that he was recording her so that she would not turn around as he drove away.

Once HUSKINS heard the vehicle drive away she removed the tape from her eyes and walked northbound Florida to westbound on Utica towards her Mom's house on Lake. HUSKINS told me no one was home so she asked a Gardner, who was working in the front yard of the house next door, for his cell phone so she could call her Dad and leave a message. She then left her bags on the patio and continued across Lake to southbound 17th Street. HUSKINS turned on Olive Ave towards her Dad's house on 19th Street.

HUSKINS told me relatively speaking she was well cared for, given food and water and allowed to use the restroom frequently. The kidnapper allowed her to shower, change her clothes and brush her teeth. HUSKINS showed me her shoes and large water bottle all of which were given to her by the kidnappers. The kidnappers told HUSKINS that the intention was never to harm or kill her and that she would be released after they achieved a financial goal. HUSKINS told me she was scarred of what could happen to her if she spoke with police and what information she provided would become public.

HUSKINS looked at a satellite view of the area of Beach Blvd and Utica on my cell phone and identified the south alley way of 2020 Florida as the location she was dropped off. I immediately requested a unit to



**Incident/Investigation Report**
Huntington Beach Police Department
Case Number: 2015-004362



## Notes/Narratives

respond to this location to secure the scene.

The above information was relayed to Detectives including Sergeant WINKS, Detective WICKSER, Detective KIM and Sergeant PAPPAS.

HUSKINS had a clam demeanor throughout our conversation. She was able to answer my questions clearly and did not become evasive. Towards the later parts of the interview HUSKINS did become more emotional. It should be documented that upon first contact with HUSKINS I could see what appeared to be darker impression circles around both of her eyes. These appear consistent with wearing swim goggles. HUSKINS told me that she did not need medical treatment and did not appear to have any injuries. HUSKINS also denied any type of sexual assault had occurred.

I conducted no further investigation.



# HUNTINGTON BEACH POLICE DEPARTMENT
## INCIDENT REPORT PROPERTY CONTINUATION

Page _1_ of _1_

| Case # | 15-0043602 |
|---|---|
| Related Case # | - |

| PROPERTY/EVIDENCE CODES: | E-vidence | safe-K-eeping | F-ound | L-ost | S-tolen | R-ecovered | D-amaged |
|---|---|---|---|---|---|---|---|

CATEGORIES: Enter a Category number 1-12

1-Currency 2-Jewelry 3-Clothing 4-Vehicles Parts 5-Office Equipment 6-Electronics 7-Firearms 8-House Goods 9-Consumable Goods 10-Cellular / Computer 11-Miscellaneous 12-Narcotics

| Item # | Owner | Code | Category | Qty/Wt | Description (Use first property section for guns only) | | | | Value |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ☐ Auto Pistol | ☐ Revolver | ☐ Military | ☐ Rifle | ☐ Shotgun |

| Brand: | | Model: | | Barrel Length: | Grips/Stock: | Serial #: |
|---|---|---|---|---|---|---|
| Color: | | No. Rounds: | Caliber: | Misc Info: | | $ |

| Item # | Owner | Code | Category | Qty/Wt | Description of Property (What is it? Make, Model, Size Info, Color(s), S/N...) | Value |
|---|---|---|---|---|---|---|
| 1 | — | E | 11 | 1 | CD w/ AUDIO RECORDING OF DENISE HUSKINS | $ — |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | ☐ SUBTOTAL   ☒ TOTAL | $ — |

☐ Additional items of property on continuation page(s)

Property may be released to: ☐ Owner   ☐ Finder   ☐ Suspect   ☐ Photo'd or Copied then released   ☐ Auctioned   ☐ Destroyed

| Per Detective/Officer: | PIN #: | Date: | Signature |
|---|---|---|---|
| Finder's Signature: | Date: | ☐ Finder wishes to claim property after 90 days | |
| Signature of person releasing property: | Date: | ID'd person by ☐ DL ☐ ID Card ☐ Other: | |
| Officer: J. DECIEMA | PIN #: 1215 | Reviewed by: _____ 11 | Date: 3/25/15 |

ACCURATE COPY OF THE ORIGINAL ON
FILE IN THIS DEPARTMENT.
ATTEST:
ROBERT HANDY
CHIEF OF POLICE:
HUNTINGTON BEACH
STATE OF CALIFORNIA
BY_____
          CUSTODIAN OF RECORDS
DATE:_____8-9-2016_____

# EXHIBIT B

Having trouble viewing this email?Click here





# <u>Vallejo Police</u>
## Press Release
## Lt. Kenny Park

## Press Information Officer

## <u>Kidnap for Ransom</u>

As reported earlier today, Denise Huskins was located in the City of Huntington Beach CA at approximately 10:30 am today's date. She spoke briefly with an officer of the Huntington Beach PD. There was some initial indication that she would be cooperative and speak with investigators from the Vallejo Police Department.  Through family members, Ms. Huskins promised to meet with Vallejo Police Detectives and provide additional details. Vallejo Detectives and the FBI subsequently arranged for a jet to bring her to Northern California for an interview. As of this moment, Detectives have been unable to contact either Ms. Huskins or family members. Ms. Huskins has since retained an attorney and Detectives are unaware of her location.

Since the inception of this investigation on Monday, March 23, 2015, The Vallejo Police Department has requested and received the assistance of multiple law enforcement agencies at the local, state and federal levels. At any given time, over 40 Detectives and over 100 support personnel have been searching for and investigating the disappearance of Ms. Huskins in hopes of securing her safe return.

The Investigation will continue to look at any and all evidence. The Vallejo Police Department would like to thank all of those agencies and volunteers who have come out to assist in the search. If evidence indicates that either Ms. Huskins or Mr. Quinn have committed a criminal act, the Vallejo Police Department will request either state or federal charges. The Vallejo Police Department would like to ensure the public that there is no indication that this was a random act of violence.

Today, there is no evidence to support the claims that this was a stranger abduction or an abduction at all. Given the facts that have been presented thus far, this event appears to be an orchestrated event and not a kidnapping.

**Lt. Kenny Park will hold a press conference at the Vallejo Police Department at 9:30 pm on Wednesday, March 25, 2015.

*Media can contact the Vallejo PD at 707-651-7147.*

*Citizens can provide information to the Vallejo PD at 800-488-9383.*

***Citizens can also provide information anonymously  to the Solano Crime Stoppers™ tip line 707-644-STOP.  Solano Crime Stoppers™ offers cash rewards for phone tips that solve violent and/or serious crimes.***

**Link to Vallejo PD.**

To report issues with this e-mail, please follow the Contact Us link located on the City of Vallejo.

EXHIBIT C

DVD containing the video of the press conference held by Kenny Park of Vallejo Police Department concurrently lodged with the Court.

EXHIBIT D


Humans have FOUR WEEKS to live as GIANT ASTEROID heads for


Clash of the titans-sss: Epic battle between king cobra and…


'Devastated' hubby's last-ditch attempt to win back wife after…


Robbie Savage blasted on Twitter for talking 'nonsense' during…


PICTURED: Man who claims to have world's longest penis – which…

# Woman who faked her own kidnapping is dubbed the real 'gone girl'

**A WOMAN who claimed she was kidnapped has been branded "the real life Gone Girl" after police said she faked it.**

By **Jimmy McCloskey**   /   Published 27th March 2015


VANISHING ACT: Denise Huskins made a recording saying that she had been kidnapped [FACEBOOK]

Denise Huskins was accused of copying fictional psycho Amy Dunne by staging her own abduction.

The physical therapist disappeared from home in Vallejo, California, on Monday.

Boyfriend Aaron Quinn said he saw her being bundled away and had received a $8,500 (£5,700) ransom demand.

A voice recording from the 29-year-old blonde said: "My name is Denise Huskins.

I am kidnapped, otherwise I'm fine." She was found safe and well 400 miles away two days later.



INSPIRED: The main character in gone girl faked her own kidnapping to get back at her husband [IG]

> **"There is no evidence to support the claims that this was a stranger abduction or an abduction at all. This event appears to be an orchestrated event and not a kidnapping."**
>
> Lt Kenny Park

But the couple have now gone into hiding after police accused her of leading them on a "wild goose chase".

Lt Kenny Park said: "There is no evidence to support the claims that this was a stranger abduction or an abduction at all.

"This event appears to be an orchestrated event and not a kidnapping."

The pair could now face jail. Gone Girl sees heiress Amy fake her disappearance to frame cheating husband Nick Dunne.

It was made into a hit film.

**RELATED ARTICLES**

By continuing to use this site you agree to the use of cookies. You can find out more by following this link (cookie-policy).          Accept Cookies

- More witnesses contradict golfer Robert Allenby's 'kidnapping' story

- Becky Watts: Stepbrother and his girlfriend held over teen's kidnap and murder

- 'Evil' kidnap plot to STEAL BABIES led to murder of 3-month-old girl, cops say

**Don't miss the latest breaking news**

 Get the hottest stories sent straight to your inbox

**Sign up for the email**

# EXHIBIT E

www.hlntv.com/video/2015/03/26/kidnap-hoax-denise-huskins-gone-girl-real-life

NANCY GRACE

**Promoted**


**3 Crazy Facts about Real Estate Crowdfunding That You**
RealtyShares


**Two Hikers Discovered A Horrifying Secret In These Woods**
GuiltyFix


**Easy Eating Tips To Make You Happier**
News Of Gadgets


**Sleeping 7 Hours Every Night Should Be Your Minimum**
Future of Personal Health


**Rio Athletes That Could Be Supermodels**
StepUpNews

Recommended by Outbrain

Lo único constante en la vida **es el cambio.**
Ciertos cambios en la vida te permiten obtener un nuevo seguro médico, y hasta podrías recibir ayuda para pagarlo.
ENTÉRATE CUÁLES ›
COVERED CALIFORNIA

# Kidnap hoax: Is she the real-life 'Gone Girl'?

By Matthew Zarrell Updated 3:43 PM EDT, ⊙ Thu March 26, 2015



#KidnapHoax

NANCY GRACE

Police who were investigating the kidnapping of a **29-year-old physical therapist** from Vallejo, California, now say the entire story was all orchestrated by the woman and her boyfriend.

Denise Huskins was reported kidnapped in the early morning hours from her boyfriend's home Monday. But after police locate her safely Wednesday at her father's home 420 miles away in Huntington Beach, they say the whole thing was an elaborate hoax.

No charges have been filed but police are investigating.

f   SHARE ON FACEBOOK

🐦   SHARE ON TWITTER

EXHIBIT F

# CREGGER & CHALFANT
### LLP

Thomas A. Cregger
Robert L. Chalfant
Wendy Motooka
Jordan K. Dixon

Samuel L. Jackson
John S. Gilmore
Of Counsel

Robert L. Chalfant
Email:  rlc@creggerlaw.com

August 8, 2016

*Via email (wagstaffe@kerrwagstaffe.com) & U.S. Mail*

James M. Wagstaffe
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105-1727

Re:   *Aaron Quinn and Denise Huskins v. Vallejo Police Department*
      E.D. Cal. Case No. 2:16-cv-00603 TLN EFB

Dear James:

I was surprised to read your letter of August 3, 2016, which was sent 12 minutes after my associate, Wendy Motooka, emailed you regarding the draft joint status report, and invited you to provide employee names and search terms to assist the City in identifying records that you deem to be potentially relevant in this matter.   Your letter re-writes our meet-and-confer discussion, mischaracterizing what actually occurred.  It is my intention, in this case as in all my cases, to handle the matter professionally, efficiently, and without gamesmanship that only drives up the costs of litigation for our clients.  I thought I had made defendants' position clear during the meet and confer, but I will reiterate it here to correct any misunderstandings.

**Defendants Discussed Discovery With You**

You assert that I "refused to discuss discovery at all."  That statement is simply untrue.  As you know, and as your letter of August 3 documents, I indicated to you that discovery had not yet opened in this case, and that it would

701 University Avenue
Suite 110
Sacramento, CA  95825
(916) 426-1889 P
(916) 443-2124 F
www.creggerlaw.com

CREGGER &
CHALFANT
——————— LLP

James M. Wagstaffe
Re: Quinn, Huskins v. Vallejo
August 8, 2016
Page 2

be premature for us to make detailed discovery plans regarding parties and claims that may not survive the pending motions. During our conference, we discussed your client's claims, the pending motions to strike and to dismiss, and the possibilities of settlement and/or VDRP. I did not think that I needed to discuss our defenses with you in detail, because they are briefed in our motions, which we served on you on July 22. I thought we were making progress, when we agreed that you would apprise me of dates on which you would be in Sacramento, so that we could arrange to further discuss possible resolutions to this case over lunch. You have since, however, provided me with no dates.

We appear to have a genuine dispute regarding whether discovery has opened in this case. I believe that discovery has not yet opened, because of the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (Rule 8 does not unlock the doors of discovery for a plaintiff who has not stated a claim under Rule 8); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (the purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and factfinding"); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (it is unfair to require the opposing party to be subjected to the expense of discovery when the complaint does not satisfy Rule 8); *Rutman Wine Co. v. E.J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the argument that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense," because "[t]he purpose of F. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."). Other jurisdictions also recognize that discovery does not open while a Rule 12(b)(6) motion is pending. *See Havoco of America Ltd. V. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("A motion to dismiss based on failure to state a claim for relief should . . . be resolved before discovery begins.").

I reminded you during our conference that Rule 26(a)(1)(C) allows us to object to discovery and initial disclosures during the conference, and to state our objections in the joint status report and proposed discovery plan. You disagreed,

# CREGGER &
# CHALFANT
#### LLP

James M. Wagstaffe
Re: Quinn, Huskins v. Vallejo
August 8, 2016
Page 3

but the text of the rule speaks for itself. I informed you that defendants' ability to disclose information and the parties' ability to conduct efficient discovery may be impeded by the ongoing criminal trial of Matthew Muller, given that some of the evidence in the possession of the Federal Bureau of Investigation ("FBI") may be relevant to this civil action. I conveyed to you my understanding that at least some of the materials related to the Huskins investigation were seized by the FBI, but that I needed more time to identify what those items are. I have reached out to the U.S. Attorney handling the prosecution, but have not yet heard back from him.

As I indicated to you, I believe it would be more cost-effective to hold off on discovery until these issues can be resolved, so as not to invite objections and unnecessary litigation from the U.S. Attorney's Office, inadvertent omissions in supplemental disclosures, and repeat depositions and associated motions. It is my understanding that Mr. Muller's trial is set for January 2017, so the wait will not be too long, even if it extends through the finalization of a plea agreement or the conclusion of the trial.

**Discovery At This Point Is Premature And The Need For It Is Questionable**

During our conference, you indicated that you would be immediately serving a request for discovery, because you need discovery to defeat our motion to strike and motion to dismiss. As indicated above, we do not believe that discovery is warranted in order to defeat a motion to dismiss, because discovery is not permitted until after the complaint survives the motion to dismiss. If you are unable to state a claim without discovery, you are unable to state a claim.

Contrary to the representation in your letter, I did not state that discovery has been "stayed automatically" in this case. As I am sure you are aware, California's stay of discovery on an anti-SLAPP motion does not apply in federal court, because state procedural rules must yield to the federal rules, where the two conflict. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001). Here, however, there is no conflict with respect to the availability of discovery

# CREGGER & CHALFANT
LLP

James M. Wagstaffe
Re: Quinn, Huskins v. Vallejo
August 8, 2016
Page 4

under state and federal law, because discovery would be stayed under state law, and has not yet opened under the federal rules. We do not think that the filing of a state-law anti-SLAPP motion should open discovery, where discovery would otherwise remain closed, because such a rule would only encourage forum-shopping. As the Ninth Circuit has recently observed, refusing to recognize the substantive limitations of the anti-SLAPP laws in federal court is "bad policy," which puts "the federal courts at risk of being swept away in a rising tide of frivolous state actions." *Makaeff v. Trump Univ.*, LLC, 736 F.3d 1180, 1187 (9th Cir. 2013) (Wardlaw, J. and Callahan, J., concurring).

Our pending motions make clear that defendants regard most of your clients' claims as legally non-cognizable. We therefore believe that any fact discovery into such claims would be burdensome to defendants, and a waste of the parties' resources. If defendants' motions are successful, Denise Huskins and Lt. Kenny Park will both be eliminated as litigants, and all causes of action will be dismissed except for Aaron Quinn's factually meritless, but sufficiently pled false arrest claims. We do not understand why you would insist on the preparation of initial disclosures for claims, defenses, and parties that may not survive the challenge to the pleadings. Such premature initial disclosures would require your clients to produce all of their employment and wage records from Kaiser, even though this evidence would have no relevance should the defamation claims fail; all of Aaron Quinn's psychological and psychiatric records, even though his emotional distress claims may be dismissed; all of Denise Huskins' psychological and psychiatric records, even though she may be dismissed as a party; all of your clients' communications, emails, text messages, social media posts, and other ESI pertaining to any aspect of the events or claimed damages, including all of Aaron Quinn's communications with his brother Ethan, even though we do not yet know what events or claimed damages will remain in controversy. I am sure you know better than I what additional information must be assembled and disclosed, based on the current breadth of the – in our opinion – defective pleadings.

# CREGGER & CHALFANT
## LLP

James M. Wagstaffe
Re: Quinn, Huskins v. Vallejo
August 8, 2016
Page 5

Also, significant and potentially entirely unnecessary collateral litigation may arise from your insistence on commencing discovery before the pleadings have settled. As we understand the claims alleged in the current version of the complaint, Huskins seeks damages allegedly arising from the Vallejo Police Department's inability to prevent her continued imprisonment and rape. We think this claim should be dismissed based on California Government Code immunities. If, however, the claim is to be tested via fact discovery, we will have to depose Matthew Muller, and may then need to seek a stay of discovery if he objects to testifying in this civil matter prior to his criminal trial. This procedural complication might be entirely avoided by waiting for the Court to rule on the pending motion to dismiss.

We recognize your valid interest in ensuring that the City defendants preserve evidence to be exchanged once the pleadings have settled, but burnt-earth discovery is unwarranted at this point given the legal weakness of the challenged causes of action. As you know from the email my associate sent you prior to your sending the letter to which I am responding, we are willing to work with you to ensure the preservation of records and information that you anticipate to be relevant. Thus far your eagerness to commence discovery has not extended to your own efforts to provide us with search terms to help us secure the electronic data that you believe to be in imminent peril. We are still waiting for you to provide us with the search terms.

We were disheartened to see your subpoena to the Huntington Beach Police Department of August 4, which indicates that you are ignoring our legitimate objections to the opening of discovery, and unreasonably prefer to force a motion rather than to wait for the Court to rule on the objections. Your subpoena to the Huntington Beach Police Department imposes burdens on a third party, seeking discovery into Denise Huskins' claims only, when Denise Huskins may no longer be a plaintiff in this action following a ruling on the motion to dismiss. Your premature discovery is burdensome and potentially wasteful.

James M. Wagstaffe
Re: Quinn, Huskins v. Vallejo
August 8, 2016
Page 6

I believe that both of our clients will be better served if we can resolve the pleadings and the related discovery issues as efficiently as possible. Because the anti-SLAPP motion comes with mandatory attorneys' fees if defendants prevail, which will include the costs to defendants of all discovery taken by plaintiffs to oppose the motion, we should be in agreement that narrowing the needed discovery down to that which is essential to your opposition may be a prudent way to proceed. It is also a resolution that finds support in the case law. *Davis v. Electronic Arts, Inc.*, 2011 WL 2621626 at *5 (N.D. Cal. 2011); *Price v. Sto*ssel, 590 F. Supp. 2d 1262, 1271 (C.D. Cal. 2008); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 985 (C.D. Cal. 1999) (discovery permitted where plaintiff has obtained "specific discovery" needed to oppose the special motion).

You have not yet identified for us any specific discovery essential to oppose our anti-SLAPP motion, which attacks only two causes of action: the state-law defamation claim and Huskins' intentional infliction of emotional distress claim. Perhaps if you describe to us the discovery that you need in order to oppose the motion, we might agree that such discovery is essential, or we might find other ways to avoid unnecessary motions practice, such as stipulating to an amended complaint or to the withdrawal of arguments in the anti-SLAPP motion based on the sufficiency of the evidence.

I cannot stress to you enough how dismayed I was to see how far your recollection of our discovery conference departed from mine. In addition to the corrections already referenced above, I would also note that contrary to your letter, you did not provide the identity of potentially relevant witnesses, the location of potentially relevant documents, address the subjects on which discovery may be needed, or address the phasing of discovery and the existence of electronically stored information and how to preserve it. Your letter embellishes on our conversation in a manner that distorts and demonizes defendants' position. Please do not do that in the future. I like to have – and usually do have – cordial

# CREGGER &
# CHALFANT
LLP

James M. Wagstaffe
Re:  Quinn, Huskins v. Vallejo
August 8, 2016
Page 7

relations with opposing counsel, which I think smooths the way to resolving differences informally.  I am hoping to be able to work with you on this basis as well.

Please call me so that we can discuss the specific discovery you need to oppose our anti-SLAPP motion, whether the parties can reach an agreement on this issue, and/or whether the parties can resolve their differences through amendment of the pleadings.  If you would prefer to have this conversation in person, I will even pay for lunch.

Very truly yours,

CREGGER & CHALFANT, LLP

ROBERT L. CHALFANT

cc:   Kevin Clune
      Kenneth Nabity