JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
KEVIN B. CLUNE (248681)
clune@kerrwagstaffe.com
KENNETH P. NABITY (287927)
nabity@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
DENISE HUSKINS and AARON QUINN

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DENISE HUSKINS and AARON QUINN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25,<br><br>Defendants. | Case No. 2:16-cv-00603-TLN-EF<br><br>**PLAINTIFFS' DECLARATION OF JAMES M. WAGSTAFFE, IN THE ALTERNATIVE, TO DENY DEFENDANTS' SPECIAL MOTION TO STRIKE TO ALLOW TIME FOR THE TAKING OF DISCOVERY PURSUANT TO RULE 56(d)**<br><br>Date: September 8, 2016<br>Time: 2:00 p.m.<br>Courtroom: 2, 15th Floor<br>Judge: Hon. Troy L. Nunley |

KERR
&
WAGSTAFFE
LLP

I, James M. Wagstaffe, hereby submit this declaration pursuant to Federal Rule of Civil Procedure 56(d), requesting that the Court, in the alternative, deny Defendants' Special Motion to Strike the Second and Fifth Causes of Action in order to allow Plaintiffs time to discover facts necessary to oppose it.[1]  To assist the Court, the following will include a summary of pertinent matters from the pending opposition briefs, along with material governing legal standards.

1.      This case involves numerous federal and state-law related claims arising from Defendants' alleged misconduct here.  The Complaint alleges a coordinated campaign of disparagement and abuse occurred after one or more kidnappers broke into the home where Huskins and Quinn were sleeping, bound, blind folded, and drugged them, and kidnapped and raped Huskins over the course of several days.  Initially, the Vallejo Police Department appeared to have concluded that Quinn must have murdered Huskins, and subjected him to an 18-hour interrogation.  (*See* Compl. ¶¶ 17, 25; Quinn Decl. ¶¶ 7-16.)  Then, when Huskins showed up alive, Defendants raised a "Gone Girl" conspiracy theory to deflect scrutiny away from their own incompetent investigation.  (*See* Compl. ¶¶ 51-52; Huskins Decl. ¶¶ 19-28.)  The evidence submitted here also shows that VPD asserted that Huskins made the entire event up because she was sexually assaulted as a child.  (*See* Compl. ¶ 47; Jane Huskins Decl. ¶¶ 13-14.)  Significantly, the Complaint also alleges, on information and belief, that Defendants made additional statements over and above what they said to the press, which further disparaged Plaintiffs.  (Compl. ¶¶ 47, 86, 100.)

2.      Defendants have now moved, as part of their anti-SLAPP motion, to dismiss two of these claims: for defamation and Intentional Infliction of Emotional Distress ("IIED").  (*See* Dkt. No. 9-1, Mem. P&A)  But there are many unknowns in this case regarding the allegations

---

[1]      For purposes of this Declaration, "Huskins" refers to Plaintiff Denise Huskins, "Quinn," refers to Plaintiff Aaron Quinn, "VPD" refers to the Vallejo Police Department (which is not a separate legal entity from Defendant City of Vallejo), "Mustard" refers to Defendant Mathew Mustard, and "Park" refers to Defendant Kenny Park.

of Plaintiffs' complaint that must be uncovered before Defendants' anti-SLAPP motion can be heard, as discussed below.

3.     Plaintiffs have propounded requests for production, aimed at these issues.  A true and correct copy of those requests for production is attached hereto as Exhibit A.

4.     Defendants have refused to provide such discovery, claiming—incorrectly—that discovery is somehow "not open" because they have filed a dispositive motion.[2]  (*See also* Dkt. No. 10, Joint Status Report.)  Thus, Plaintiffs have been unable to conduct discovery necessary to their anti-SLAPP opposition.  In addition, and to expedite matters, our office served a California Public Records Act Request before filing this lawsuit for many of the documents (including emails or text messages) that would be relevant to the issues described here.  They produced almost nothing in response to that request, including no email or text communications contemporaneous to when the kidnapping was actually being investigated in March of 2015 other than a few stray communications with one reporter.  Plaintiffs have tried to meet and confer with Defendants about this issue, but were unsuccessful in doing so.  Defendants refused to provide this information, or to otherwise agree to stay the resolution of their motion pending such discovery.  (*See also* Dkt. No. 10, Joint Status Report.)

5.     I am also concerned because we have been given no assurances (despite our requests therefore) that the Defendants have, in fact, preserved the requested discovery items, as required.  For example, and again despite our written letter insisting on such preservation, there is no indication that Defendants have actually preserved individual email accounts, prevented the potential deletion of text messages, or otherwise properly preserved all other pertinent

---

[2]     As explained in detail in Plaintiffs' section of the parties' joint status report (Dkt. No. 10), the mere fact of filing a dispositive motion at the outset of a case does not stay discovery, which automatically opens 14 days after the Rule 26(f) conference.  That conference occurred here on July 29, 2016, and thus discovery is open here.

KERR
&
WAGSTAFFE
LLP

1    information.

2         6.    Plaintiffs are entitled to discovery necessary to oppose Defendants' anti-SLAPP

3    motion, which is the federal equivalent of a Rule 56 motion to dismiss because it attacks the

4    factual sufficiency of Plaintiffs' claims.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846

5    (9th Cir. 2001) (holding that, while the filing of an anti-SLAPP motion in state court stays all

6    further discovery under state court procedural rules, "the discovery-limiting aspects of §

7    425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56" and thus "these aspects

8    of subsections (f) and (g) cannot apply in federal court."); *Woodard v. Labrada*, No. EDCV16-

9    00189-JGB (SPx), 2016 WL 3436434, at *11 (C.D. Cal. May 12, 2016) ("[I]n the context of an

10   anti-SLAPP motion filed in federal court, Rule 56(d) applies.")

11        7.    Given the absence of discovery from the Defendants on the subjects identified

12   below, Plaintiffs may not be able to submit evidence that would further support the denial of the

13   pending motion.  *See Metabolife Int'l*, 264 F.3d at 846 ("Although Rule 56[d] facially gives

14   judges the discretion to disallow discovery when the non-moving party cannot yet submit

15   evidence supporting its opposition, the Supreme Court has restated the rule as *requiring, rather*

16   *than merely permitting, discovery* 'where the nonmoving party has not had the opportunity to

17   discover information that is essential to its opposition.'") (emphasis added); *Freeman v. ABC*

18   *Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. Nov. 10, 2011) ("Rule 56(d) 'should be

19   applied with a spirit of liberality'" with respect to anti-SLAPP motions.).  Thus, if the Court is

20   considering granting the present motion, it would be appropriate to first grant discovery in order

21   for Plaintiffs to oppose Defendants' anti-SLAPP motion, as discussed below.

22        8.    Pursuant to Rule 56(d), the following is a summary of facts that could be obtained

23   through discovery that would further justify the opposition to the pending motion.

24        9.    First, Plaintiffs need discovery into what communications Defendants have made

25   concerning Plaintiffs to see to what extent any additional defamatory statements—outside of any

26

27

28

KERR
&
WAGSTAFFE
LLP

statements to the press—were made.  That is because, in addition to the defamatory statements Defendants have made about Plaintiffs in press releases and press interviews, Plaintiffs have alleged on information and belief that Defendants made numerous additional gratuitous statements defaming them.  (Compl. ¶¶ 47, 86, 100.)  Thus, for example, if Defendants made statements to their friends, relatives, neighbors, or similar individuals repeating the same malicious and untruthful statements they made to an internationally televised audience, such communications can in no way be said to have been made as part of a "judicial proceeding" or other "official proceeding."  Given the media attention and dramatic nature of the facts involved, it is not difficult to imagine here that there were many emails, texts, and other communications by VPD defaming Huskins and Quinn, and that not all of them were to other police officers or witnesses.  The police presumably use email, text messaging, and other modes of written communication.  Thus, Plaintiffs are entitled to discovery about any such documents.

10.     Second, because Defendants challenge that Plaintiffs have adduced sufficient facts to demonstrate the requisite degree of fault for defamation, which they claim is the standard under *New York Times v. Sullivan*, 84 S. Ct. 710 (1964), Plaintiffs would be able to further oppose the pending motions by obtaining discovery into Defendants' knowledge of the falsity of their statements and their overall state of mind when they made them.  (*See* Def.'s Special Mot. to Strike, Dkt. No. 9, at p. 12; *see Metabolife Int'l*, 264 F.3d at 848 (holding, in the anti-SLAPP context, that "the issue of 'actual malice' (or, to put it another way, intent to convey the defamatory impression) cannot be properly disposed of by a motion to dismiss in this case, where there has been no discovery.").)  Similarly, here, Plaintiffs must be able to obtain discovery on the issue of Defendants' intent to convey the defamatory impression concerning Quin and Huskins.

11.     There is good cause to believe that discoverable information concerning these topics exists, and could be uncovered by the document requests Plaintiffs have already

KERR
&
WAGSTAFFE
LLP

propounded.  Initially, the implausibility of Defendants' conduct here, as alleged in the Complaint, supports an inference of further direct involvement by the Vallejo Police Department. For example, certain of the alleged misconduct is sufficiently unprofessional that discovery likely could demonstrate that there was an effort to deflect attention away from the actual concealed wrongdoing (e.g., a Detective's statement that rape victims like to "re-live" their sexual assault for the thrill of it, and therefore Huskins (and Quinn) must be recreating that horrid experience here by fabricating an abduction story).  (*See* Jane Huskins Decl. ¶ 13.)

12.     In addition, there is a reasonable basis for further discovery because of the allegations that a VPD Detective, while Huskins was still missing, told her mother that he would love to tell her what was really going on with her daughter's disappearance, but that he had to wait five years before he could do so.  (*See* Jane Huskins Decl. ¶ 16.)

13.     Moreover, there are numerous details that have never been explained, such as why VPD has never followed up on the possibility that there was more than one kidnapper involved, and who the other kidnapper(s) might be.  VPD has never explained how Mueller, if he acted alone, ended up at the house when no car was there and the stolen car he was using was several miles away.  Discovery as to this topic could disclose further involvement by the Defendants.

14.     There are also other facts potentially supporting  connections to members of law enforcement.  For example, one FBI Officer involved in the investigation and stationed in nearby Fairfield had dated Quinn's former fiancée, who the kidnapper indicated was the original intended target of the abduction.  Another law enforcement Officer had also dated Quinn's former fiancée.  I reasonably believe that further discovery is necessary regarding what role these local law enforcement officials might have had in the investigation of Huskins's kidnapping, and whether they might have played any role in the underlying abduction itself.

15.     The first prong of California's anti-SLAPP statute requires that the suit arise from an act in furtherance of the rights of petition or free speech.  *See* Cal. Civ. Proc. Code §

5

425.16(b).  Plaintiffs should have the opportunity to demonstrate through discovery that Defendants' alleged communications are not connected with any official proceeding, or that the communications otherwise rose to the level of illegal activity.  *See Abuemeira v. Stephens*, 246 Cal. App. 4th 1291, 1299 (2016); *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 703-04 (2011).

16.     In summary, Plaintiffs should be allowed to conduct discovery of the following topics, at a minimum, before the issue of actual malice in Defendants' anti-SLAPP motion can be granted:  (1) what Defendants knew about and inculpatory or exculpatory facts concerning Quinn and Huskins and their overall state of mind; (2) all police reports related to the investigation concerning the underlying kidnapping and assault, including any witness statements; (3) all recorded statements related to the investigation, including recordings of Aaron Quinn's interrogation; (4) all draft press releases concerning the investigation; and (5) documents relating to any involvement of the other local law enforcement officials.

17.     Further, because Plaintiffs' IIED and defamation claims are predicated both on defamatory statements Defendants made (discussed above), but also on the conduct Defendants engaged in concerning Plaintiff Quinn's false arrest and interrogation, Plaintiffs must also be able to obtain discovery concerning the facts underlying that arrest and interrogation.  As with the discovery sought concerning "actual malice," that would likewise require discovery of information concerning the recordings of any interrogation of Quinn, all police reports concerning the underlying investigation, draft press releases, and all information concerning any other inculpatory or exculpatory documents Defendants knew about at the time of the interrogation.

18.     Specifically, Plaintiffs would request further discovery as follows (if the pending motion is not denied, as would otherwise be appropriate): (1) proper initial disclosures provided under Rule 26; (2) actual production of all emails, text messages, and other ESI, as well as hard copy documents that are in any way related to the topics identified in paragraphs 16 and 17

1    above; and (3) depositions of any individuals whose participation is disclosed in the production

2    of such documents.

3    Date:  August 25, 2016                              **KERR & WAGSTAFFE LLP**

4

5                                             By:   /s/ James M. Wagstaffe
                                                    JAMES M. WAGSTAFFE

6
                                                    Attorneys for Plaintiffs
7                                                   DENISE HUSKINS and AARON QUINN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
KEVIN B. CLUNE (248681)
clune@kerrwagstaffe.com
KENNETH P. NABITY (287927)
nabity@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
DENISE HUSKINS and AARON QUINN

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HUSKINS and AARON QUINN, | Case No. 2:16-cv-00603-TLN-EF |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CITY OF VALLEJO, SET ONE** |
| CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, | |
| Defendants. | |

PROPOUNDING PARTY:   Plaintiffs DENISE HUSKINS and AARON QUINN

RESPONDING PARTY:   Defendant CITY OF VALLEJO

SET NUMBER:   One

KERR
— & —
WAGSTAFFE
LLP

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Denise Huskins and Aaron Quinn hereby requests that Defendant City of Vallejo produce and permit the inspection and copying of the following documents at the offices of Kerr & Wagstaffe LLP, 101 Mission Street, 18th Floor, San Francisco, California 94105 within 30 days of service.

### DEFINITIONS

1.    The terms "DOCUMENT" and "DOCUMENTS" are used in the broadest sense allowed by Rule 34(a) of the Federal Rules of Civil Procedure and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, checkbooks, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically-stored matter from which information can be obtained and translated, if necessary, in reasonably useable form.

2.    "PERSON(S)" means and includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

3.    The terms "YOU," "YOUR," or "VALLEJO" means City of Vallejo

4.    The terms "and" and "or" shall each be interpreted to mean both "and" and "or" such that any request using either term encompasses the broadest possible group of DOCUMENTS reachable by the use of either (or both) terms.

5.    "COMPLAINT(S)" means and includes any grievance, objection, criticism, concern, expression of dissatisfaction or request for assistance, whether expressed verbally or in writing, regardless of whether such COMPLAINTS were made to CITY OF VALLEJO or any third party.

6.    "PLAINTIFFS" means Denise Huskins and Aaron Quinn.

7.    "THE INVESTIGATION" refers to the investigation the City of Vallejo undertook in response to the disappearance of Denise Huskins on March 23, 2015.

8.    "COMMUNICATION" or "COMMUNICATIONS" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, instant message, text message,

1  PDA message, telephone, voicemail, facsimile, memorandum, "Skype" or similar internet

2  telephone conversations, or telex.

3        9.      The phrase "RELATE TO" or "RELATED TO" means and includes mentioning,

4  discussing, summarizing, comprising, constituting, describing, containing, including, referring

5  to, depicting, embodying, evidencing, or reporting.

6                              **INSTRUCTIONS**

7        In responding to these requests for production, YOU are requested to furnish all

8  DOCUMENTS that are in YOUR actual or constructive possession, custody or control or in the

9  possession, custody or control of any of YOUR employees, agents or attorneys.

10       YOU are requested to provide all electronically-stored information in its native format, as

11 used in the ordinary course of business, including but not limited to Microsoft Outlook (.pst

12 files), Microsoft Word (.doc or .docx files), Microsoft Excel (.xls or .xlsx files) or Microsoft

13 PowerPoint (.ppt or .pptx files), or in a format agreed to by the parties.

14       If YOU cannot respond to any of the following demands in full after exercising due

15 diligence to secure the information requested therein, please so state and respond to the extent

16 possible, specifying any inability to respond and stating whatever information YOU have

17 concerning the portion of each request for production not responded to.

18       If YOU object to the production of any DOCUMENT requested herein on the basis of

19 any claimed privilege or doctrine, including, but not limited to, the attorney-client privilege and

20 the attorney work product doctrine, separately state the following:  date; author(s); recipient(s);

21 general subject matter; identity of person(s) to whom the contents of the DOCUMENT have

22 already been revealed; identity of persons(s) or entity(ies) now in possession or control of the

23 DOCUMENT or copies thereof; and the basis upon which the DOCUMENT is being withheld.

24                          **DOCUMENT REQUESTS**

25 **REQUEST NO. 1**

26       All DOCUMENTS constituting COMMUNICATIONS with any person referencing

27 Denise Huskins.

28

**REQUEST NO. 2**

All DOCUMENTS constituting COMMUNICATIONS with any person referencing Aaron Quinn.

**REQUEST NO. 3**

All DOCUMENTS constituting COMMUNICATIONS with any person RELATED TO THE INVESTIGATION.

**REQUEST NO. 4**

All recorded statements RELATED TO THE INVESTIGATION (whether oral statements, written statements, or otherwise; and regardless of the form of recordation).

**REQUEST NO. 5**

All COMMUNICATIONS with Aaron Quinn from March 1, 2015 to the present.

**REQUEST NO. 6**

All COMMUNICATIONS with Denise Huskins from March 1, 2015 to the present.

**REQUEST NO. 7**

All recorded COMMUNICATIONS with any relative of Denise Huskins from March 1, 2015 to the present (including but not limited to Mike Huskins, Jane Huskins, Devin Huskins, Jeff Kane, Jody Huskins, Nick Huskins, Carly Huskins, Amy Mattison, and Jeff Remmele).

**REQUEST NO. 8**

All recorded COMMUNICATIONS with Denise Huskins's acquaintances from March 1, 2015 to the present (including but not limited to Laura Janovick, Cecilia Goldenberg, Taylor Hardin, Allie Peairs, and Robin McGrew).

**REQUEST NO. 9**

All recorded COMMUNICATIONS with any relative of Aaron Quinn from March 1, 2015 to the present (including but not limited to Marianne Quinn, Ethan Quinn, and Joseph Quinn).

**REQUEST NO. 10**

All recorded COMMUNICATIONS with Aaron Quinn's known friends and acquaintances from March 1, 2015 to the present.

KERR
&
WAGSTAFFE
LLP

**REQUEST NO. 11**

All recorded COMMUNICATIONS with Andrea Roberts from March 1, 2015 to the present.

**REQUEST NO. 12**

All recorded COMMUNICATIONS with Andrea Roberts's known acquaintances from March 1, 2015 to the present, including but not limited to Denise White, Vicki Woodbridge, Mike Pendergast, Dave Sesma, Steve Ruiz, and Matt Lopez.

**REQUEST NO. 13**

All recorded COMMUNICATIONS with Denise Huskins' attorneys from March 25, 2015 to the present, including but not limited to Doug Rappaport.

**REQUEST NO. 14**

All recorded COMMUNICATIONS with Aaron Quinn's attorneys from March 24, 2015 to the present, including but not limited to Amy Morton.

**REQUEST NO. 15**

All recorded COMMUNICATIONS with anyone from Kaiser Permanente concerning Aaron Quinn from March 1, 2015 to the present.

**REQUEST NO. 16**

All recorded COMMUNICATIONS with anyone from Kaiser Permanente concerning Denise Huskins from March 1, 2015 to the present.

**REQUEST NO. 17**

All recorded COMMUNICATIONS with anyone from Kaiser Permanente concerning Andrea Roberts from March 1, 2015 to the present.

**REQUEST NO. 18**

All recordings of any Vallejo Police Department interrogation of Aaron Quinn since March 23, 2015 (including, but not limited to, audio, video, or written recordings).

**REQUEST NO. 19**

Results from Aaron Quinn's polygraph tests taken on or around March 24, 2015.

1    **REQUEST NO. 20**

2        All releases signed by Aaron Quinn from March 23, 2015 to the present permitting the

3    Vallejo Police Department to search his home and seize his personal property.

4    **REQUEST NO. 21**

5        All releases signed by Aaron Quinn from March 23, 2015 to the present permitting the

6    Vallejo Police Department to search his person, including but not limited to blood and DNA

7    tests.

8    **REQUEST NO. 22**

9        Aaron Quinn's blood test results from the blood test taken on or around March 23, 2015.

10   **REQUEST NO. 23**

11       Aaron Quinn's DNA test results from the DNA test taken on or around March 23, 2015.

12   **REQUEST NO. 24**

13       All seized property lists and receipts of Aaron Quinn's seized property.

14   **REQUEST NO. 25**

15       All seized property lists and receipts of Denise Huskins' seized property.

16   **REQUEST NO. 26**

17       Aaron Quinn's laptop computer.

18   **REQUEST NO. 27**

19       All DOCUMENTS YOU collected from Aaron Quinn's laptop computer.

20   **REQUEST NO. 28**

21       All COMMUNICATIONS received via Aaron Quinn's laptop computer RELATED TO

22   THE INVESTIGATION.

23   **REQUEST NO. 29**

24       Aaron Quinn's cellular phone.

25   **REQUEST NO. 30**

26       All DOCUMENTS RELATED TO Aaron Quinn's cellular phone (including but not

27   limited to cell phone records or call histories).

28



**REQUEST NO. 31**

All police reports RELATED TO THE INVESTIGATION.

**REQUEST NO. 32**

All police reports regarding the investigation of Aaron Quinn.

**REQUEST NO. 33**

All police reports regarding the investigation of Denise Huskins.

**REQUEST NO. 34**

All police reports regarding the investigation of Andrea Roberts.

**REQUEST NO. 35**

All police reports regarding the investigation of Steve Ruiz.

**REQUEST NO. 36**

All police reports regarding the investigation of Matthew Muller.

**REQUEST NO. 37**

All photographs RELATED TO THE INVESTIGATION (including but not limited to photographs taken at Aaron Quinn's home).

**REQUEST NO. 38**

The results of Denise Huskins' SART test taken on or around March 26, 2015.

**REQUEST NO. 39**

All DOCUMENTS related to Denise Huskins' SART test taken on or around March 26, 2015.

**REQUEST NO. 40**

All COMMUNICATIONS with Queen of the Valley Medical Center on or around March 26, 2015.

**REQUEST NO. 41**

All recorded reports from Queen of the Valley Medical Center RELATED TO Denise Huskins.

**REQUEST NO. 42**

All COMMUNICATIONS between the kidnapper(s) and the Vallejo Police Department

1   (including but not limited to emails, recorded phone calls, messages, and/or text messages).

2   **REQUEST NO. 43**

3   All documents, electronic or otherwise, obtained from the offices of Morton and Russo

4   LLP.

5   **REQUEST NO. 44**

6   Denise Huskins' proof of life message received on or about March 24, 2015.

7   **REQUEST NO. 45**

8   Statements provided by Mike Huskins regarding Denise Huskins' "proof of life" received

9   on or about March 24, 2015.

10   **REQUEST NO. 46**

11   All COMMUNICATIONS made to the press regarding Aaron Quinn from March 23,

12   2015 to the present (including but not limited to press releases, press conferences, or other

13   statements).

14   **REQUEST NO. 47**

15   All COMMUNICATIONS made to the press regarding Denise Huskins from March 23,

16   2015 to the present (including but not limited to press releases, press conferences, or other

17   statements).

18   **REQUEST NO. 48**

19   All COMMUNICATIONS made to the press regarding Andrea Roberts from March 23,

20   2015 to the present (including but not limited to press releases, press conferences, or other

21   statements).

22   **REQUEST NO. 49**

23   All COMMUNICATIONS made to the press regarding Matthew Muller from March 23,

24   2015 to the present (including but not limited to press releases, press conferences, or other

25   statements).

26   **REQUEST NO. 50**

27   All COMMUNICATIONS with the media RELATED TO THE INVESTIGATION.

28

**REQUEST NO. 51**

All COMMUNICATIONS with the San Francisco Chronicle, including but not limited to COMMUNICATION following the proof of life and messages received by the SF Chronicle from the kidnapper(s).

**REQUEST NO. 52**

All COMMUNICATIONS with the Huntington Beach Police Department RELATED TO THE INVESTIGATION.

**REQUEST NO. 53**

All DOCUMENTS exchanged with the Huntington Beach Police Department RELATED TO THE INVESTIGATION.

**REQUEST NO. 54**

All COMMUNICATIONS with the FBI RELATED TO THE INVESTIGATION.

**REQUEST NO. 55**

All DOCUMENTS exchanged with the FBI RELATED TO THE INVESTIGATION.

**REQUEST NO. 56**

All COMMUNICATIONS RELATED TO coordination with the FBI from March 23, 2015 through present RELATED TO THE INVESTIGATION.

**REQUEST NO. 57**

All COMMUNICATIONS RELATED TO coordination with any California Police Department RELATED TO THE INVESTIGATION (including but not limited to Dublin Police Services of Alameda Sheriff's Department, Palo Alto Police Department, Mountain View Police Department, Menlo Park Police Department).

**REQUEST NO. 58**

All COMMUNICATIONS with victims associations concerning PLAINTIFFS.

**REQUEST NO. 59**

All search warrants and arrest warrants arising out of THE INVESTIGATION.

**REQUEST NO. 60**

All DOCUMENTS (including, but not limited to, evidence, photographs, and/or

1    recordings) seized arising out of the arrest of Matthew Muller.

2    **REQUEST NO. 61**

3        All DOCUMENTS regarding the burglary of Aaron Quinn's home on June 23, 2015

4    (including, but not limited to, reports, statements, and photographs).

5    **REQUEST NO. 62**

6        All DOCUMENTS considered by any officer with the Vallejo Police Department during

7    INVESTIGATION.

8    **REQUEST NO. 63**

9        All emails (whether on a personal or work email account) exchanged with any member of

10   the Vallejo Police Department RELATED TO THE INVESTIGATION.

11   **REQUEST NO. 64**

12       All text messages exchanged with any member of the Vallejo Police Department

13   RELATED TO THE INVESTIGATION.

14   **REQUEST NO. 65**

15       All COMMUNICATIONS between any member of the Vallejo Police Department and

16   Steve Ruiz.

17   **REQUEST NO. 66**

18       All COMMUNICATIONS between any member of the Vallejo Police Department and

19   David Sesma.

20   **REQUEST NO. 67**

21       All COMMUNICATIONS between any member of the Vallejo Police Department and

22   Andrea Roberts.

23   **REQUEST NO. 68**

24       All COMMUNICATIONS between any member of the Vallejo Police Department and

25   Matthew Muller.

26   **REQUEST NO. 69**

27       All organizational charts reflecting how the Vallejo Police Department was organized

28   since January 1, 2015.

KERR
&
WAGSTAFFE
LLP

9

1 **REQUEST NO. 70**

2     All DOCUMENTS constituting policies of the Vallejo Police Department in effect since

3 January 1, 2015 regarding communications with the media.

4 **REQUEST NO. 71**

5     All DOCUMENTS constituting policies of the Vallejo Police Department in effect since

6 January 1, 2015 regarding investigations into sexual assault.

7 **REQUEST NO. 72**

8     All DOCUMENTS constituting policies of the Vallejo Police Department in effect since

9 January 1, 2015 regarding investigations into kidnapping.

10 **REQUEST NO. 73**

11     All DOCUMENTS reflecting any costs (other than overhead) incurred by the Vallejo

12 Police Department RELATED TO THE INVESTIGATION.

13 **REQUEST NO. 74**

14     All DOCUMENTS tending to support any of the "multiple different theories" Defendant

15 Mustard considered RELATED TO THE INVESTIGATION, as those theories are identified in

16 Paragraph 17 of his declaration in support of Defendants' anti-SLAPP motion.

17 **REQUEST NO. 75**

18     All DOCUMENTS tending to support any assertion that PLAINTIFFS had ever lied to

19 the police.

20 **REQUEST NO. 76**

21     All DOCUMENTS referencing the media response to THE INVESTIGATION, as that

22 response is discussed in paragraph 7 of Lt. Kenny Parks' declaration in support of Defendants'

23 anti-SLAPP motion.

24 **REQUEST NO. 77**

25     All press releases RELATED TO THE INVESTIGATION.

26 **REQUEST NO. 78**

27     All drafts of any press releases RELATED TO THE INVESTIGATION.

28

**REQUEST NO. 79**

All handwritten notes RELATED TO THE INVESTIGATION.

**REQUEST NO. 80**

All handwritten notes regarding any meetings RELATED TO THE INVESTIGATION.

**REQUEST NO. 81**

All COMMUNICATIONS involving Defendant Mustard RELATED TO THE INVESTIGATION.

**REQUEST NO. 82**

All COMMUNICATIONS INVOLVING Defendant Park RELATED TO THE INVESTIGATION.

**REQUEST NO. 83**

All COMMUNICATIONS involving Captain Jim O'Connell RELATED TO THE INVESTIGATION.

**REQUEST NO. 84**

All COMMUNICATIONS involving Chief Andrew Bidou RELATED TO THE INVESTIGATION.

**REQUEST NO. 85**

All COMMUNICATIONS WITH THE Solano County Office of Emergency Services RELATED TO THE INVESTIGATION.

**REQUEST NO. 86**

All computer aided dispatch ("CAD") LOGS RELATED TO THE INVESTIGATION.

**REQUEST NO. 87**

All DOCUMENTS RELATED TO any calls from members of the public "expressing concern that they were in danger" as referenced in paragraph 5 of Captain James O'Connell's declaration in support of Defendants' anti-SLAPP motion.

**REQUEST NO. 88**

All DOCUMENTS YOU obtained from any telephone service providers (such as any records of calls made to or from numbers of suspects or other witnesses) RELATED TO THE

1  INVESTIGATION.

2  **REQUEST NO. 89**

3      All DOCUMENTS YOU obtained from any internet service providers (such as any

4  records of calls made to or from numbers of suspects or other witnesses) RELATED TO THE

5  INVESTIGATION.

6

7  Date:  August 5, 2016                **KERR & WAGSTAFFE LLP**

8

9                                  By: _____
                                    KENNETH NABITY

10

11                                    Attorneys for Plaintiffs
                                  DENISE HUSKINS and AARON QUINN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

## PROOF OF SERVICE

2      I, Caroline Dwyer declare that I am a resident of the State of California, over the age of

3 eighteen years, and not a party to the within action.  My business address is Kerr & Wagstaffe
LLP, 101 Mission Street, 18th Floor, San Francisco, California 94105-1727.

4

      On, August 5, 2016 I served the following document(s):

5

6      1.      **PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS
             TO DEFENDANT CITY OF VALLEJO, SET ONE**

7 on the parties listed below as follows:

8
| Robert L. Chalfant | Claudia M. Quintana |
|---|---|
| Wendy Motooka | Kelly J. Trujillo |
| **CREEGER & CHALFANT LLP** | **CITY OF VALLEJO, CITY HALL** |
| 701 University Avenue, Suite 110 | 555 Santa Clara Street |
| Sacramento, CA 95825 | Vallejo, CA 94590 |

9

10

11

12      ☒ **By first class mail** by placing a true copy thereof in a sealed envelope with postage

13      thereon fully prepaid and placing the envelope in the firm's daily mail processing center
      for mailing in the United States mail at San Francisco, California.

14

15      ☐ **By facsimile machine** (FAX) by personally transmitting a true copy thereof via an
      electronic facsimile machine.

16

17      ☐ **By personal service** by causing to be personally delivered a true copy thereof to the
      address(es) listed herein at the location listed herein.

18      ☐ **By Federal Express** or overnight courier.

19
20      I declare under penalty of perjury under the laws of the State of California that the
      foregoing is true and correct.

21      Executed on August 5, 2016, at San Francisco, California.

22

23      C. Dwyer
      _____
      CAROLINE DWYER

24

25

26

27

28

