CREGGER & CHALFANT LLP
ROBERT L. CHALFANT, SBN 203051
Email:  rlc@creggerlaw.com
WENDY MOTOOKA, SBN 233589
Email:  wm@creggerlaw.com
701 University Avenue, Suite 110
Sacramento, CA 95825
Telephone: 916.443-4443

CLAUDIA M. QUINTANA, SBN 178613
City Attorney
KELLY J. TRUJILLO, SBN 244286
Assistant City Attorney
Email:  Kelly.Trujillo@cityofvallejo.net
City of Vallejo, City Hall
555 Santa Clara Street
Vallejo, CA 94590
Telephone:  707.648-4545

Attorneys for Defendants CITY OF VALLEJO,
KENNY PARK, MATHEW MUSTARD

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HUSKINS and AARON QUINN, | Case No. 2:16-cv-00603 TLN EFB |
| Plaintiffs, | |
| vs. | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT (CITY'S REQUEST FOR PRODUCTION OF DOCUMENTS TO QUINN (SET ONE) AND REQUEST FOR PRODUCTION OF DOCUMENTS TO HUSKINS (SET ONE))** |
| CITY OF VALLEJO, a public entity, KENNY PARK, MATHEW MUSTARD, and DOES 1-25, | |
| Defendants. | Date:  April 5, 2017 |
| | Time: 10:00 a.m. |
| | Courtroom: 8 |
| | Judge:  Hon. Edmund F. Brennan |

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1
Case No. 2:16-cv-00603 TLN EFB

1

1    Defendants City of Vallejo, Kenny Park, and Mathew Mustard (collectively

2    "Defendants") and Plaintiffs Denise Huskins and Aaron Quinn (collectively "Plaintiffs") hereby

3    submit this Joint Statement re Discovery Disagreement pursuant to Local Rule 251.

4                                    **I.     INTRODUCTION**

5    *Defendants' Position*

6    Plaintiffs DENISE HUSKINS and AARON QUINN sue defendants CITY OF VALLEJO,

7    KENNY PARK, and MATHEW MUSTARD for damages arising from the City's handling of the

8    investigation into Huskins' reported kidnapping in March 2015.  Quinn alleges damages arising

9    from defamation and false arrest, and Huskins alleges damages arising from defamation.

10   Defendant City served Requests for Production of Documents on each plaintiff, requesting

11   various categories of documents that pertain to each plaintiff individually.  Plaintiffs responded

12   with one pile of 3,213 undifferentiated documents, some of which were redacted without any

13   reason being offered.  Because the production fails to comply with Rule 34, defendants now move

14   to compel plaintiffs to organize and label their productions to correspond to the categories of the

15   requests, and to provide unredacted versions of the redacted documents.

16   *Plaintiffs' Position*

17   Given the lack of any material information Defendants would receive even if they

18   obtained the burdensome relief they seek, this motion appears to be an effort simply to make

19   additional work for Plaintiffs.  Defendants should not be allowed to use the litigation process to

20   needlessly drive up Plaintiffs' litigation expenses by diverting resources away from the true

21   matters in dispute.

22   Neither of Defendants' positions on the two narrow issues before the Court warrant relief.

23   First, regarding the format of production, Plaintiffs have fully complied with Federal Rule of

24   Civil Procedure 34 by producing the documents in a "reasonably usable" and logically organized

25   format pursuant to subpart (b)(2)(E)(ii) of that Rule.  While the volume of documents at issue

26   here of 1,225 individual documents (amounting to approximately 3,227 pages when printed) is

27   hardly the type of "document dump" that makes it difficult for Defendants to *digest* the relevant

28   information, it would be an incredibly time-consuming (and thus expensive) task to force

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    2
Case No. 2:16-cv-00603 TLN EFB

1   Plaintiffs to identify whether *each* of the 1,225 individual documents is responsive to *each* of

2   Defendants' 40, broadly worded, and vague document requests.

3          Second, Plaintiffs have more than justified the minor redactions on largely irrelevant

4   documents Defendants now challenge, and thus there is no valid basis to compel them to produce

5   unredacted versions.

6          Thus, Defendants' motion to compel should be denied in full.

7

8   **II.      THE DOCUMENT REQUESTS AND PRODUCTIONS AT ISSUE**

    *A. Defendants' Position*

9

10         On September 28, 2016, the City served Request for Production of Documents ("RFP")

11  (Set One) on Quinn, and RFP (Set One) on Huskins.  Declaration of Wendy Motooka in Support

12  of Joint Statement ("Motooka Decl."), Exh. A: RFP to Quinn and Exh. B: RFP to Huskins.   The

13  discovery sets were not identical, and sought information – including information pertaining to

14  damages – unique to each plaintiff.  On October 31, 2016, each plaintiff responded, but produced

15  no documents, instead indicating that each production would be "substantially complete" by

16  November 30, 2016.  Motooka Decl., Exh. C: Quinn's Response to RFP at 2: 3-4, and Exh. D:

17  Huskins' Response to RFP at 2: 3-4.

18         On December 1, 2016, plaintiffs informed defendants via email that plaintiffs had hit a

19  "technical roadblock" that prevented them from serving "the production," but provided

20  defendants with an FTP link through which to access the documents.  Motooka Decl. Exh. E:

21  Email string between Nabity and Motooka, Dec. 2, 2016 at p. 2.  The documents accessible via

22  the FTP link, over 2000 pages, were an undifferentiated mass, not organized or labeled to

23  correspond to the categories of documents requested, and not even divided between documents

24  produced by Quinn and those produced by Huskins.  Every single one of the documents was

25  designated "confidential."  Motooka Decl. at ¶ 5.  Defendants pointed out the problem with the

26  confidentiality designation to plaintiffs, who acknowledged that it was an error that would be

27  fixed in the service copy to be provided to defendants.  Motooka Decl., Exh. E:  Email string

28  between Nabity and Motooka, Dec. 2, 2016 at p. 1.  Defendants further noted that the documents

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    3
Case No. 2:16-cv-00603 TLN EFB

were not labeled to correspond to the categories of the requests, and asked plaintiffs if they would be correcting that problem in the final production as well.  Motooka Decl., Exh. E: Email string between Nabity and Motooka, Dec. 2, 2016 at p. 1.  Plaintiffs did not respond.  Motooka Decl. at ¶ 5.

As of December 14, 2016, plaintiffs still had not served their responses to RFP (Set One) to Quinn and RFP (Set One) to Huskins.  Defendants then wrote to plaintiffs, reminding them that their response to the two sets of RFPs were overdue.  Motooka Decl., Exh. F: Motooka to Nabity, Dec. 14, 2016.  That same day, plaintiffs served what they identified as their "first production," Bates labeled DHAQ 1-2396.  Motooka Decl., Exh. G: Nabity to Motooka, Dec. 14, 2016.  In this production, many of the confidentiality designations had been removed, but the documents still remained an undifferentiated mass, in response to both sets of RFPs collectively, not organized and labeled to correspond to the categories within the separate sets of requests.  Motooka Decl. at ¶ 8, "First Production" for *in camera* review.  The documents also included redactions, some of them substantial (i.e., the entire page – everything but the Bates stamp, or significant amounts of material information), for which plaintiffs provided no justification.  Motooka Decl. at ¶ 9, Exh. H:  Examples of Redacted Documents.

On December 23, 2016, plaintiffs collectively produced a "second production" in response to the two sets of RFPs, Bates labeled DHAQ 2397-3213.  Motooka Decl., Exh. I: Transmittal Letter from Nabity, Dec. 23, 2016.  Together, plaintiffs' "first" and "second" productions included various types of documents, including emails on numerous subjects, printouts of social media posts, photos depicting unknown subjects, unrelated police reports, medical/counseling records and appointment reminders, correspondence with the Solano County District Attorney and U.S. Department of Justice, payment invoices, video/audio recordings, some text messages, news clippings, PACER filings, handwritten journaling, and pleadings and papers from this civil lawsuit.  Motooka Decl. at ¶¶ 10- 11, "Second Production" for *in camera* review.

### B. Plaintiffs' Position

The vast majority of Defendants' purported facts above are not material to this dispute and need not be responded to here.  Defendants have propounded 40 different requests for production

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1
Case No. 2:16-cv-00603 TLN EFB

4

1    in total to Plaintiffs (21 to Plaintiff Quinn and 19 to Plaintiff Huskins).  (Declaration of Kevin

2    Clune Regarding Joint Statement re Discovery Disagreement ("Clune Decl.) Exs. A & B).

3    Neither of those requests for production specified the format in which production was to be made.

4    (Clune Decl. Exs. A & B).

5         In response, Plaintiffs produced 1,255 documents, amounting to 3,227 pages when printed

6    (about three-fifths of one banker's box worth).  (Id. ¶ 3.)  That production consisted almost

7    entirely of Electronically Stored Information ("ESI"), such as emails, texts, and Facebook posts.

8    (Id.)  Because Defendants did not specify the format of production in their requests, and Plaintiff

9    elected, under Federal Rule of Civil Procedure 34(b)(2)(E)(ii) to produce this ESI in a "readily

10   usable form."  (Id.)  Plaintiffs made the production via load file, along with TIFF images of the

11   bates numbered pages.  (Id.)  The comparatively small number of documents were produced in a

12   logical order, for example with emails provided in chronological order, with attachments

13   immediately following the emails to which they were attached.  (Id.)

14        With respect to non-ESI documents, the production consisted almost entirely of

15   documents obtained from third parties, such as correspondence between Defendants' attorneys

16   and various members of law enforcement, documents received from Plaintiffs' medical providers,

17   and attorney billing records.  (Id. ¶ 4.)  Plaintiffs produced those documents in the same format

18   which they were received from such third parties.   (Id.)

19                        **III.    THE PARTIES' MEET AND CONFER**

20   *A. Defendants' Position*

21        **1.    The Meet And Confer Regarding The First And Second Productions**

22        On December 16, 2016, after receiving the "first" production, defendants emailed

23   plaintiffs, asking if they planned to address the issue of the production's failure to correspond to

24   the separate sets of requests, and the separate categories within those separate requests.  Motooka

25   Decl., Exh. J:  Email string between Motooka and Nabity, Dec. 16-19, 2016 at p. 2.  Plaintiffs

26   responded that they had no obligation to label the documents to correspond to the categories of

27   the requests, and invited defendants to send them authority to the contrary.  Motooka Decl., Exh:

28   J: Email string between Motooka and Nabity, Dec. 16-19, 2016, at p. 1-2.  Defendants provided

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    5
Case No. 2:16-cv-00603 TLN EFB

plaintiffs with the requested authority, Federal Rule of Civil Procedure 34(b)(2)(E)(i) and, *e.g.*, *Google, Inc. v. American Blind & Wallpaper Factory*, 2006 WL 5349265 at *3-*4 (N.D. Cal. 2006).  Motooka Decl., Exh. J: Email string between Motooka and Nabity, Dec. 16-19, 2016 at p. 1.

On January 3, 2017, defendants wrote to plaintiffs to meet and confer in detail regarding plaintiffs' collective "first" and "second" production, Bates labeled DHAQ 1-3213.  Defendants requested that plaintiffs comply with Rule 34 by organizing and labeling the productions to correspond to the categories of the requests in the RFP to Quinn and in the RFP to Huskins, respectively.  Defendants also noted that plaintiffs had failed to provide any justification for the redactions, and asked that plaintiffs either produce such justification or an unredacted copy of each document.  Defendants also challenged what appeared to be over-designation of confidential materials.  Motooka Decl., Exh. K: Letter from Motooka to Nabity, Jan. 3, 2017.

On January 27, 2017, plaintiffs responded to defendants' meet-and-confer letter of January 3, stating that their production of 3200+ unorganized and unlabeled documents is proper under Rule 34, because they keep the documents this way "in the usual course of business."  Plaintiffs further asserted that all of their redactions were proper, either because the material was non-responsive or because it was privileged.  Motooka Decl., Exh. L: Letter from Nabity to Motooka, Jan. 27, 2017.  Plaintiffs had produced no privilege log.  Motooka Decl. at ¶ 15.  On January 30, 2017, defendants wrote to plaintiffs explaining why they were skeptical of plaintiffs' assertion that the documents were produced as kept in the usual course of business.  Defendants also reminded plaintiffs that they cannot meet their burden under Rule 34 with just an unsupported statement that they produced the documents "as they are kept in the usual course of business."  Motooka Decl., Exh. M: Letter from Motooka to Nabity, Jan. 30, 2017.  Plaintiffs did not respond to this letter.  Motooka Decl. at ¶ 17.

On February 13, 2017, defendants emailed plaintiffs indicating defendants' intention to move to compel and inquiring, in light of the confidentiality and sealing issues that might arise, whether plaintiffs would like to agree upon a briefing schedule prior to defendants' selection of the hearing date.  Plaintiffs then indicated that they would be providing a privilege log by the end

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    6
Case No. 2:16-cv-00603 TLN EFB

of the month.  Defendants stated that they would hold off on setting a motion to compel, until

after the privilege log was received.  Motooka Decl., Exh. N:  Email string between Motooka and

Nabity, Feb. 13-17, 2017.  Plaintiffs emailed a privilege log on February 28, 2017, which satisfies

defendants with respect to some, but not all, of the redactions.  Motooka Decl. at ¶ 19.

### 2.    Plaintiffs Produce A Third Production In Response To A Motion To Compel Initial Disclosures

In a concurrent discovery dispute over the sufficiency of plaintiffs' computation of

damages in their initial disclosures, defendants filed a motion to compel further disclosures on

December 7, 2016.  Motooka Decl. at ¶ 20.  On January 27, 2017, while the motion remained

pending, plaintiffs supplemented their initial disclosures in lieu of briefing their portion of the

joint statement.  The supplemental computation of damages included another small document

production, Bates stamped DHAQ 3214-3227 (the "third production"), which contained primarily

copies of pay checks and pay stubs, none of which document Quinn's earnings at Kaiser.

Motooka Decl. at ¶ 20, "Third Production" for *in camera* review & Exh. O: Letter from Nabity,

Jan. 27, 2017.

### B. *Plaintiffs' Position*

The majority of Defendants' discussion regarding the parties' meet-and-confer efforts are

again not relevant to the instant dispute.  It is sufficient to note that the parties have extensively

met and conferred about these issues, and have been unable to resolve their dispute.  (See, e.g.,

Clune Decl. Ex. C).  As part of that process, counsel for Plaintiffs explained in detail how

Plaintiffs' production was organized and why that organization constituted production in a

"reasonably usable form" and "in the usual course of business" under various provisions of Rule

34.  (Id. at p. 1.)  Plaintiffs will address the merits of the parties' arguments below.

//

//

//

//

//

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                7
Case No. 2:16-cv-00603 TLN EFB

# V.     THE CONTENTIONS OF THE PARTIES

***A.     DISPUTED ISSUE NUMBER ONE: Whether Plaintiffs Must Separately Organize their Production on a Request-by-Request Basis***

### 1.     DEFENDANTS' POSITION ON ISSUE ONE

#### i.     Legal Standard

Under Federal Rule of Civil Procedure 34(b), a party to whom a request is directed must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.  Fed. R. Civ. P. 34(b)(2)(E)(i).  To establish that documents were produced "as they are kept in the usual course of business," a producing party must provide more than just an unsupported statement to that effect.  *Google, Inc. v. American Blind & Wallpaper Factory, Inc.*, 2006 WL 5349265 at *3 (N.D. Cal. 2006), *citing Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005).  To establish that documents have been produced as they are ordinarily maintained, the producing party must at a minimum identify the custodian or person from whom each document was obtained, an indication of whether the document is maintained in hard copy or digital format, assurance that the documents have been produced in the order maintained, and a general description of the filing system from which they were recovered.  *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 337 (N.D.N.Y. 2008).  The purpose of this rule is to give some structure to the production, to prevent a party from obscuring the significance of documents.  *City of Colton v. American Promotional Events, Inc.*, 277 F.R.D. 578, 584 (C.D. Cal. 2011).

A party may compel a further response where a party fails to produce documents as requested under Rule 34.  Fed. R. Civ. P. 34(a)(3)(B)(iv).

#### ii.     Plaintiffs Should Organize And Label The Documents Produced To Correspond To The Categories Of The Requests

##### a.     The City's RFPs Call For Separate Productions

The City served separate sets of RFPs on plaintiff Quinn and on plaintiff Huskins, respectively, which called for different documents to be produced.  For example, RFP No. 3 though No. 10 to Huskins request documents supporting Huskins' alleged damages.  RFP No. 3

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    8
Case No. 2:16-cv-00603 TLN EFB

1   through No. 10 to Quinn ask for documents supporting Quinn's alleged damages.  Clearly, these

2   documents would not be the same, as each plaintiff's damages would be different, and would

3   have to be separately proven.   Likewise, RFP No. 12 to Huskins asks for electronic

4   communications about the kidnapping sent or received by Huskins.   RFP No. 17 asks for

5   correspondence between Quinn and his former fiancée.  These types of documents are separate,

6   distinct, and most likely unique to each respective plaintiff.

7        Plaintiffs, however, did not provide separate responses from each plaintiff, labeled and

8   organized to correspond to the categories requested.   Instead, they provided one big stack of

9   documents from the both of them, which they contend is responsive to both sets of RFPs and

10  proper under Rule 34, because they keep the documents this way in their "usual course of

11  business."

12          **b.**     **Plaintiffs Have Not Established That The Documents Were**

13                **Produced "As They Are Kept In The Usual Course Of Business"**

14       Plaintiffs have not established that they have produced the documents "as they are kept in

15  the usual course of business," because they have provided nothing more than an unsupported

16  statement to that effect, to wit: "Plaintiffs produced documents as they are kept in the usual

17  course of business."  Motooka Decl., Exh. L: Letter from Nabity to Motooka, Jan. 27, 2017 at p.

18  1.  This mere statement is insufficient to comply with Rule 34, and also appears to be implausible.

19  *Google, Inc.*, 2006 WL 5349265 at *3.

20       Initially, it is questionable whether these documents are kept in the course of either

21  plaintiff's "business."  The option of producing documents as they are kept in the usual course of

22  business is consistent with the truth-finding function of Rule 34, because a business has an

23  obvious incentive to keep needed documents in a way that maximizes their usefulness in day-to-

24  day operations, thereby eliminating the concern that records will be maintained in a manner that

25  obscures their significance.  *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 363 (N.D.

26  Ill. 2005).  Here, plaintiffs have not identified what their "business" is.  Litigation of a case is not

27  "business" within the meaning of Rule 34.  *Google, Inc.*, 2006 WL 5349265 at *4 n.3.

28       Even if plaintiffs' litigation of this case could be considered plaintiffs' "business," it

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1        9
Case No. 2:16-cv-00603 TLN EFB

1    defies belief that plaintiffs Quinn and Huskins keep all of the requested documents together in an

2    undifferentiated stack, with no folders, dividers, or indices to assist in identifying the documents

3    or navigating through the pile.  It is implausible that they do not maintain Huskins' medical

4    records, invoices, emails, and social media postings and correspondence, separately from Quinn's

5    medical records, invoices, emails, and social media postings and correspondence, and that they do

6    not maintain paper records separately from electronic records (if that is even possible).

7         These inherent improbabilities cast doubt on plaintiffs' unsupported statement that they

8    usually maintain their documents in the undifferentiated pile that they produced.  There are,

9    however, other indicia that the documents are not so maintained.  If plaintiffs do usually keep

10   their records in one big stack, why did they have to produce it, over time, as a "first" and

11   "second" production?  Moreover, the documents themselves show that plaintiffs did not have

12   some of the records, and did not even seek to obtain them, until after the production's initial due

13   date of October 31.  Motooka Decl., Exh. P: DHAQ 2412 and 3121 (Kerr & Wagstaffe requesting

14   records in early November).  Further, if plaintiffs really do maintain all of their case-related

15   materials in one comprehensive, joint stack, where did the documents produced as the "third"

16   production, served with plaintiffs' supplemental computation of damages, come from?  The

17   "third" production includes wage information that was not included in the response to RFPs, even

18   though RFP No. 6 to Quinn and RFP No. 6 to Huskins requested all documents showing wage

19   information from each plaintiff, respectively.

20        Plaintiffs assert below that their productions are compliant with Rule 34(b)(2)(E)(ii),

21   because that provision of the Rule allows them to produce ESI in "a reasonably usable form" and

22   Rule 34(b)(2)(E)(i) has no application to ESI.  Yet the case upon which plaintiffs rely, *Anderson*

23   *Living Trust v. WPX Energy Production, LLC*, 298 F.R.D. 514, 524 (D. N.M. 2014), points out

24   that the "vast majority of courts have treated (E)(i) and (E)(ii) as supplementary rather than

25   alternative."  Even if plaintiffs' reading of Rule 34(b)(2)(E) were credited, it would not relieve

26   them from the obligation to organize and label the non-ESI documents in the productions.

27   //

28   //

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    10
Case No. 2:16-cv-00603 TLN EFB

1

2
### c.     Plaintiffs' Failure To Comply With Rule 34 Prejudices Defendants

3        Plaintiffs' failure to comply with Rule 34 is not harmless, because it obscures the

4    significance of the documents. *City of Colton*, 277 F.R.D. at 584. Many of defendants' requests

5    sought to identify the documentary evidence supporting each plaintiff's claim, respectively, to

6    various types of alleged damages. Plaintiffs' unorganized and unlabeled production hides the

7    evidence of their separate damages. It contains many documents that appear to be unrelated to

8    any issue in controversy. For example, plaintiffs have produced some photographs. Motooka

9    Decl., Exh. Q: DHAQ 1159 and 1364. Defendants have no way of knowing to which request(s)

10   these photographs are supposed to be responsive, and whether they are important enough to

11   warrant pursuit of higher quality copies of the images. Do the photographs support the damages

12   of Quinn? Do they support the damages of Huskins? Do they support liability for one claim or

13   another? Are they completely irrelevant to the case? Rule 34 requires plaintiffs to provide some

14   assistance to defendants in identifying the relevance of the documents produced. *Sparton Corp.*

15   *v. U.S.*, 77 Fed. Cl. 10, 16 (Fed. Cl. 2007) (documents should be provided in some kind of

16   organized, indexed fashion rather than as a mass of undifferentiated, unlabeled documents).

17   Other documents in the production are similarly mysterious, and the lack of organization also

18   makes it difficult for defendants to ascertain whether the production appears to be reasonably

19   responsive and complete, or whether documents are simply missing. For example, defendants

20   requested the most recent copy of each plaintiff's resumé, and each plaintiff agreed to produce it,

21   but the production does not appear to contain the resumés. There appears to be a resumé of

22   Huskins (DHAQ 13), but it does not appear to be recent. Is DHAQ 13 plaintiff Huskins' most

23   recent resumé, or was it produced in response to a different request?

24        Plaintiffs below seek to assert that defendants will obtain no additional information

25   regarding any particular document, by having plaintiffs identify what category of document it is.

26   Yet plaintiffs are entirely silent, for example, on how defendants are to know whether DHAQ 13

27   is plaintiff Huskins' most recent resumé, which documents support each plaintiff's damages, or

28   whether the production with respect to plaintiff Quinn's special damages is complete (there

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                                11
Case No. 2:16-cv-00603 TLN EFB

1   appears to be no Kaiser wage information).  Instead, the example that plaintiffs focus upon – a

2   photo of a U-Haul truck – supports defendants' position.  Plaintiffs imply that defendants should

3   know the significance of this document because defendants produced it to plaintiffs in the

4   litigation.  Yet defendants produced this picture to plaintiffs, in response to plaintiffs' request for

5   all correspondence with Quinn's attorney Amy Morton, and the picture was included in Ms.

6   Morton's correspondence.  Defendants do not know what the relevance of this picture is to the

7   ongoing litigation, or to which of defendants' request(s) it is supposed to be responsive.

8   Defendants also do not accept plaintiffs' assertion below that "virtually all of the documents

9   showing harm to Huskins will also show harm to Quinn because they were defamed for

10  purportedly engaging in the same conduct together."  Defendants believe that Huskins' and

11  Quinn's damages are separate, and must be separately proven.  At the very least, defendants

12  would like plaintiffs to identify which of the documents showing damage to Huskins, also show

13  damage to Quinn, and vice versa.

14      Plaintiffs' production is not organized and labeled to correspond to the requests

15  propounded, and throughout the meet-and-confer process, plaintiffs have offered nothing to

16  support their assertion that the documents were produced as they are kept in the ordinary course

17  of business.  Defendants therefore request that plaintiffs be ordered to organize and label the

18  document productions to correspond the categories requested in RFP (Set One) to Quinn and in

19  RFP (Set One) to Huskins, respectively.

20      **2.  <u>PLAINTIFFS'</u> POSITION ON ISSUE ONE**

21      The vast majority of documents in dispute here constitute Electronically Stored

22  Information ("ESI"), such as emails, related attachments, Facebook postings, text messages, and

23  photos.  Plaintiffs fully complied with their obligations under Federal Rule of Civil Procedure

24  34(b)(2)(E) by producing such documents in a "reasonably usable form" under subpart

25  (b)(2)(E)(ii).  Even if Plaintiffs were required to produce these or other documents pursuant to

26  subpart (b)(2)(E)(i), they complied with that rule as well by producing the documents as they are

27  maintained in the "usual course of business," namely by producing them in the same logical order

28  in which the documents were grouped electronically or the same order in which such documents

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    12
Case No. 2:16-cv-00603 TLN EFB

1    were obtained from third parties.  Further, requiring Plaintiffs individually to label each of the

2    1,225 documents produced would be highly burdensome, particularly given the overlapping,

3    vague, and broad requests for production, while doing nothing to meaningfully advance discovery

4    in this case.  As such, Defendants' motion to compel Plaintiffs' to re-organize their production

5    should be denied.

6                   *a.*     ***Plaintiffs Properly Produced ESI in a "Reasonably Usable Form"***
                         ***Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(ii)***
7

8            As Plaintiff explained during the meet-and-confer process, Defendants are incorrect that

9    the vast majority of documents in dispute are even governed by the provisions they cite in Rule

10   34(b)(2)(E)(i) at all.  Because almost all of Plaintiffs' production consisted of ESI, such as emails,

11   Facebook postings, and texts, the production of such electronic documents is governed instead by

12   Federal Rule of Civil Procedure 34(b)(2)(E)(ii).  See, e.g., Anderson Living Trust v. WPX

13   Energy Prod., LLC, 298 F.R.D. 514, 515 (D.N.M. 2014).  Under that provision "[i]f a request

14   does not specify a form for producing electronically stored information, a party must produce it in

15   a form or forms in which it is ordinarily maintained *or in a reasonably usable form* or forms."

16   Fed. R. Civ. P. 34(b)(2)(E)(ii).

17           Importantly, there is no additional requirement—like that contained in Rule

18   34(b)(2)(E)(i)—mandating that documents also be produced either as they are kept in the "usual

19   course of business" or in a manner organized corresponding to the categories in the request.  Id. at

20   526 ("Because Rule 34(b)(2)(E)(i) is not controlling, the Defendants are under no obligation to

21   produce their discovery in the usual course of business, nor to label it to correspond to the

22   categories in the Plaintiffs' requests.").  As one influential commenter explained, the reason these

23   electronic documents are treated differently than hardcopy documents is because of the more fluid

24   nature of electronic documents, which frequently do not have a static format (like paper) in which

25   they are embodied:

26           The drafters of the e-discovery amendments to Rule 34 recognized that the
             procedures in subparagraph (E)(i), which were written to apply to hard-copy
27           documents, did not neatly fit ESI and had to be modified to apply to ESI. In
             particular, though the procedures in subparagraph (E)(i) work well with paper
28           documents, which generally can be produced in only one form, they are not as
             effective with ESI, which can exist in different forms. Accordingly, the rulemakers

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    13
Case No. 2:16-cv-00603 TLN EFB

crafted *alternative, mutually exclusive*, procedures in subparagraph (E)(ii) that are designed to apply specifically to ESI, not to supplement the procedures in subparagraph (E)(i).

Anderon Living Trust, 298 F.R.D. at 525 (quoting Professor John K. Rabiej, Rabiej on

Production of ESI, Emerging Issues 2628, at * 2 (July 29, 2008)).

Here, Plaintiffs produced the documents in just such a "reasonably usable" format by producing the documents in a logical order, starting with Plaintiff Huskins's emails (with any attachments immediately following the email itself), and then moving on to Plaintiff Quinn's emails and related attachments.  (Clune Decl. ¶ 3.)  Plaintiffs produced documents with comparatively fixed, paper-like images (such as PDFs, emails, and Word documents) as single-page TIFF images, whereas documents such as movies or sound files were produced in their native format.  Plaintiffs also produced a load file along with the production that contained additional metadata.  This approach more than complies with the requirements of the Federal Rules.  See TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co., No. 14CV2021-W (BLM), 2017 WL 1008788, at *7 (S.D. Cal. Mar. 15, 2017) ("Because Plaintiffs' evidence establishes that the ESI at issue was produced in PDF format in date order as it was stored in Microsoft Outlook by Plaintiffs' counsel in the underlying case, the production complies with Rule 34(b)(2)(ii) requirements.").  As such, Plaintiffs have fulfilled their obligations under Rule 34(b)(2) by producing electronic documents in a "reasonably usable" format, and should not be required to relabel or otherwise reorganize their production with respect to them.

### b.  *Even if Plaintiffs Were Required to Produce the Documents as they Were Kept in the Usual Course of Business, they Have Done so*

Even to the extent production of documents in is matter were governed by Rule 34(B)(2)(E)(i), Plaintiffs have still complied with that provision.  Under subsection (E)(i), "[a] party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request."  Fed. R. Civ. Proc. 34(b)(2)(E)(i) (emphasis added).  "In the absence of an affirmative showing that [the producing party's] filing system is so disorganized that it is unreasonable for the [opposing party] to make their own review . . . there is no basis for disturbing a party's election under Rule 34(b)."  Nat. Res. Def.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1
Case No. 2:16-cv-00603 TLN EFB

14

1    Council, Inc. v. Fox, No. 94 CIV. 8424 PKLHBD, 1996 WL 497024, at *5 n.3 (S.D.N.Y. Aug.

2    30, 1996).

3           Here, Plaintiffs elected to produce documents as they were ordinarily maintained by them.

4    For example, they each produced their emails in chronological order, with attachments

5    immediately following the emails.  They likewise produced screenshots, photos, text messages

6    grouped together in the same way they are logically grouped within their respective computer

7    systems.  In addition, they produced documents that have been generated in the course of this

8    litigation (like medical and employment records requested from third parties as part of this

9    litigation or correspondence or billing records of their attorneys generated after this dispute arose)

10   as TIFFs in logical groupings.  All if this was produced in a logical order, in the way it was

11   actually maintained by the clients or the third parties from which they obtained such documents

12   during the course of this litigation.

13          Defendants offer nothing but sheer speculation that these documents were not produced as

14   they are ordinarily maintained.  For example, they simply assert that "it defies belief that

15   plaintiffs Quinn and Huskins keep all of the requested documents together in an undifferentiated

16   stack, with no folders, dividers, or indices to assist in identifying the documents or navigating

17   through the pile," but in fact it appears that Defendants are referring to things such as medical

18   records and Employment Records, which were produced in the manner they were received from

19   those third parties. (See Clune Decl. ¶ 4.)

20          Defendants also make the categorical assertion that individual litigants, such as Plaintiffs,

21   simply cannot elect produce documents "as they are kept in the usual course of business" because

22   Plaintiffs here do not technically have a "business."  Defendants cite no case holding as much,

23   nor would such a narrow reading of Rule 34 make sense as a matter of legislative history or

24   policy. As an initial mater, it is clear that the rule was amended to include the "usual course of

25   business" language to prevent deliberate obfuscation by parties who were intentionally

26   reorganizing documents in confusing ways—not because of any concern about whether

27   individuals (as opposed to businesses) keep documents in a sufficiently organized fashion.  See

28   Fed. R. Civ. P. 34 Advisory Committee notes to 1980 Amendment of subdivision b (indicating

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1
Case No. 2:16-cv-00603 TLN EFB                              15

1    that the amendment adding the "usual course of business" language was needed because "[i]t is

2    apparently not rare for parties deliberately to mix critical documents with others in the hope of

3    obscuring significance."); see also United States v. O'Keefe, 537 F. Supp. 2d 14, 19 (D.D.C.

4    2008) ("The Rule was amended in 1980 to prevent the juvenile practice whereby the producing

5    party purposely rearranged the documents prior to production in order to prevent the requesting

6    party's efficient use of them.").  Indeed, the subsequent Advisory Committee notes from the 2006

7    amendments to Rule 34 clearly state both that the purpose of the amendments was to prevent

8    deliberate gamesmanship *and* that the remedy the Advisory Committee came up with to address

9    that problem was to simply require that production occur "in a form or forms in which [such

10   documents are] ordinarily maintained."  See Fed. R. Civ. P. 34 Advisory Committee notes, 2006

11   Amendment, Subdivision (b) ("Rule 34(b) provides that a party must produce documents as they

12   are kept in the usual course of business or must organize and label them to correspond with the

13   categories in the discovery request. *The production of electronically stored information should be*

14   *subject to comparable requirements to protect against deliberate or inadvertent production in*

15   *ways that raise unnecessary obstacles for the requesting party.*  Rule 34(b) is amended to ensure

16   similar protection for electronically stored information." (emphasis added)); see also Fed. R. Civ.

17   P. 34(b)(2)(E)(ii) (allowing for production "in a form or forms in which it is ordinarily

18   maintained" as a result of the amendments discussed in the 2006 Advisory Committee notes).

19   Thus, drafters of Rule 34 used the "usual course of business" language simply to mean the format

20   in which such documents are actually maintained—not necessarily that such documents needed to

21   be maintained by a "business" for the rule to apply.

22        In addition, Defendants' proffered rule would be unjust.  Categorically preventing

23   individual litigants from opting to produce documents as they are ordinarily maintained (rather

24   than individually labelling and organizing them with respect to each individual request) would

25   have unjust result of making it more burdensome for precisely those least likely to be able to bear

26   that expense: individual plaintiffs or individual defendants who typically lack the resources and

27   litigation experience of corporate "business" entities.

28        None of the cases that Defendants cite state otherwise, or are even remotely comparable to

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    16
Case No. 2:16-cv-00603 TLN EFB

1  this case.  In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 362 (N.D. Ill. 2005), dealt with a

2  situation in which a Defendant business produced 350 boxes of documents as they were

3  haphazardly kept in a storage facility, even though, when the documents were initially put into

4  storage, they were allegedly just "taken from the file drawers and offices at [the business] and

5  placed into boxes in no particular order, they 'were mixed in the same box[es] with files from

6  unrelated aspects of [the company's] business . . ."  That case says nothing whatsoever about

7  whether individuals (as opposed to corporate entities) can produce documents in response to

8  discovery requests as they are kept in the "usual course of business."[1]

9       Google, Inc. v. Am. Blind & Wallpaper Factory, Inc., No. 03-CV-5340 JF (RS), 2006 WL

10  5349265, at *3 (N.D. Cal. Feb. 8, 2006) involved a situation where a party was asked to produce

11  documents it had previously produced in a prior lawsuit. The Court there merely held that the

12  documents had to be produced as they were maintained in the course of the company's

13  business—not in the way the documents were re-organized for that prior litigation.  Google says

14  absolutely nothing about whether individuals are deprived of the option of producing documents

15  in the usual course of business under subsection (E)(ii).

16       Thus, to the extent Rule 34(B)(2)(E)(i) even applies at all to Plaintiffs' production, they

17  have complied with it by producing documents in the manner actually maintained by Plaintiffs,

18  or, where they were merely reproducing documents obtained from third parties (like medical

19  providers, law enforcement, or their former employers), in the manner in which third parties

20  produced the documents to Plaintiffs.

21  
22           c.    ***Requiring Plaintiff to Individually Organize and Label their Production
               Will Only Result in the Unnecessary Expenditure of Resources and Will
               Not Meaningfully Advance the Discovery in any Way***

23       Most importantly, forcing Plaintiffs to re-organize their production here will only create

24  unnecessary work and expenditure of resources for Plaintiffs while doing nothing to materially

25  advance discovery in any way.  Defendants have propounded a combined 40 requests of

26  production on the individual Plaintiffs.  Forcing Plaintiffs to go through and identify whether each

27  
28  

---

[1]      Another noteworthy difference involves the number of documents at issue.  In In re Sulfuric Acid Antitrust Litigation, the production involved some 350 banker's boxes worth of documents. Here, in contrast, we are dealing with less than a *single* box of documents.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    17
Case No. 2:16-cv-00603 TLN EFB

1    particular document is responsive to each of one of 40 requests will take a substantial amount of

2    time and energy.

3         In addition, doing so will not actually provide Defendants with any additional information

4    they can actually use to defend Vallejo and its officers' conduct here.   That is because

5    Defendants' request for production are broadly worded, vague, and frequently overlapping.  For

6    example, Defendants have requested that Plaintiff Huskins produce "All documents that support

7    YOUR contention in the INITIAL DISCLOSURES that HUSKINS has suffered "tremendous

8    damage" to her reputation and good name in the community as a result of defamatory

9    statements."  (Clune Decl. Ex. B, Request for Production to Huskins No. 3.)  Defendants have

10   likewise requested that Plaintiffs produce "All documents that support YOUR contention in the

11   INITIAL DISCLOSURES that HUSKINS has suffered "humiliation, anguish, and emotional and

12   physical distress."  (Id. at Ex. B, Requests for Production to Huskins No. 9).  They have also

13   requested "All non-privileged electronic communications, including but not limited to emails and

14   text messages, sent or received by QUINN relating to the kidnapping.").  (Id. at Ex. B, Request

15   for Production to Huskins No. 12.)  Virtually every document in the production will relate to all

16   of these broad and overlapping requests, or at least could conceivably relate to such requests

17   depending on how broadly vague words such as "relating to," "supporting," and the like are

18   construed.  And the same is true of nearly identical questions asked of Quinn.  (Id. at Ex. A,

19   Requests for Production to Quinn Nos. 3, 9, 12.)  Indeed, because one of the key damages in this

20   case relates to the reputational injury Vallejo and its officers caused Plaintiffs by falsely and

21   simultaneously declaring both of them to be hoaxsters on national television, virtually all of the

22   documents showing harm to Huskins will also show harm to Quinn because they were defamed

23   for purportedly engaging in the same conduct together.  Having the Plaintiffs parse each

24   document to see whether they could conceivably be responsive to some but not other requests in

25   this action serves no purpose other than to waste Plaintiffs' time and money.

26        In addition, Defendants will obtain no additional information regarding any particular

27   document.  This is not a situation where it is unclear what a particular document is, or to whom it

28   was sent or received.  For example, there is no confusion that Huskins' medical bills relate to her

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    18
Case No. 2:16-cv-00603 TLN EFB

1  (and not Quinn), that emails received by Huskins's email address from third parties were received

2  by her (and not Quinn), or that statements in the media or on Facebook relate to both of the

3  Plaintiffs' reputational damages.  Indeed, in one of the only specific documents they affirmatively

4  point to as confused about in their motion—a photo of a U-Haul truck, Bates Numbered

5  document DHAQ 1364—it is important to note both that that this was a photo that *Defendants*

6  had produced *to Plaintiffs* during this litigation, and that Plaintiffs' counsel had already provided

7  a detailed and express explanation of where *this very photo* came from a month ago during the

8  meet and confer process concerning this dispute.  (Clune Decl. Ex. C.)[2]  How Defendants can still

9  claim to be confused about this photo is puzzling, as is their claimed confusion about the rest of

10 the documents produced.  Similarly, while Defendants claim that Plaintiffs' production is

11 supposedly missing certain documents (such as employment records that have not yet been

12 received from Plaintiff Quinn's third-party former employer Kaiser or Aaron Quinn's résumé),

13 these issues can readily be addressed by simply asking targeted questions (either formally or

14 informally) about those specific suspected gaps in the production.  In any event, questions about

15 purportedly missing documents will not be resolved by re-labeling Plaintiffs' existing production

16 because relabeling will not somehow cause any allegedly missing documents (such as any

17 résumés) to appear.

18       Further, this is simply not a situation where one party is attempting to thwart Rule 34 by

19 "attempt[ing] to hide a needle in a haystack by mingling responsive documents with large

20 numbers of nonresponsive documents."  <u>Cmty. House, Inc. v. City of Boise, Idaho</u>, No. CV 05-

21 283-S-BLW, 2009 WL 1650463, at *2 (D. Idaho June 12, 2009) (internal citations omitted); <u>see</u>

22 <u>also</u> Fed. R. Civ. P. 34 Advisory Committee notes to 1980 Amendment of subdivision b (rule

23 intended to prevent mixing critical documents with others to obfuscate their significance).

24

25 ---

[2]       Defendants' Requests for Production asked for, among other things, every email sent or received by either Plaintiff "relating to" the kidnapping.  (Clune Decl. Exs. A & B: Request for Production No 9 to Plaintiff Huskins; Request for Production No. 9 to Plaintiff Quinn.)  As counsel explained, after the kidnapping, Plaintiff Quinn's home

26 was broken into and the Vallejo Police refused to follow up about the crime, which Plaintiff Quinn has contended at various times in communications with third parties was connected to Vallejo's false and defamatory assertions that

27 Plaintiffs had "orchestrated' Plaintiff Huskins's kidnapping, and perhaps part of Vallejo Police Department's larger campaign to attack rather that believe Plaintiffs were telling the truth when they spoke to the police.  (See Clune

28 Decl. Ex. C, at p. 4.)

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    19
Case No. 2:16-cv-00603 TLN EFB

1   Plaintiffs have produced less than one box of documents—a very small amount compared to most

2   litigation these days.  See Cmty. House Inc., 2009 WL 1650463, at *2 ("[T]wenty-six boxes of

3   documents is not an unreasonable production in response to over one hundred broad requests for

4   production.").  Thus, it is not difficult for them to identify and analyze which documents might

5   conceivably be relevant to this dispute, even if it would be difficult for Plaintiffs to go through

6   each of them and say whether they are responsive to each of 40 separate requests.

7       Moreover, to the extent Defendants need additional information about any particular

8   document they are confused about, they are free to engage in targeted discovery about those

9   issues, which can resolve these questions with far less burden on all parties.  For example, they

10  could ask interrogatories about particular documents, propound RFAs, or ask about such

11  documents at deposition.  Courts have routinely noted that such discovery tools are a more

12  appropriate means of addressing the problems Defendants raise without requiring the relabeling

13  or indexing of an entire production.  See Zysman v. Zanett Inc.,, No. C-13-02813 YGR (DMR),

14  2014 WL 1320805, at *3 (N.D. Cal. Mar. 31, 2014) ("Under Rule 34, Defendants are only

15  required to produce documents as they are kept in the ordinary course of business, not to alter the

16  documents or explain information contained therein. Such information would be better gained

17  through interrogatories or questioning at a deposition"); Nat. Res. Def. Council, Inc., 1996 WL

18  497024, at *5 n.3 (refusing to order a party to recategorize requests and noting that "[i]f, after

19  reviewing defendants' documents, plaintiffs still have questions concerning the production,

20  plaintiffs should consider conducting a 30(b)(6) deposition of an individual knowledgeable

21  concerning the document production.")  Alternatively, they can simply pick up the phone, as has

22  already occurred in this litigation.  Particularly with the comparatively small production at issue

23  here, there is no reason that such information cannot be exchanged through targeted questioning

24  as to a particular document.

25      Finally, particularly because such relabeling would not produce any tangible benefits,

26  Defendants' request is not proportional to the needs of the case, and, as such should be rejected

27  on that ground as well.  See Fed. R. Civ. P. 26(b)(1).

28      Thus, Defendants' motion to compel Plaintiffs to re-organize their production should be

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1
Case No. 2:16-cv-00603 TLN EFB                    20

1  denied.

2

3  **B.    DISPUTED ISSUE NUMBER TWO: Whether Plaintiffs Should Remove Certain Redactions**

4      **1.    DEFENDANTS' POSITION ON ISSUE TWO**

5      The Federal Rules permit only limited unilateral redaction.  Fed. R. Civ. P. 5.2.  Beyond

6  these limits, a party should not unilaterally redact potential evidence.  *Evon v. Law Offices of*

7  *Sidney Mickell*, 2010 WL 455476 at *2 n.1 (E.D. Cal. 2010).  While plaintiffs' privilege log of

8  February 28, 2017, has explained some of the redactions, several still remain unjustified.

9  Unjustified redactions appear in the following documents:  DHAQ 2190, 2191, 2506, 2515, 2519,

10  2521, 2524, 2530, 2531, 2536, 2548, 2549, 3085-3089.  Motooka Decl. at ¶ 9, Exh. H.  Some of

11  these documents appear to be legal invoices, presumably reflecting special damages, yet plaintiffs

12  have redacted the portion of the document that would allow defendants to ascertain whether these

13  bills are reasonable and related to matters at issue in this case.  *See, e.g.*, DHAQ 2190-91 and

14  3085-89.  *See Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992)

15  (finding that attorney billing statements were not privileged).

16      Defendants request that plaintiffs be ordered to provide unredacted versions of all

17  redacted documents that have not been included in plaintiffs' privilege log.

18      **2.    PLAINTIFFS' POSITION ON ISSUE TWO:**

19      Plaintiffs have more than justified the challenged redactions in their privilege log and in

20  the meet-and-confer efforts with opposing counsel.  Those challenged redactions fall into two

21  categories that raise discrete issues that will be addressed separately below.

22      The first category of redactions are portions of attorney billing records.  Those documents

23  are Bates numbered documents DHAQ 2190-92 (billing records from employment attorney for

24  Aaron Quinn Deborah Phillips) and 3085-89 (billing records from criminal attorney for Aaron

25  Quinn Amy Morton). These records are only relevant to this dispute because Plaintiff Quinn had

26  to obtain criminal and employment lawyers after Defendants—falsely, and without any

27  evidence—accused Plaintiffs of "orchestrating" plaintiff Huskins's kidnapping.  As a result (and

28  in response to requests for production from Defendants asking for attorney billing records),

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    21
Case No. 2:16-cv-00603 TLN EFB

1    Plaintiff produced attorney invoices showing, among other things, the dates, rates, amount of time

2    spent, and overall amount billed by the relevant attorney.  (Clune Decl. ¶ 6.)  As is evident from

3    the documents themselves, Plaintiffs merely redacted descriptive information contained in the

4    time entries themselves.  Such redactions are entirely proper.  See Clarke v. Am. Commerce Nat.

5    Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("[C]orrespondence, bills, ledgers, statements, and time

6    records which also reveal the motive of the client in seeking representation, litigation strategy, or

7    the specific nature of the services provided, such as researching particular areas of law, fall within

8    the privilege."); Paul v. Winco Holdings, Inc., 249 F.R.D. 643, 654 (D. Idaho 2008) ("Plaintiff's

9    discovery seeking detailed information of bills, billing documents, and agreements between

10   Employee Association Defendants and their attorney falls within the attorney-client privilege and

11   is prohibited.").  Thus, Plaintiff should not be required to un-redact these billing invoices.

12        The second category of redacted pages are simply nonresponsive ESI communications

13   (such as text messages and Facebook posts) that, due solely to the artifice of the software

14   Plaintiffs used to extract the information from computer files, happened to include on the same

15   resulting TIFF "page" as responsive communications.  Those documents are DHAQ bates

16   numbered documents 2506, 2515, 2519, 2521, 2524, 2530, 2531, 2536, 2548, and. 2549.  Thus,

17   for example, if someone sent a text message on to another person that was responsive, but also

18   happened to send other text messages to that person (often years or months later) on wholly

19   unrelated topics, only the responsive text message was produced.  (Id. ¶ 7.)[3]  The same would be

20   true of Facebook posts or other messages that were sent on wholly separate occasions.  (Id.)

21   Thus, the redacted portions should not properly even be considered to be part of the same

22   "document" for purposes of FRCP 34.  These are discrete files, created on discrete times,

23   involving wholly separate issues, and thus need not be produced because they are simply

24   nonresponsive.  Further, particularly because of their lack of relevancy, any (non-existent) value

---

[3]      Plaintiff notes that, in response to Plaintiffs' discovery responses, Defendants only produced individual text messages—not every text message exchange for all time for a particular custodian if that custodian happen to have a responsive text.  (Clune Decl. ¶ 8.)  Indeed, in some instances Defendants did not even produce such text messages in a *readable* format, opting instead to take pictures of a phone (not screenshots), resulting in blurry and degraded black-and-white images of what the phone looks like when it displays a text message.  (Id.)  Defendants are thus hardly in a position to complain that Plaintiffs are somehow not producing complete text message conversations.

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                              22
Case No. 2:16-cv-00603 TLN EFB

1  in their production is outweighed by Plaintiffs' privacy rights in their emails and other electronic

2  communications.  Mintz v. Mark Bartelstein & Assocs. Inc., 906 F. Supp. 2d 1017, 1033 (C.D.

3  Cal. 2012) ("Plaintiff has presented evidence that he had a reasonable expectation of privacy in

4  his personal emails.").  Thus, these communications should likewise not be produced, and the

5  redactions removing them are proper.

6  As, such this Court should not compel Plaintiff to produce unredacted copies of any

7  document.

8  ### VII.   CONCLUSION

9  *A.*   ***Defendants' Position:***

10  Rule 34 requires a producing party to give some structure to the production, to prevent the

11  party from obscuring the significance of documents.  Plaintiffs have failed to comply with this

12  rule, because they have not organized and labeled their production to correspond the categories

13  requested in the two separate sets of RFPs, and they have they met their burden to establish that

14  the documents were produced "as they are kept in the usual course of business."

15  Plaintiffs also have provided no justification for certain redactions included in the

16  production.

17  Defendants therefore request that plaintiffs be ordered:

18  1.   to organize and label their production to correspond to the categories of the

19  requests in each set of RFPs, or otherwise to identify which documents are responsive to each

20  request; and

21  2.   to provide unredacted versions of the redacted documents that have not been

22  included in plaintiffs' privilege log.

23  **B.   Plaintiffs' Position:**

24  None of Defendants argument have merit for all the reasons stated above, nor will the

25  litigation be materially advanced by ordering the burdensome remedies they seek.  This Court

26  should not allow Defendants to generate such wholly unnecessary work for Plaintiffs. As such,

27  Defendants' motion should be denied in full.

28

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1        23
Case No. 2:16-cv-00603 TLN EFB

1   DATE:  March 29, 2017               CREGGER & CHALFANT LLP

2

3                                       /s/ Wendy Motooka
                                        ROBERT L. CHALFANT
4                                       WENDY MOTOOKA
                                        Attorneys for Defendants CITY OF VALLEJO,
5                                       KENNY PARK, MATHEW MUSTARD

6

7
    Dated:  March 29, 2017              KERR & WAGSTAFFE LLP
8

9                                  By:  /s/ Kevin B. Clune
                                        KEVIN B. CLUNE, SBN 248681
10                                      Attorneys for Plaintiffs
                                        DENISE HUSKINS and AARON QUINN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREGGER & CHALFANT LLP
701 University Ave., #110
Sacramento, CA  95825
(916) 443-4443

JOINT STATEMENT RE DISCOVERY
DISAGREEMENT – CITY RFP #1                    24
Case No. 2:16-cv-00603 TLN EFB