1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  DENISE HUSKINS and AARON QUINN,        No. 2:16-cv-00603-TLN-EFB

12              Plaintiffs,

13      v.                                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
14  CITY OF VALLEJO, a public entity,      MOTION TO DISMISS AND DENYING
    KENNY PARK, MATHEW MUSTARD,            DEFENDANTS' MOTION TO STRIKE**
15  and DOES 1-25

16              Defendants.

17

18          This matter is before the Court on Defendants'[1] Motion to Dismiss and Motion to Strike.

19  (ECF Nos. 8, 9)  Plaintiffs Denise Huskins ("Huskins") and Aaron Quinn ("Quinn") (collectively

20  "Plaintiffs") oppose the motions.  (ECF Nos. 11, 12.)  Having reviewed the briefings, and for the

21  reasons detailed below, the Court GRANTS in part and DENIES in part Defendants' motion to

22  dismiss and DENIES Defendants' motion to strike.

23      **I.    FACTUAL AND PROCEDURAL BACKGROUND**

24          Plaintiffs set forth details of a home invasion, in which an intruder entered Aaron Quinn's

25  Vallejo home early on March 23, 2015, assaulted Plaintiffs, held them captive, and kidnapped

26  Huskins, ECF No. 1 at ¶¶ 12–14, 32, and of the subsequent police investigation of the crime.

27

28  [1]      Defendants are the City of Vallejo ("Vallejo"), VPD Lieutenant Kenny Park ("Park"), and VPD Detective
    Mathew Mustard ("Mustard") (collectively "Defendants").

                                        1

A. <u>Aaron Quinn's Allegations</u>

Quinn details the intruder's demands for information about Quinn's finances, account and email passwords, and personal history.  (ECF No. 1 at ¶ 13.)  The intruder informed Quinn that he would kidnap Denise Huskins for ransom and ordered Quinn to wait for further communication by cell phone and through Quinn's own email account.  (ECF No. 1 at ¶ 14.)  The intruder then ordered Quinn to remain on a couch within an area marked off by tape.  (ECF No. 1 at ¶ 14.)  The intruder threatened to harm Huskins and Quinn's family if Quinn moved and told Quinn that he would be monitored by surveillance cameras to ensure his compliance.  (ECF No. 1 at ¶ 14.)

Quinn spent several hours uncertain about how to proceed to ensure Huskins's safety, received multiple communications demanding ransom for Huskins, and decided about 1:50 p.m. on March 23 to contact the Vallejo Police Department ("VPD").  (ECF No. 1 at ¶¶ 15–17.)

Quinn alleges that VPD officers quickly focused on him as a suspect in Huskins's disappearance and ignored evidence that the intruder left behind.  (ECF No. 1 at ¶¶ 17–18.) Quinn provided blood and DNA samples to VPD.  (ECF No. 1 at ¶ 19.)  He alleges that VPD took his clothing and, in exchange, provided him with a dirty t-shirt and pants marked "Solano Prison" down the side.  (ECF No. 1 at ¶ 19.)  Quinn was interrogated for 18 hours by VPD, led by VPD Detective Mathew Mustard.  (ECF No. 1 at ¶¶ 20–21.)  Quinn states he asked to speak with his family and was told, inaccurately, that they were not at the station.  (ECF No. 1 at ¶ 24.)

Quinn alleges that when VPD released him on March 24, VPD tried to secure more media coverage by forcing Quinn to exit the front of the station, where media congregated, while sleep deprived and wearing pants marked "Solano Prison."  (ECF No. 1 at ¶ 31.)  Quinn states that a lawyer his brother hired that morning arranged a more discrete exit.  (ECF No. 1 at ¶¶ 30–31.

B. <u>Denise Huskins's Allegations</u>

During this time, Huskins was forced into the trunk of Quinn's car, which the intruder drove, and then transferred to the trunk of a second car.  (ECF No. 1 at ¶ 32.)  In the trunk of the second car, she lost consciousness from a sedative.  (ECF No. 1 at ¶ 32.)  Huskins was driven to an unknown home, tied to a bed with zip ties and a bicycle lock, forced to wear blacked out swim goggles as a blindfold, and forced to record a proof of life tape.  (ECF No. 1 at ¶¶ 33, 39.)

1    While captive she was raped twice by the intruder, who told her that he was part of a gang

2    and was filming the rapes to use against her if she reported the rapes to the police.  (ECF No. 1 at

3    ¶¶ 34, 36, 37.)  After the second rape, the intruder told Huskins that she would be released, he

4    then threatened, drugged, and blindfolded her again, and drove her for hours.  (ECF No. 1 at ¶¶

5    37, 38.)  Huskins was released on March 25, near her parents' homes in Huntington Beach, and

6    contacted her father and Huntington Beach Police Department ("HBPD").  (ECF No. 1 at ¶ 42.)

7    Huskins states HBPD arrived and she spoke with officers for an hour.  (ECF No. 1 at ¶

8    43.)  She provided details of the intrusion, kidnapping, and her release, but denied the rapes for

9    fear of retaliation from the intruder.  (ECF No. 1 at ¶¶ 43, 45.)  Huskins aunt and cousin, an

10   attorney, arrived and her cousin spoke with Mustard for Huskins.  (ECF No. 1 at ¶¶ 48, 50–51.)

11   Huskins travelled back to Vallejo by commercial air rather than by VPD provided jet.

12   (ECF No. 1 at ¶¶ 46, 55.)  Huskins alleges she did so because she was frightened of the intruder,

13   the media, and police, who she had been told were skeptical of the crime and were offering her

14   immunity.  (ECF No. 1 at ¶¶ 51, 55.)  She states that when she returned to Vallejo she requested a

15   sexual assault exam and spent two full days speaking with VPD.  (ECF No. 1 at ¶¶ 67, 69.)

16   C.   Plaintiffs' Allegations Regarding VPD's Public Statements

17   Plaintiffs allege VPD issued press releases and held press conferences led by Park.  (ECF

18   No. 1 at ¶¶ 49, 53, 58, 60.)  They also allege that VPD's statements included allegations that

19   Plaintiffs were responsible for Huskins's disappearance and owed the city an apology for

20   plundering resources on the investigation.  (ECF No. 1 at ¶¶ 58, 60.)  Further, Plaintiffs contend

21   that VPD's strong public statements caused those statements to be widely disseminated in the

22   media.  (ECF No. 1 at ¶ 64.)  Plaintiffs claim that Defendants' actions caused Plaintiffs emotional

23   and physical distress and financial loss.  (ECF No. 1 at ¶¶ 92, 94, 95.)

24   Plaintiffs assert several federal and state law claims against Defendants.  Plaintiffs assert a

25   Fourteenth Amendment claim for defamation pursuant to 42 U.S.C. § 1983, a state law

26   defamation claim, a Fourteenth Amendment claim unreasonable seizure of Quinn and a state law

27   claim for false arrest of Quinn, and state law claims for both Plaintiffs for intentional infliction of

28   emotional distress and negligent infliction of emotional distress.  (ECF No. 1 at ¶¶ 84–142.)

1    **II.    STANDARDS OF LAW**

2        A.  Motion to Dismiss

3        Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

4    statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss, the

5    factual allegations of the complaint are assumed to be true.  *Cruz v. Beto*, 405 U.S. 319, 322

6    (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be

7    drawn from the well-pleaded allegations of the complaint.  *Retail Clerks Int'l Ass'n v.*

8    *Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond

9    those necessary to state his claim and the grounds showing entitlement to relief."  *Bell Atlantic v.*

10   *Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514

11   (2009)).  "A claim has facial plausibility when the pleaded factual content allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

13   *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

14       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

15   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

16   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

17   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

18   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

19   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

20   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice.").  Additionally, it is inappropriate to assume that the plaintiff "can

22   prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that

23   have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

24   *Carpenters*, 459 U.S. 519, 526 (1983).

25       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

26   facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting

27   *Twombly*, 550 U.S. at 570).  While the plausibility requirement is not akin to a probability

28   requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

4

1   *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to

2   draw on its judicial experience and common sense."  *Id.* at 679.

3        In ruling upon a motion to dismiss, the court may consider only the complaint, any

4   exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

5   Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

6   *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

7   1998).

8        B.  <u>Motion to Strike</u>

9        The California Civil Code provides for the pre-trial dismissal of certain actions, known as

10   Strategic Lawsuits Against Public Participation, or SLAPP.  *Makaeff v. Trump Univ., LLC*, 715

11   F.3d 254, 261 (9th Cir. 2013).  The purpose of a SLAPP suit is to use litigation or the threat of

12   litigation to prevent or deter people from "exercising their political or legal rights or to punish

13   them for doing so."  *Id.*  The purpose of California Civil Code § 425.16, the anti-SLAPP statute,

14   is to identify and dismiss meritless SLAPP suits at an early stage, before the parties or courts have

15   expended too many resources on those suits.  *Sonoma Foods, Inc. v. Sonoma Cheese Factory,*

16   *LLC*, 634 F. Supp. 2d 1009, 1015 (N.D. Cal. 2007); Cal. Code Civ. Proc. § 425.16(f)-(g).

17        To prevail on an anti-SLAPP motion, the moving party must show that the underlying suit

18   is a SLAPP suit and the underlying suit must be meritless.  Courts, therefore, employ a two prong

19   analysis in evaluating anti-SLAPP motions.  *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th

20   Cir. 2011).  First, the defendant must make a *prima facie* showing that the suit arises from the

21   defendant's exercise of its political or legal rights, such as rights of petition or free speech.  *Id*.

22   Second, if the defendant makes this showing, then the burden shifts to the plaintiff to show that its

23   claim is not meritless by demonstrating a reasonable probability of prevailing on the merits.  *Id*.

24        "In the anti-SLAPP context, "probability" is a low bar."  *Roberts v. McAfee*, 660 F.3d at

25   1163.  The plaintiff can demonstrate a probability of prevailing on its claim by showing that "the

26   complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to

27   sustain a favorable judgment."  *Id*.; *Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 821

28   (2002).

5

1        III.     ANALYSIS - MOTION TO DISMISS

2            Park moves to dismiss all claims against him for failure to state a claim.  (ECF No. 8-1 at

3    6.)  Vallejo and Mustard move to dismiss the Second, Fifth, and Sixth Causes of Action against

4    them for failure to state a claim.  (ECF No. 8-1 at 6.)

5            A.    Immunity Pursuant to California Government Code §§ 821.6 and 845

6            Defendants argue that they have absolute immunity from liability for defamation, IIED,

7    and NIED, pursuant to California Government Code § 821.6.  (ECF No. 8-1 at 11, 14, 16.)

8    Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting

9    or prosecuting any judicial or administrative proceeding within the scope of his employment,

10   even if he acts maliciously and without probable cause."  CAL. GOV'T CODE § 821.6.

11           Binding Ninth Circuit precedent holds that § 821.6 confers immunity only against claims

12   for malicious prosecution.  *Garmon v. City of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).

13   Plaintiffs do not assert a malicious prosecution claim.  Accordingly, the Court concludes that

14   Defendants' do not have immunity from liability from Plaintiffs' claims pursuant to § 821.6.

15           Defendants also argue that they have immunity from liability for IIED and NIED pursuant

16   to California Government Code § 845.  (ECF No. 8-1 at 14–15, 17.)  Section 845 provides that

17   "[n]either a public entity nor a public employee is liable for failure to establish a police

18   department or otherwise to provide police protection service or, if police protection service is

19   provided, for failure to provide sufficient police protection service."  CAL. GOV'T CODE § 845.

20           Plaintiffs do not assert any claim based on Defendants' failure to provide sufficient police

21   protective service or "not freeing Huskins from her captor sooner."  (ECF No. 11 at 24.)  Rather,

22   Plaintiffs rely on different theories to support their IIED and NIED claims.  (ECF No. 11 at 22–

23   24, 24–26.)  Accordingly, the Court concludes that Defendants do not have immunity from

24   liability from these IIED and NIED claims pursuant to § 845.

25           B.    First Cause of Action: Stigma-Plus Defamation

26           Plaintiffs assert a Fourteenth Amendment claim for defamation against Park pursuant to

27   42 U.S.C. § 1983.  (ECF No. 1 at ¶¶ 84–97.)  "Damage to reputation alone is not actionable under

28   § 1983," but a claim may lie if Plaintiffs were "stigmatized in connection with the denial of a

6

1    'more tangible' interest.*" Hart v. Parks*, 450 F.3d 1059, 1069–70 (9th Cir. 2006) (citing *Paul v.*

2    *Davis*, 424 U.S. 693, 701–02; 711–12 (1976)).  "This is known as the 'stigma-plus' test, and [it]

3    can be satisfied in two ways." *Id.* at 1070.  First, Plaintiffs may satisfy the test by alleging "that

4    the injury to reputation *caused* the denial of a federal protected right." *Id.* (emphasis in original).

5    Second, they may satisfy the test by alleging that the injury to reputation "was inflicted *in*

6    *connection with* the deprivation of a federal protected right." *Id.* (emphasis in original).

7           Defendants argue that Plaintiffs have not satisfied the "plus" factor required for a "stigma

8    plus" defamation claim.  (ECF No. 8-1 at 8–9.)  Plaintiffs concede the point as to Huskins but

9    argue that Quinn has adequately alleged defamation occurred in conjunction with his

10   unconstitutional seizure and arrest, meeting the plus factor.  (ECF No. 11 at 15, n.3.)  Defendants

11   assert that Quinn has not stated a claim for stigma-plus defamation because "[t]he complaint does

12   not allege that the public ever came to believe that Quinn had been arrested."  (ECF No. 16 at 7.)

13   This argument fails for two reasons.

14          First, Quinn can satisfy the stigma-plus test by showing "that the injury to his reputation

15   was inflicted *in connection with* the deprivation of a federally protected right." *Hart*, 450 F.3d at

16   1070 (citing *Gobel v. Maricopa Cty*, 867 F.2d 1201, 1205 (9th Cir. 1989)) (emphasis in original).

17   Defendants have not provided any authority — and the Court can find none — holding that the

18   injury to Quinn's reputation must be inflicted *by* the deprivation of a federally protected right.

19   The two must simply be connected.  Although Defendants have cited cases wherein the public's

20   perception of an unlawful arrest was sufficient to state a stigma-plus claim, they provide no

21   authority that such public perception is necessary.  (ECF No. 16 at 6 (citing *Cooper v. Dupnik*,

22   924 F.2d 1520, 1534 (9th Cir. 1991); *Stevens v. Rifkin*, 608 F.Supp. 710, 727–28 (N.D. Cal.

23   1984)).)  Here, Quinn alleges he was defamed by Park and the VPD "in connection with" their

24   handling of Huskins's disappearance, including Quinn's alleged unlawful seizure and false arrest.

25   (ECF No. 11 at 15.)  That is sufficient to state a stigma-plus claim. *Hart*, 450 F.3d at 1070.

26          Second, Defendants' premise — that "[t]he complaint does not allege that the public ever

27   came to believe that Quinn had been arrested" — is inaccurate.  (ECF No. 16 at 7.)  Quinn alleges

28   that VPD attempted to ensure negative and wide media coverage of Quinn's release from

1   interrogation by delaying his exit and trying to force him to exit the front of the jail, where the

2   media had gathered.  (ECF No. 1 at ¶ 31.)  Taking this allegation as true and drawing all

3   reasonable inferences in Quinn's favor, the media — and, by extension, the public — were

4   plainly aware of Quinn's seizure and arrest and its connection with VPD's investigation into

5   Huskins' disappearance.  Quinn has alleged sufficient facts to state a stigma-plus claim.

6       Accordingly, the Court GRANTS Defendants' motion to dismiss Huskins's First Cause of

7   Action for Fourteenth Amendment Stigma Plus Defamation against Park and DENIES

8   Defendants' motion to dismiss Quinn's First Cause of Action for Fourteenth Amendment Stigma

9   Plus Defamation against Park.

10       C.  Second Cause of Action: State Law Defamation

11       Plaintiffs assert a state law defamation claim against Mustard and Park.  (ECF No. 1 at ¶¶

12   98–111.)  Defendants argue that all of their statements are privileged under California Civil Code

13   § 47(b)(2)–(3) as statements made by police during an investigation, and thus cannot form the

14   basis of a defamation claim.  (ECF No. 8-1 at 10.)

15       Section 47(b) provides that publications or broadcasts are privileged if they are made "[i]n

16   any . . . (2) judicial proceeding, [or] (3) in any other official proceeding authorized by law."  CAL.

17   CIV. CODE § 47(b).  This provision bars liability in all tort actions (except malicious prosecution)

18   for communications made in judicial, quasi-judicial, or other official proceedings.  *Hagberg v.*

19   *California Fed. Bank FSB*, 32 Cal.4th 350, 360 (2004).

20       Privilege pursuant to § 47(b) is an affirmative defense.  *Beroiz v. Wahl*, 84 Cal.App.4th

21   485, 492 (2000).  A court may only dismiss a claim based on an affirmative defense if the defense

22   is clearly indicated on the face of the complaint.  *O'Brien v. Welty*, 818 F.3d 920, 935–36 (9th

23   Cir. 2016); *see also Harris v. Amgen, Inc.*, 738 F.3d 1026, 1045 (9th Cir. 2013) (*citing* 5B

24   Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004), *cert.*

25   *granted, judgment vacated*, 134 S. Ct. 2870 (2014).

26       Defendants state that Plaintiffs' defamation claim must be dismissed because "all of the

27   complained of statements were made by officers during a criminal investigation" and therefore

28   privileged.  (ECF No. 8-1 at 10–11.)  Defendants do not cite to the factual record or make any

1    arguments with respect to specific statements by specific Defendants alleged by Plaintiffs.

2    Defendants do not explain how legal authority supports their argument.  Therefore, Defendants

3    have not persuaded the Court that this privilege applies to "all" of Defendants' statements.

4              Plaintiffs defamation claims are based on alleged statements which do not, on the face of

5    the complaint, clearly indicate that they were made to further the investigation into the crime.

6    Plaintiffs allege, among other things, that Mustard told Quinn's brother that Quinn was having a

7    schizophrenic breakdown, had murdered Huskins, and made false statements about the intruder's

8    camera, and told Huskins's family she fabricated her disappearance to "re-live the excitement" of

9    an earlier molestation, and that Park told the media that the investigation was over and Plaintiffs

10   owed the community an apology for plundering resources.  (ECF No. 1 at ¶¶ 29, 40, 58, 60.)

11             In support of their argument, Defendants cite two cases in which the communications at

12   issue were entirely between law enforcement and the complainant, rather than any non-

13   participants.  (ECF No. 8-1 at 10–11, citing *Imig v Ferrar*, 70 Cal.App.3d 48, 54–55 (Ct. App.

14   1977) (citizen privileged to report officer misconduct to police department to investigate); and

15   *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1055–56 (9th Cir. 1982),

16   (corporation privileged to report theft of trade secrets to police and assist police executing a

17   search warrant for competitor's premises).)  Defendants do not explain the relevance of these

18   cases.  Plaintiffs base their claims on allegations of communications from police officers to the

19   media, the public, and Plaintiffs' family members.

20             Defendants cite *Braun v. Bureau of State Audits*, 67 Cal.App.4th 1382 (1998), in which

21   the court found that a state auditor investigating waste in the government was privileged to

22   receive information from whistleblowers and include it in an investigative audit report that he was

23   required to create as part of the audit.  *Id.* at 1388–89.  Defendants also cite *Balzaga v. Fox News

24   Network, LLC*, 173 Cal.App.4th 1325 (Cal. Ct. App. 2009), in which the court determined that

25   privilege for a news organization pursuant to § 47(d) was irrelevant because the organization had

26   not made the statement the plaintiff claimed and the broadcast, when viewed in its entirety, was

27   accurate.  *Id*. at 1337–42.  Defendants do not explain how precedent from these cases makes the

28   privilege pursuant to § 47(b) applicable to this case.

1    Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' Second Cause

2    of Action for state law defamation against Park, Mustard, and Vallejo.

3    In reply, Defendants argue that Plaintiffs abandoned their defamation claims against

4    Mustard because Plaintiffs did not include examples of statements by Mustard in their opposition

5    to this portion of Defendants' motion.  (ECF No. 16 at 8–9.)

6    Defendants made a broad assertion that "all" of their statements were privileged and chose

7    not to discuss application of the privilege in relation to any specific statements or Defendants.

8    (ECF No. 8-1 at 10–11.)  Plaintiffs responded with an equally broad assertion that the privilege is

9    not applicable to Defendants' conduct in this matter.  (ECF No. 11 at 16.)  Plaintiffs also provided

10   several pages of examples of specific statements they allege Defendants made both in the press

11   conference and outside it, cite legal authority to support the assertion it is not privileged, and

12   apply that authority to their examples.  (ECF No. 11 at 16–20.)

13   Defendants seem to argue that Plaintiffs were obligated to refute Defendants' broad

14   assertion as to more — or perhaps all — of the statements Plaintiffs allege and must include

15   specific statements by specific Defendants which Defendants did not raise in their motion.  (ECF

16   No. 16 at 8–9.)  Defendants have not cited legal authority which supports this proposition.

17   Defendants do cite two cases in which the plaintiffs did not respond in any way to the

18   defendants' arguments regarding a claim, leading the courts to dismiss those claims.  (ECF No.

19   16 at 8–9) (citing *Smith v. Harrington*, No. C 12-03533 LB, 2013 WL 132465, at *11 (N.D. Cal.

20   Jan. 9, 2013) (finding that the plaintiff did not address the defendants' arguments about two of

21   several claims the defendants moved to dismiss, and dismissing those two claims); *Green Desert*

22   *Oil Grp. v. BP W. Coast Prod.*, No. C 11-02087 CRB, 2012 WL 555045, at *2 (N.D. Cal. Feb.

23   21, 2012) (deciding after the defendant moved to dismiss several claims, and the plaintiff only

24   responded to arguments about three of the claims, to dismiss the remainder).  Defendants have not

25   explained how precedent from these cases supports their argument.  Defendants did not cite

26   examples of Mustards conduct in their motion, Defendants did not cite relevant authority, and

27   Plaintiffs did respond to each argument raised.  The Court is not persuaded that Plaintiffs failed to

28   respond to Defendants' motion or abandoned their defamation claims against Mustard.

1

   D.  <u>Fourth Cause of Action: False Arrest and False Imprisonment</u>

2

   The Parties agree that Quinn's claim for false arrest and false imprisonment fails as to

3

Park because Quinn does not allege facts supporting this claim against Park.  (ECF No. 8-1 at 12–

4

13; ECF No. 11 at 22.)  Plaintiffs state that they did not intend to make a claim for false arrest

5

against Park.  (ECF No. 11 at 22.)  Accordingly, the Court GRANTS Defendants' motion to

6

dismiss Park from Quinn's Fourth Cause of Action for False Arrest and False Imprisonment.

7

   E.  <u>Fifth Cause of Action: Intentional Infliction of Emotional Distress</u>

8

   Plaintiffs assert a claim of Intentional Infliction of Emotional Distress ("IIED") against

9

Park, Mustard, and Vallejo.  The elements of a prima facie case for IIED are "(1) extreme and

10

outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

11

probability of causing, emotional distress; (2) the plaintiff suffering severe or extreme emotional

12

distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of

13

the plaintiff's emotional distress.  *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

14

   Defendants argue that Plaintiffs have not alleged sufficient facts to show that Defendants'

15

conduct was extreme and outrageous.  (ECF No. 8-1 at 13.)

16

   Extreme and outrageous conduct must "exceed all bounds of that usually tolerated in a

17

civilized community."  *Hughes*, 46 Cal.4th at 1050–51.  A defendant's conduct may be

18

considered extreme and outrageous if the defendant abuses a relation or position which gives him

19

power to damage the plaintiff's interest or knew the plaintiff was susceptible to mental distress.

20

*Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713 (1994); *McMahon v. Craig*, 176 Cal.App.4th 1502,

21

1516 (2009).  Whether or not a reasonable jury would find a defendant's conduct to have been

22

extreme and outrageous "is a question of law that must initially be determined by the court."

23

*Berkley v. Dowds*, 152 Cal.App.4th 518, 534 (2007).  "[I]f reasonable persons may differ, it is for

24

the jury to determine whether the conduct was, in fact, outrageous."  *Id.*

25

   Defendants state Plaintiffs only allege Defendants were skeptical, investigated alternate

26

theories of the case, and expressed skepticism in public.  (ECF No. 8-1 at 13–14.)  Defendants'

27

argument fails for two reasons.

28

////

1    First, Defendants state in a conclusory manner that Plaintiffs' allegations are not

2    sufficient.[2]  (ECF No. 8-1 at 13–14.)  Defendants do not cite to the record and do not cite any

3    authority to support their argument.  The moving party bears the burden of showing that the

4    plaintiff has failed to state a claim.  *Anderson v. Fishback*, No. CV-05-0729-ROS, 2009 WL

5    2423327, at *2 (E.D. Cal. Aug. 6, 2009) (citing *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir.2005);

6    *Bangura v. Hansen,* 434 F.3d 487, 498 (6th Cir. 2006); James Wm. Moore, *2 Moore's Federal*

7    *Practice* § 12.34[1][a] at 12–73 (2008 ed.)).

8    Second, Defendants' premise — that Plaintiffs only allege that Defendants were skeptical,

9    investigated alternate theories of the case, and expressed skepticism publicly — is not accurate.

10   (ECF No. 8-1 at 13–14.)  Among Plaintiffs' allegations are that Defendants unconstitutionally

11   seized and arrested Quinn and attempted to ensure negative media coverage by delaying Quinn's

12   exit from interrogation and forcing him to exit the front of the station, where most media had

13   gathered.  (ECF No. 1 at 17–24, 27–29, 31.)  Plaintiffs also allege that Defendants publically

14   stated that Plaintiffs owed the community an apology for plundering its resources.  (ECF No. 1 at

15   58, 60.)  Further, Plaintiffs' allege that Defendants made opprobrious comments to Plaintiffs (in

16   one instance, responding to Huskins's request for a sexual assault exam by stating that she could

17   "keep her clothes on") and to others about Plaintiffs (including "gratuitous" comments to

18   Huskins's ex-boyfriend's neighbors while questioning him about her mental health).  (ECF No. 1

19   at 40, 47, 49, 51–52, 67, 70; ECF No. 11 at 23–24.)  The conduct Plaintiffs allege goes beyond

20   Defendants being skeptical, investigating alternate theories, and expressing skepticism.

21   Courts within this jurisdiction have found that plaintiffs have sufficiently alleged extreme

22   and outrageous conduct where the plaintiff was present when her pet was killed, where the

23   plaintiffs were especially vulnerable and the defendant may have been motivated to make news

24   rather than collect information or disseminate it, and where plaintiffs witnessed their relative

---

[2]    Defendants' entire argument that Plaintiffs did not allege extreme and outrageous conduct is appended:
"The instant complaint alleges that defendants did not believe plaintiffs' account of the kidnapping, made public
statements expressing their skepticism about plaintiffs' story, and investigated the possibility that one or both of the
plaintiffs had caused Huskins' disappearance. Compl. at ¶¶ 20–21, 58, 60, 69. Police skepticism and willingness to
pursue alternate theories of the case do not amount to conduct so extreme as to exceed all bounds of that usually
tolerated in a civilized community.  The facts alleged are insufficient to state a claim for IIED."  (ECF No. 8-1 at 13–
14.)

12

1   being ill-treated by officers. *Gregory v. City of Vallejo*, 63 F.Supp. 3d 1171, 1181–82 (E.D. Cal.

2   2014) (finding an officer's conduct may have been outrageous when he shot a homeowner's dog,

3   if the jury believed the dog was friendly and non-aggressive and there were no exigent

4   circumstances); *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1030–31 (1995)

5   (finding a news reporter's conduct outrageous where he informed very young children of a

6   tragedy when they were alone, and therefore vulnerable with no control over the situation, and the

7   reporter's intention may have been to make news by eliciting a reaction rather than disseminate

8   news); *Hillblom v. County of Fresno,* 539 F.Supp. 2d 1192, 1211 (E.D.Cal.2008) (finding

9   officers' conduct may have been outrageous when the plaintiffs witnessed the officers entering

10  their home, throwing their relative against a wall, tearing away his insulin pump, and locking him

11  in a patrol car). *But see Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982) (finding

12  officers not liable for the plaintiff's injury because the plaintiff alleged the officers merely failed

13  to act timely rather than any affirmative misconduct on the part of the officers).

14        Courts outside this jurisdiction have found conduct similar to some of the conduct

15  Plaintiffs allege to be extreme and outrageous when analyzing IIED claims.  The courts noted that

16  the plaintiffs informed the defendants that they had been victims of crimes or sexual assaults,

17  were thus particularly vulnerable, and the defendants were in a position of power or authority.

18        In *Drejza v. Vaccaro,* 650 A.2d 1308 (D.C.1994), the court found the conduct of a police

19  officer outrageous when he treated a rape victim with "derision and scorn," including telling the

20  plaintiff who brought clothes from the assault to "take your little panties home with you," and

21  implied her report was false because the rapist was her ex-boyfriend, as the plaintiff was

22  especially vulnerable and the officer's action did not advance the case. *Id.* at 1310–11, 1317.  In

23  *Brandon ex rel. Estate of Brandon v. Cty. of Richardson*, 261 Neb. 636 (2001), the court found

24  the officer's conduct outrageous where he used crude language when interviewing the victim of a

25  beating and rape and the officer's "tone throughout the interview was demeaning, accusatory, and

26  intimidating." *Id*. at 659–60.  In *Snyder v. Smith*, 7 F.Supp. 3d 842 (S.D. Ind. 2014) the court

27  found a plaintiff's allegations were sufficient where the plaintiff alleged the officer was abusive

28  during the interview, used crude language, failed to timely forward her rape kit to the lab or

1  collect and forward a tape recording to prosecutors, and maintained inappropriate relationships

2  with the suspects, all of which "propagated a 'blame the victim' attitude that caused [the plaintiff]

3  emotional and reputational harm, [so that she feels] unsafe in the community." *Id*. at 853, 873.

4  　　　The courts in these cases analyzed the element of "extreme and outrageous conduct"

5  according to state law in their jurisdictions.  This Court believes, however, that analysis of that

6  element of IIED under California law would be similar.  While these decisions are not binding on

7  this Court, the Court finds their analysis persuasive.

8  　　　Plaintiffs here allege conduct that is individual to Plaintiffs unique circumstances and

9  vulnerabilities, and with greater scope of involvement from outside persons and media.  Taking as

10  true Plaintiffs' allegations about Quinn's detention, statements made to Plaintiffs, and made about

11  Plaintiffs to their family members, an interviewee's neighbors, and the media, and drawing all

12  reasonable inferences, a reasonable jury could find that Defendants engaged in conduct that was

13  extreme and outrageous for the purposes of an IIED claim.  The Court cannot say that Plaintiffs

14  have failed to allege facts sufficient to state a claim for IIED.

15  　　　In their reply brief, Defendants raise for the first time an argument that Plaintiffs' claims

16  are merely consistent with Plaintiffs' factual allegations and do not exclude Defendants' alternate

17  explanation for the facts, and that this is insufficient.  (ECF No. 16 at 9–10) (citing *In re Century*

18  *Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Plaintiffs did not have the

19  opportunity to respond to this argument which, therefore, has not been fully briefed.  The Court

20  will not consider arguments raised for the first time in a reply brief.  *State of Nev. v. Watkins*, 914

21  F.2d 1545, 1559–60 (9th Cir. 1990); *Loomis v. Cornish*, 836 F.3d 991, 998 n. 3 (9th Cir. 2016).

22  The Court will not assess whether Defendants' explanation, that the police were informing the

23  public of the current results of an investigation, is consistent with the conduct Plaintiffs allege.

24  　　　In reply, Defendants argue that Huskins has abandoned her IIED claim against Mustard

25  because Plaintiffs did not include examples of Mustard's statements in their opposition to this

26  portion of Defendants' motion.  (ECF No. 16 at 10–11.)  Defendants' made a broad assertion that

27  the facts Plaintiffs allege (as described by Defendants) do not constitute extreme and outrageous

28  conduct.  (ECF No. 8-1 at 14.)  Plaintiffs respond with an equally broad assertion that

1    "Defendants conduct is sufficiently extreme and outrageous for Plaintiffs' claim of [IIED] to

2    survive." ECF No. 11 at 22.)  Plaintiffs then provide a number of examples of specific conduct

3    they allege and cite legal authority to support their arguments.  (ECF No. 11 at 22–24.)

4         Defendants have not cited any legal authority to support their proposition that Plaintiffs

5    abandoned a claim by not including examples of statements from every Defendant or from a

6    specific Defendant not discussed in Defendants' motion.  Defendants again cite *Smith v.*

7    *Harrington*, 2013 WL 132465 at *11, in which the plaintiff did not address at all the defendants'

8    arguments about two claims which the court then dismissed.  (ECF No. 16 at 10.)  The Court has

9    already explained why this precedent is not persuasive support for Defendants' proposition.

10        Accordingly, the Court DENIES the Motion to Dismiss Plaintiffs' Fifth Cause of Action

11   for Intentional Infliction of Emotional Distress against Park, Mustard, and Vallejo.

12        F.   Sixth Cause of Action: Negligent Infliction of Emotional Distress

13        Plaintiffs assert a claim for negligent infliction of emotional distress ("NIED") against

14   Park, Mustard, and Vallejo.  Defendants argue Plaintiffs failed to plead sufficient facts to show

15   that Defendants owed Plaintiffs a duty.  (ECF No. 8-1 at 15–16.)

16        Under California law, NIED requires the traditional elements of tort negligence: duty,

17   breach, causation, and damages.  *Klein v. Children's Hospital Medical Center of Northern*

18   *California,* 46 Cal.App.4th 889, 894 (1996).  Plaintiffs may recover for emotional distress in

19   negligence cases under three theories: (1) direct victim, (2) bystander, and (3) emotional distress

20   incident to physical injury.  *Id*.; *see also Robinson v. United States,* 175 F.Supp. 2d 1215, 1224

21   (E.D. Cal. 2001).  Here, Plaintiffs assert direct victim claims.  (ECF No. 1 at 139.)

22        A direct victim claim is based upon the defendant's violation of a duty owed directly to

23   the plaintiff.  *Wooden v. Raveling,* 61 Cal.App.4th 1035, 1038 (Ct. App. 1998).  The plaintiff may

24   recover if the defendant owed a duty in which the plaintiff's emotional condition is an object of

25   the duty or if the plaintiff's "emotional distress arises out of the defendant's breach of some other

26   legal duty and emotional distress is proximately caused by that breach of duty."  *Potter v.*

27   *Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993).  The duty must be assumed by the

28   defendant, imposed by law, or arise out of the parties' relationship.  *Klein,* 46 Cal.App.4th at 895.

1    Here, Plaintiffs allege Defendants owed Plaintiffs duties imposed by law — constitutional

2    and statutory duties — and alleged facts which support the existence of those duties.  Plaintiffs'

3    factual allegations are sufficient to make a prima facie claim for unreasonable seizure and false

4    arrest of Quinn, in violation of the Fourth and Fourteenth Amendments to the United States

5    Constitution and Article 1, § 13 of the California Constitution.[3]  (ECF No. 1 at ¶¶ 112–126.)

6    Plaintiffs allegations are sufficient to show a duty to Plaintiffs to respect their right to be free

7    from "intimidation, harassment, and abuse" throughout the criminal justice process under Article

8    1, § 28, subdivision (b)(1) of the California Constitution, personally held and enforceable rights

9    of crime victims.  (ECF No. 1 at ¶¶ 98–111; 127–142.)  Plaintiffs' allegations are also sufficient

10   to infer that Defendants owed Huskins, as a sexual assault victim, special protections provided in

11   Title 17 California Penal Code § 680, "The Victims Bill of Rights."  (ECF No. 1 at ¶¶ 34, 60, 67.)

12   The considerations to be taken into account in determining the existence of a duty were

13   articulated by the California Supreme Court in *Christensen v. Superior Court*, 54 Cal.3d 868

14   (1991), and include:

15
16   > The foreseeability of harm to the plaintiff, the degree of certainty
   > that plaintiff suffered injury, the closeness of the connection
   > between the defendant's conduct and the injury suffered, the moral
17   > blame attached to the defendant's conduct, the policy of preventing
   > future harm, the extent of the burden to the defendant and the
18   > consequences to the community of imposing a duty to exercise care
   > with resulting liability for breach, and the availability, cost, and
   > prevalence of insurance for the risk involved.
19

20   *Id.* at 885–86*; see Rowland v. Christian*, 69 Cal.2d 108, 112–13 (1968), *Klein*, 46 Cal.App.4th at

21   896.  Here, the damage from violations of duties the Plaintiffs allege — Quinn's alleged seizure

22   and false arrest, statements to Plaintiffs and about Plaintiffs' to their family members and the

23   media — would have been foreseeable and reasonably certain, resulted directly from the conduct

24   and violations alleged, and policy favors preventing repetition and future similar harm.

25   Taking all factual allegations as true and drawing all reasonable inferences in the light

26   most favorable to Plaintiffs, the Court cannot find that Plaintiffs have failed to plead sufficient

27

28   ---
[3]    Defendants have not moved to dismiss Quinn's Third and Fourth Causes of Action – unreasonable seizure and false arrest – against Mustard.

1   facts to show that Defendants owed constitutional and statutory duties to Plaintiffs.  Additionally,

2   the *Christensen* factors weigh in favor of finding a duty imposed by law in this case.

3       The Court finds that Defendants have not met their burden in moving to dismiss this

4   claim.  *Hillblom,* 539 F.Supp.2d at 1209 (Judge O'Neill finding that the plaintiff's claim under

5   the direct victim theory of NIED sufficient where the defendants failed to offer support for the

6   defendants' assertion that the police officer's presence at the scene did not create a "special

7   relationship" with the plaintiff); see also *Kaur v. City of Lodi*, 2:14-cv-00828-GEB, 2014 WL

8   3889976 at *8 (E.D. Cal. Aug. 7, 2014) (finding that the defendants' conclusory argument that

9   the police officers did not owe the plaintiff a duty pursuant to a preexisting relationship failed to

10  address whether the plaintiff's factual allegations did give rise to a duty sufficient to support an

11  NIED claim; see also *R. v. Nulick*, 1:15-cv-01378-JAM-EPG, 2016 WL 2756738, at *7 (E.D. Cal.

12  May 12, 2016)).  Defendants' statement that Plaintiffs failed to plead facts showing a duty does

13  not overcome Plaintiffs' factual allegations regarding Quinn's seizure and arrest, Huskins's status

14  as a rape victim, and both Plaintiffs' status as crime victims, supporting their argument that

15  Defendants owed them direct constitutional and statutory duties.

16      In reply, Defendants argue that the direct victim theory of NIED applies in only three fact

17  patterns and that this matter does not fit any of the three patterns: (1) the negligent mishandling of

18  corpses; (2) the negligent misdiagnosis of a disease that could potentially harm another; and (3)

19  the negligent breach of a duty arising out of a preexisting relationship.  (ECF No. 16 at 12.)

20  Defendants' argument is not persuasive for three reasons.  First, Defendants do not cite any legal

21  authority to support their argument, just the Directions for Use section of the California Civil Jury

22  Instructions.  Second, it misstates the law as a plaintiff may establish that a defendant owes the

23  plaintiff a duty that the defendant assumed, is imposed by law, or arises from the parties'

24  relationship.  *Spates v. Dameron Hosp. Assn.*, 114 Cal.App.4th 208, 214 (2003).  Third, this

25  Court will not consider arguments raised for the first time in a reply brief, as this argument was.

26  *Loomis*, 836 F.3d at 998 n. 3.

27      Defendants also argue that Huskins has abandoned her NIED claim against Mustard

28  because Plaintiffs did not include examples of Mustard's statements in their opposition to this

1   portion of Defendants' motion.  (ECF No. 16 at 13.)  Defendants made a broad assertion that the

2   "complaint fails to plead facts sufficient to show that defendants owed a duty to plaintiffs."  (ECF

3   No. 8-1 at 16.)  Plaintiffs responded with an equally broad statement that "Defendants have

4   numerous independent duties to Plaintiffs, each of which Plaintiffs alleged in their Complaint."

5   (ECF No. 11 at 24.)  Plaintiffs also cited constitutional and statutory duties and provided an

6   analysis of relevant factors from case law applied to examples from Plaintiffs' factual allegations.

7   (ECF No. 11 at 24–26.)

8          Defendants have not cited any legal authority to support their proposition that Plaintiffs

9   abandoned a claim by not discussing examples of statements every Defendant or any specific

10   Defendant which Defendants did not raise in their motion.  Defendants again cite *Smith v.*

11   *Harrington*, 2013 WL 132465 at *11, in which the plaintiff did not address at all the defendants'

12   arguments about two claims which the court then dismissed.  (ECF No. 16 at 13.)  The Court has

13   already explained why this precedent is not persuasive support for Defendants' proposition.

14          Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' Sixth Cause of

15   Action for Negligent Infliction of Emotional Distress against Park, Mustard, and Vallejo.

16          **IV.   MOTION TO STRIKE - ANALYSIS**

17          Defendants move to strike Plaintiffs' state law defamation claim and Huskins's IIED

18   claim as meritless SLAPP claims.  (ECF No. 9 at 2.)  Defendants argue that Plaintiffs cannot

19   show a probability of prevailing on the merits of their claims because (i) Defendants are immune

20   from prosecution for the statements at issue pursuant to California Government Code § 821.6, (ii)

21   the statements are privileged under California Civil Code §§ 47(b)(2) and 47(b)(3), and (iii) the

22   statements were not made with the malice required for these claims.  (ECF No. 9-1 at 14, 19.)

23          Plaintiffs do not dispute that Defendants have met their burden under the first prong of the

24   anti-SLAPP statute because the defamation claim arises from acts in furtherance of Defendants'

25   rights of petition or free speech.  (ECF No. 12 at 15.)  The remaining issue is whether Plaintiffs

26   have met their burden under the second prong and demonstrated a reasonable probability of

27   prevailing on the merits of their claims.

28   ////

18

A. Immunity and Privilege

The Court has already concluded, in sections III.A. and III.C., *supra*, that Defendants do not have immunity from liability from these claims pursuant to § 845, and their statements are not privileged under California Civil Code § 47(b)(2) or § 47(b)(3).  The Court will not address these arguments again here.

B. Requisite Malice

Defendants argue that Plaintiffs' claims for defamation and IIED fail because Plaintiffs were "public figures" and Plaintiffs have not shown that Defendants exhibited the level of malice required for a claim for defamation of a public figure or for IIED.  (ECF No. 9-1 at 17–18, 19.)  Plaintiffs argue that they are not public figures and, therefore, are not required to show Defendants' made their statements with actual malice.  (ECF No. 12 at 22, 26.)

Courts recognize two types of public figures, all-purpose public figures and limited purpose public figures.  *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 253 (1984).  An all-purpose public figure has "pervasive fame or notoriety" in "all purposes and in all contexts."  *Id*.  A limited purpose public figure "voluntarily injects himself or is drawn into a particular public controversy" and "loses certain protection to reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy."  *Id*. at 253–54.

A public figure plaintiff in a defamation claim must prove that the statement at issue was made with "actual malice — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Nadel v. Regents of the Univ. of California*, 28 Cal. App. 4th 1251, 1269–70 (1994).  The rationale is that public figures are less deserving of protection than private persons because public figures have "voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them."  *Reader's Digest Assn.*, 37 Cal. 3d at 253.  Public figures may have greater access to media to counter criticism or expose inaccuracies.  *Id*.  "[A] 'public figure' plaintiff must have undertaken some *voluntary* act through which he seeks to influence the resolution of the public issues involved."  *Id*. at 254 (emphasis in original).  Courts determining whether or not a plaintiff is a public figure must consider "the totality of the circumstances."  *Id*. at 255.

19

1       Unlike the plaintiffs in *Nadel*, who chose to participate in demonstrations and "thrust

2   themselves into the forefront of a controversy," *Nadel*, 28 Cal. App. 4th at 1269, Plaintiffs have

3   shown that they did not undertake any voluntary act to involve themselves in these events.  For

4   example, Plaintiffs allege that an intruder broke into Quinn's home and held Plaintiffs captive

5   against their will.  (ECF No. 1 ¶¶ 12–13.)  Plaintiffs allege the intruder kidnapped Huskins and

6   threatened Quinn to force him to refrain from reporting the crime.  (ECF No. 1 ¶ 14.)  Quinn

7   alleges that VPD attempted to increase media coverage of Quinn's release from the police station

8   but Quinn's attorney managed a more discrete exit.  (ECF No. 1 ¶ 31.)  Huskins alleges that the

9   intruder threatened harm if she reported the rapes to police or the media.  (ECF No. 1 ¶¶ 34, 37.)

10   Huskins alleges she travelled home "cowering" to avoid the press, police, and intruder.  (ECF No.

11   1 ¶ 55.)  Plaintiffs have shown they avoided, even feared, media involvement or attention.

12       Plaintiffs' voluntary act in this case consisted only of reporting the crime to the

13   authorities.  (ECF No. 1 ¶¶ 2, 3, 16.)  A person cannot become a public figure merely by seeking

14   assistance or relief through the legal system.  *Reader's Digest Assn.*, 37 Cal. 3d at 254 (1984).

15       Defendants argue that public figures do not need to voluntarily insert themselves into an

16   issue.  (ECF No. 17 at 11.)  For this proposition, Defendants cite *Gertz v. Robert Welch, Inc*. 418 U.S.

17   323, 345 (1974).  (ECF No. 17 at 11.)  However, "[t]he cases decided since *New York Times* and

18   *Gertz* make clear that a person or group should not be considered a 'public figure' solely because

19   that person or group is a criminal defendant; has sought certain relief through the courts; or

20   merely happens to be involved in a controversy that is newsworthy." *Reader's Digest Assn.*, 37

21   Cal. 3d at 254 (1984) (citing *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157 (1979); *Time,*

22   *Inc. v. Firestone*, 424 U.S. 448 (1976)) (internal citations omitted).  An individual does not

23   become a public figure merely through involvement "in a matter which the media deems to be of

24   interest to the public." *Reader's Digest Assn.*, 37 Cal. 3d at 254 (1984).

25       Considering the totality of the circumstances, the Court determines that Plaintiffs were not

26   public figures and, therefore, do not need to show that Defendants acted with actual malice in

27   making the statements at issue in Plaintiffs' defamation claim.  Defendants have not cited any

28   legal authority to support their proposition that Plaintiffs must show actual malice to support

1    Huskins's IIED claim.  Having determined that Plaintiffs are not required to show Defendants

2    acted with actual malice, the Court will not analyze whether Defendants acted with actual malice.

3         Accordingly, the Court DENIES Defendants' Special Motion to Strike the Second and

4    Fifth Causes of Action of the Complaint.

5         Defendants argue that Plaintiffs have abandoned their claims against Mustard.  (ECF No.

6    17 at 6, 8.)  On the contrary, Plaintiffs responded to each issue raised by Defendants and referred

7    to Mustard's conduct where conduct is relevant to the issue and opposed other issues with

8    reference to broad principles, i.e. § 821.6 immunity inapplicable.  (ECF No.12 at 20–24, 26.)

9         **V.    VALLEJO'S *RESPONDEAT SUPERIOR* LIABILITY**

10        Defendants argue in their motion to dismiss and motion to strike that Plaintiffs' claim for

11    defamation, IIED, and NIED against Vallejo based on *respondeat superior* liability fails because

12    Vallejo's employees are not liable for the underlying claims on which Vallejo's liability is based.

13    (ECF Nos. 8-1 at 15, 17; 9-1 at 19.)

14        California Government Code § 815.2 provides that a public entity is liable for injuries

15    caused by the acts or omissions of its employees acting within the scope of their employment,

16    except where the employee is immune from liability.  CAL. GOV'T CODE § 815.2.  This section

17    "expressly makes the doctrine of *respondeat superior* applicable to public employers."  *Hoff v.*

18    *Vacaville Unified School Dist.,* 19 Cal.4th 925, 932 (1998).

19        As discussed above, the Court found that Vallejo's employees may be liable for and are

20    not immune from each of these claims.  Under California Government Code § 815.2, Vallejo may

21    then be liable on a theory of *respondeat superior.*

22        **VI.    CONCLUSION**

23        Accordingly, for the reasons detailed above, IT IS HEREBY ORDERED that:

24        1.    The Court GRANTS Defendants' motion to dismiss Huskins's First Cause of Action

25              for Fourteenth Amendment Stigma Plus Defamation against Park.  The Court DENIES

26              Defendants' motion to dismiss Quinn's First Cause of Action for Fourteenth

27              Amendment Stigma Plus Defamation against Park;

28

2.  The Court DENIES Defendants' motion to dismiss Plaintiffs' Second Cause of Action for state law defamation against Defendants Park, Mustard, and Vallejo;

3.  The Court GRANTS Defendants' motion to dismiss Park from Quinn's Fourth Cause of Action for False Arrest and False Imprisonment;

4.  The Court DENIES Defendants' motion to dismiss Plaintiffs' Fifth Cause of Action for Intentional Infliction of Emotional Distress against Park, Mustard, and Vallejo;

5.  The Court DENIES Defendants' motion to dismiss Plaintiffs' Sixth Cause of Action for Negligent Infliction of Emotional Distress against Park, Mustard, and Vallejo; and

6.  The Court DENIES Defendants' Special Motion to Strike the Second and Fifth Causes of Action of the Complaint.

The Parties shall file a Joint Status Report within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: June 30, 2017

Troy L. Nunley
United States District Judge